SHORT RECORD
NO. 21-8018
FILED 06/24/2021

No. __-_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

T.S. AND Q.B., a minor by and through his grandparent
and guardian, V.P., on behalf of themselves and all others similarly situated,

*Plaintiffs-Respondents,*

v.

TWENTIETH CENTURY FOX TELEVISION, a division of TWENTIETH CENTURY FOX
FILM CORPORATION; FOX BROADCASTING COMPANY; TWENTY-FIRST CENTURY
FOX, INC.; THE COUNTY OF COOK, ILLINOIS; THE CHIEF JUDGE OF THE CIRCUIT
COURT OF COOK COUNTY in his official capacity; LEONARD DIXON;
and JOHN DOES 1 through 20,
*Defendants-Petitioners.*

_____

On Petition for Permission to Appeal from the
United States District Court for the Northern District of Illinois,
Case No. 1:16-cv-08303
The Honorable Rebecca R. Pallmeyer

_____

## PETITION FOR PERMISSION TO APPEAL
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

_____

Francis J. Catania
Danielle Mikhail
Cook County State's Attorney's Office
50 West Washington
5th Floor
Chicago, IL 60602
Telephone: 312-603-3373
francis.catania@cookcountyil.gov
danielle.mikhail@cookcountyil.gov

*Attorneys for Defendant the County of Cook,
Illinois*

Lyle K. Henretty
Patrick D. Morris
Cook County State's Attorney's Office
50 West Washington
27th Floor
Chicago, IL 60602
Telephone: (312) 603-1434
Telephone: (312) 603-1427
lyle.henretty@cookcountyil.gov
patrick.morris@cookcountyil.gov

*Attorneys for Defendant Leonard Dixon*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................. 1

QUESTIONS PRESENTED.................................................. 2

RELIEF SOUGHT............................................................. 3

ARGUMENT .................................................................... 5

    I.    Interlocutory Appellate Review of this Order is Appropriate Because the District Court Failed to Properly Address The Predominance of Individual Issues........................................................................ 6

        A.    The district court should not have certified the "extra recreation" subclass. ......................................................... 6

        B.    The district court should not have certified the after-school activity subclass. ......................................................... 7

        C.    The district court should not have certified the "school on pods" subclass. ......................................................... 8

        D.    The district court should not have certified the "functional capacity" subclass. ................................................... 9

        E.    The district court's certification decision conflicts with this Court's precedents. ......................................................... 11

    II.    Interlocutory Appellate Review of this Order is Appropriate Because The State Does Not Have a Fiduciary Duty to Detainees and Such a Duty Will Create Potential for Immeasurable Liability for the State and Unduly Burden Both the State and Courts....................................... 12

    III.    The Damages Calculation for Breach of Fiduciary Duty to Detainees is Unknown.................................................................... 14

CONCLUSION.................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Antonelli v. Sheahan*,
    81 F.3d 1422 (7th Cir. 1996) ....................................................................6

*Bell v. Wolfish*,
    441 U.S. 520 (1979) .................................................................................4

*Blair v. Equifax Check Serv., Inc.*,
    181 F.3d 832 (7th Cir. 1999) ..............................................................5, 15

*Burdette v. Burdette*,
    127 S.E.2d 249 (W. Va. 1962) ..............................................................13

*Carnegie v. Household Intern., Inc.*,
    376 F.3d 656 (7th Cir. 2004) ..................................................................14

*Dancel v. Groupon, Inc.*,
    949 F.3d 999 (7th Cir. 2019) ..................................................................14

*In re Estate of Gustafson*,
    268 Ill. App. 3d 404, 644 N.E.2d 813 (2d Dist. 1994) ..........................12

*French v. Owens*,
    777 F.2d 1250 (7th Cir. 1985) ..................................................................6

*Hardeman v. Curran*,
    933 F.3d 816 (7th Cir. 2019) ....................................................................1

*Harper v. Sheriff of Cook County*,
    581 F.3d 511 (7th Cir. 2009) ..............................................................11, 12

*Hernandez v. Cate*,
    No. EDCV 11-00627 R AJW, 2014 WL 6473769 (C.D. Cal. Oct. 16, 2014).........................13

*McFields v. Dart*,
    982 F.3d 511 (7th Cir. 2020) ..................................................................12

*McNeal v. United States*,
    979 F. Supp. 431 (N.D.W. Va. 1997) ....................................................13

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) ..................................................................14

i

*Phillips v. Sheriff of Cook County*,
    828 F.3d 541 (7th Cir. 2016) ..........................................................11, 12

*Portis v. City of Chicago*,
    613 F.3d 702 (7th Cir. 2010) ...............................................................11

*Rua v. Glodis*,
    52 F. Supp. 3d 84 (D. Mass. 2014) ........................................................13

*Saunders v. Raleigh County*,
    No 5:20-cv-00221, 2020 WL 9348328 (S.D. W. Va. May 18, 2020), *aff'd*,
    2021 WL 1180786 (Mar. 29, 2021) ........................................................14

*Smith v. Dart*,
    803 F.3d 304 (7th Cir. 2015) .................................................................6

*Sperry v. Corizon Health, Inc.*,
    No. 18-3119-SAC, 2020 WL 905745 (D. Kan. Feb. 25, 2020)...............13

*Surratt v. McClaran*,
    234 F. Supp. 3d 815 (E.D. Tex. 2016), *aff'd sub nom. Surratt v. McClarin*,
    851 F.3d 389 (5th Cir. 2017) ................................................................13

*T.S. v. Twentieth Century Fox Television*,
    334 F.R.D. 518 (N.D. Ill. 2020)......................................................4, 7, 12

*T.S. v. Twentieth Century Fox Television*,
    No. 16 C 8303, 2020 WL 6870809 (N.D. Ill. Nov. 23, 2020)..................4

*Tully v. McLean*,
    409 Ill. App. 3d 659, 948 N.E.2d 714 (1st Dist. 2011)..........................15

*Whitley v. Albers*,
    475 U.S. 312 (1986)..............................................................................13

## STATUTES, RULES & REGULATIONS

28 U.S.C. § 1292(b) ....................................................................................2

Fed. R. Civ. P. 23................................................................................8, 14

Fed. R. Civ. P. 23(a) ..................................................................................11

Fed. R. Civ. P. 23(b)(3)...........................................................................6, 11

Fed. R. Civ. P. 23(f)................................................................... *passim*

## PRELIMINARY STATEMENT

The County of Cook, Illinois ("Cook County") and Leonard Dixon, Superintendent of the Cook County Juvenile Temporary Detention Center (the "JTDC"), respectfully ask this Court to review, pursuant to Fed. R. Civ. P. 23(f), an unprecedented decision granting class certification. In conditions of detention cases, this Court has insisted on two bedrock requirements: a detainee may sue only for "far beyond inconvenience" deprivations that amounted to punishment, *see Hardeman v. Curran*, 933 F.3d 816, 823-824 (7th Cir. 2019), and district courts should not certify classes unless all class members can prove an actionably serious condition with common evidence. Here, although the district court (Pallmeyer, C.J.) acknowledged those limits and agreed that Dixon had immunity from Plaintiffs' constitutional claims, that did not end the matter as it should have done.

Plaintiffs asked the district court alternatively to impose a fiduciary duty on Dixon arising from Illinois common law. The district court did as Plaintiffs asked, becoming the first court in the country to hold detention center officials to be fiduciaries for detainees. In its class certification order, the district court defined the scope of that duty broadly, holding that any detrimental impact to a detainee's "well-being," if a jury finds insufficient justification for it, would constitute a breach. Using this as the basis for finding "common questions" to be litigated, the district court held that four minor and temporary inconveniences Plaintiffs complained about seemed capable of common proof as to the asserted effect on their well-being. The district court, therefore, certified four subclasses to litigate those issues on behalf of hundreds of detainees. It is that decision from which Dixon and Cook County—which the district court held must indemnify Dixon—seek to appeal on an interlocutory basis pursuant to Rule 23(f).[1]

---

[1]     In accordance with FRAP 5(b)(1)(E)(i), a copy of the district court's June 10, 2021 decision granting class certification is attached as Exhibit 1.

## QUESTIONS PRESENTED

1.      Was the district court correct that Plaintiffs may sue Dixon for breach of a fiduciary duty if a reasonable jury could find that any action he took negatively affected detainees' "well-being?"

2.      If Dixon owed a fiduciary duty, did the district court abuse its discretion in finding that Plaintiffs had satisfied their predominance burden as to four subclasses, specifically:

    A.      A subclass of detainees who did not receive "extra" recreation for nine school break days, despite a lack of evidence that extra recreation during school breaks was ever the JTDC's custom and practice;

    B.      A subclass of detainees who, on three days in July 2015, had school classes held in their residential "pod" common areas instead of in school classrooms;

    C.      A subclass of detainees who "would have" attended four after-school programs that the JTDC canceled, relocated, or postponed for a week, without Plaintiffs having shown the ability to ascertain who "would have" attended these classes; and

    D.      A subclass of detainees whose 14- or 18-bed residential pods were filled closer to capacity on the 12 days at issue in this case, rather than meeting the JTDC's aspirational goal of leaving several beds empty.

3.      Did the district court abuse its discretion when it certified these subclasses for the purpose of litigating whether Dixon owes "restitution," when the only benefits Plaintiffs allege he received was a $50 "director's chair" and photographs with actors, and where even the district court concluded that the value of these benefits is "*de minimis*?" [2]

---

[2]      Because the district court ruled on summary judgment and class certification in the same order, and framed the "common questions" for class litigation around the fiduciary duty standard that the district court articulated for the first time in its order, the district court's decision that Dixon owed a fiduciary duty is intertwined with the class certification decision and reviewable pursuant to Rule 23(f).  To ensure that no dispute can exist over this Court's ability to consider the fiduciary duty issue, Dixon and Cook County are contemporaneously filing with the district court a motion to certify that issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**RELIEF SOUGHT**

Defendants request that this Court grant their petition pursuant to Federal Rule of Civil Procedure 23(f) and, after considering the petition or full briefing on the merits, reverse the district court's order granting class certification.

**FACTUAL BACKGROUND**

The genesis of this case was Dixon's decision in May 2015 to allow Twentieth Century Fox Television ("TFCTV") to use the JTDC as a realistic prison setting to film scenes for the fictional television drama series *Empire*. TCFTV's original proposal was to film for five days at the end of June 2015, but TCFTV later sought and received permission to return to the JTDC for reshoots for three days in July 2015 and four days in August 2015. Doc. 412:5 at 172:14-22. TCFTV executed a "Location Agreement" with Cook County pursuant to which TCFTV agreed to: (1) pay a daily lease fee of $1,500, (2) reimburse the JTDC for all salary/wage costs incurred and any materials that the JTDC furnished, and (3) follow all instructions of JTDC personnel to ensure no disruption to facility operations. Doc. 212-1. The filming occurred as contemplated and without incident. Because detainees could not be present in the parts of the facility that TCFTV was using, JTDC personnel made certain changes to detainees' routines, such as shifting some scheduled recreation from the JTDC's outdoor courtyard to its gymnasiums when TCFTV was filming in the courtyard. Doc 412-28; Doc. 412-9 at 66:1-68:1; Doc. 236-18; Doc. 398-3 at 101. Those changes to routines are what this case is about.

In 2019, Plaintiffs filed their first motion for class certification. *See* Doc. 237. They did not argue that any single inconvenience on which they eventually focused was independently actionable. Instead, they argued that detainees could aggregate multiple inconveniences to prove an objectively serious deprivation of rights.

3

In January 2020, the district court denied Plaintiffs' motion. It correctly held that "there is a '*de minimis* level of imposition with which the Constitution is not concerned.'" *T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518, 529 (N.D. Ill. 2020), *quoting Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979). Because each detainee's experience was different, the district court determined that Plaintiffs could not prove a constitutionally significant level of imposition without individual inquiries. *See id.* at 536-37. But the district court gave Plaintiffs leave to try again.

Plaintiffs amended their complaint, added an additional plaintiff ("H.C."), and again sought class certification.[3] Defendants once again opposed. At the district court's direction, so that it could address both sets of issues at once, all defendants also moved for summary judgment.

Ruling first on an Eleventh Amendment summary judgment motion filed by the Chief Judge of Cook County Circuit Court, the public official who oversees the JTDC, the district court held the Chief Judge to be immune from Plaintiffs' suit. *See T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, 2020 WL 6870809, at *3 (N.D. Ill. Nov. 23, 2020). The district court then resolved all remaining motions in the Order.

In the Order, the district court granted summary judgment to TCFTV on all remaining counts against it. The district court also granted summary judgment to Dixon and the other government defendants on Plaintiffs' constitutional claims. Reexamining the same conduct as an alleged fiduciary breach, however, the district court determined in its Order that Dixon was detainees' fiduciary and, as such, any conduct "that harmed the detainees' well-being" can be the basis for a conditions-of-detention lawsuit. Order at 29. The district court rejected Dixon's

---

[3]     The district court's first class certification order stated that "Defendants d[id] not appear to challenge" Plaintiffs' "claim that Defendant Dixon owed a fiduciary duty to JTDC detainees." *T.S.*, 334 F.R.D. at 538. Although Defendants did not contest that the question of whether Dixon owed a fiduciary duty would be common to the class, Defendants never conceded at any stage of this litigation that Dixon's duty to detainees was fiduciary in nature.

4

arguments that his duty was not fiduciary in nature and held he does not have sovereign immunity from Plaintiffs' fiduciary duty claim. It also held that Cook County should remain in the case to indemnify Dixon against this claim.

When Plaintiffs argued their fiduciary duty theory, even they did not ask the district court to set the bar at low as it did, at "well-being," or suggest the district court could do so. In the absence of precedent supporting their claim, Plaintiffs suggested a need to prove that "Dixon breached his fiduciary duty by <u>endangering</u> them." Doc. 351 at 31 (emphasis in original). Yet, the district court held instead that if a reasonable jury interposes its own judgment for Dixon's and finds that any change of routines he made to accommodate TCFTV was detrimental to detainees' well-being, it can find a fiduciary breach without determining that Dixon endangered detainees.

By so defining the "common questions" Plaintiffs could litigate on a class basis, the district court opened the door to certification for any *de minimis* impact to detainees' conception of well-being that they assertedly can prove with common evidence. The district court rejected four of Plaintiffs' proposed subclasses because it believed they were not subject to common proof. Although the district court should have found the same with regard to the other four because undisputed evidence showed them to be just as rife with individual issues, the district court certified those four subclasses without addressing this evidence.

## ARGUMENT

Rule 23(f) gives this Court "unfettered" discretion to review a district court order granting or denying class certification. Advisory Comm. Note, Fed. R. Civ. P. 23(f). This Court has found interlocutory review to be particularly appropriate where: (1) a certification decision significantly increases defendants' exposure to damages and (2) the decision presents novel legal issues in an important area of the law that an appeal would help resolve. *See Blair v. Equifax Check Serv.,*

*Inc.*, 181 F.3d 832, 834-35 (7th Cir. 1999). The district court's order (the "Order"), Doc. 434, fits squarely within both categories.

The Order rewrote decades of law governing conditions of detention lawsuits and opened up a new and nearly unlimited theory of class action liability for detention center officials and the governments that employ them. Interlocutory review is vital and appropriate here.

**I.**     **Interlocutory Appellate Review of this Order is Appropriate Because the District Court Failed to Properly Address The Predominance of Individual Issues.**

The district court disregarded undisputed evidence of individual issues that should have precluded it from finding that that Plaintiffs satisfied Rule 23(b)(3)'s predominance requirement. Plaintiffs themselves barely attempted to establish predominance in their briefing and the district court did not accept the few predominance arguments that Plaintiffs made. Instead, the district court made findings about predominance that Plaintiffs did not advance, and it did so without addressing Cook County's and Dixon's arguments and evidence to the contrary.

**A.**     **The district court should not have certified the "extra recreation" subclass.**

Plaintiffs' "extra recreation" subclass should not even have been on the table. This Court repeatedly has held that "lack of exercise" is not actionable unless, over a long period of time, "movement is denied and muscles are allowed to atrophy and the health of the individual is threatened." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015). *See also French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (rejecting claims regarding "exercise in cramped quarters"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (allowing claim only because the plaintiff missed "up to seven weeks" of recreation and had, at most, "one hour of exercise every two weeks"). Even granting that the bar for suing may be lower for <u>juvenile</u> detainees, the district court certified a subclass to litigate over alleged denial of "extra" recreation without addressing these controlling precedents at all.

The district court also ignored undisputed evidence of individual issues affecting this subclass. Plaintiffs based their "extra recreation" theory on just one past example of the JTDC offering recreational "tournaments" during a single school break earlier in 2015, before Dixon's tenure began. Those tournaments were not open to all detainees and most of the detainees to whom they were open did not attend. Indeed, JTDC records from that week show that only about a quarter of detainees participated in the tournaments. Doc. 398-4 at 19-20, 22-25; Doc. 431-5 at 62:22-65:13. Even with individual inquiries, a fact-finder would have to hypothesize what recreational opportunities the JTDC might have offered and which detainees would have been eligible, and then weigh the credibility of each detainee's testimony that he would have participated in those activities if given the chance. No precedent exists in this Circuit or anywhere else for litigating this kind of issue on a class basis.

### B.     The district court should not have certified the after-school activity subclass.

The district court's second certified subclass comprised an unknown and unknowable group of detainees who, in the district court's phrasing, "would have" attended four particular after-school activities. That subclass should not have been on the table, either. The district court correctly noted in its first class certification opinion that "[n]ot all detainees were eligible for these programs." *T.S.*, 334 F.R.D. at 531. Most were limited to detainees on good behavior and discretion as to who could attend them lay with the staff of each "Center" within the JTDC. The district court did not address this problem, however, when it certified this subclass in its second opinion. Nor did the district court address how it could determine membership in the subclass.

Only one of the four activities—a single session of the "Free Write" creative writing workshop—was truly "canceled." Doc. 412-32. There was an eligibility list for this one canceled session, but attendance was not mandatory, and detainees did not attend all sessions for which they were eligible. Beyond presenting the eligibility list, Plaintiffs did not explain—and neither did the

district court—how the factfinder can determine who "would have" attended this session without individual inquiries.  Indeed, Plaintiffs did not even request a subclass of detainees who "would have" attended programs or argue that such a subclass would satisfy Rule 23.

Besides Free Write, the three other activities the district court lumped into the subclass were not "canceled" at all.  A "Karma Garden" mural painting group met as scheduled; only the location changed from outdoors to indoors.  Doc. 398-3 at 60, 62.  The other two activities were one-time occurrences that the JTDC only postponed for a week so that they did not overlap with the filming.[4]  Doc. 398-4 at 119-120; Doc. 398-5 at 2; Doc. 398-3 at 60, 65.  Neither Plaintiffs nor the district court explained how they will determine without examination and cross-examination which detainees "would have" attended the two postponed classes had they been held on the originally scheduled date.  Here, too, no precedent exists for such a claim to proceed on a class basis.

**C.     The district court should not have certified the "school on pods" subclass.**

With respect to the subclass the district court certified of detainees who had school classes taught on their residential pods for three days in July 2015, instead of in classrooms, the district court seemed to assume that Plaintiffs could prove "psychological harm" on all these detainees without individual inquiries.  Absolutely nothing in the record justified that conclusion.  Even T.S. and H.C., who were detained at the JTDC in July 2015 (Q.B. was not), submitted no evidence suggesting that they personally suffered psychological harm.

The district court rested its conclusion on Plaintiffs' expert report from a psychiatrist who had not examined any of the Plaintiffs or any other detainees in the proposed class.  The

---

[4]     Plaintiffs did not inquire during discovery about the content of a postponed sexual exploitation prevention class, how many detainees could have attended it, which detainees would have been eligible, or whether other such programs drew a full complement.  A one-time nutrition class also was merely postponed by a week, not canceled.  *See* Doc. 398-4 at 119-120.

psychiatrist wrote his report at an early stage of the case when Plaintiffs were still spinning their fabricated tales of weeks-long "lockdowns."  According to his report, he simply assumed the truth of Plaintiffs' false allegations and opined that if the JTDC truly had subjected detainees to all those alleged deprivations, these conditions in the aggregate could have caused psychological harm.  He said nothing about psychological harm stemming just from three days of not being able to walk from one part of the JTDC to another for school.  Questioned about this at his deposition, the psychiatrist unsurprisingly admitted that even if it is possible for a few days of school being conducted on a detainee's pod to have caused that detainee psychological harm, he could not determine this without individual inquiry.  Doc. 412:53 at 58:13-60:6.  Defendants included all of this in their opposition to class certification, but the district court did not address these issues in its opinion certifying the school-on-pods subclass.

D.     **The district court should not have certified the "functional capacity" subclass.**

Finally, the district court certified a subclass of detainees whose pods, on any day that TCFTV filmed, exceeded that pod's "functional operating capacity."  Each pod at the JTDC has either 16 or 18 single-bed secure rooms that open out onto one of two large common areas.  The JTDC has a policy stating that, ideally, the 16-bed pods should not have more than 12 occupants and the 18-bed pods should not have more than 14.  Doc. 412-36.  These targets, which the JTDC called the pod's functional operating capacity, were aspirational goals only, not a legal requirement.

Had the JTDC consistently met its aspirational goals, but exceeded them only on the days that filming took two pods offline, that would have been one thing.  Undisputed evidence, however, showed that the population of multiple JTDC residential pods exceeded their aspirational caps every day during June and July 2015—not just the few days that TCFTV was present—while other pods were closed or under their caps.  For example, on June 21, 2015, the day before TCFTV

arrived for the first time, 12 pods at the JTDC had more detainees than their functional operating capacity, 11 pods had fewer detainees than their aspirational cap, and one pod was closed. *See* Doc. 398-1 at 21. A week later, after TCFTV had departed, the situation was basically unchanged: 12 pods were over their functional operating capacity, nine were under, and one was closed. *See id.* at 27. This demonstrates Plaintiffs' inability to prove through common evidence that every instance of a pod exceeding its functional (but not actual) capacity on a day when filming occurred happened "as a result of" the filming.

As the basis for certifying this subclass, the trial court noted that "Q.B.'s pod exceeded its functional capacity by one resident during filming," meaning 15 of 18 beds in the pod were filled, and that this occurred after the JTDC moved one resident from the intake unit to a residential pod. Order at 60-61. This decision was made by a "Transfer Committee" based on individual factors, such as which Center's programming would be best for that detainee.

The district court identified Q.B. as the sole plaintiff who could represent this subclass because only he resided in an 18-bed pod that briefly had 15 rather than 14 detainees. Order at 60-61. Q.B., however, resided in a pod reserved for detainees with discipline problems. On the day the 15th detainee was assigned to this pod, other pods remained below their policy thresholds. In order to determine whether filming "caused" Q.B.'s pod to gain that extra resident, the fact-finder would need to examine the Transfer Committee's decision and its reasons for assigning this detainee to Q.B.'s disciplinary pod. The fact-finder then would have to determine, in a manner that would not advance the claims of any detainees outside of Q.B.'s pod, whether, but for filming, the transfer committee might have placed that 15th detainee in a different pod.

**E.     The district court's certification decision conflicts with this Court's precedents.**

When the district court denied Plaintiffs' first class certification motion, it cited this Court's precedents, correctly applied the facts of this case to those precedents, and properly denied class certification because Plaintiffs satisfied neither the typicality requirement of Rule 23(a) nor the predominance requirement of Rule 23(b)(3). Plaintiffs did not fix these problems in their renewed motion because they are endemic and not fixable. The district court, however, chose in its second opinion to leave these issues unaddressed.

In *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 554-55 (7th Cir. 2016), this Court precluded class certification in conditions-of-detention cases absent proof of a "gross and systemic deficiency that applies to the entire class." The plaintiffs in *Phillips* alleged inadequate medical care at a jail, including failures to treat serious illnesses. Even so, this Court rejected certification because the plaintiffs did not establish "systemic deficiencies" that "rendered the medical treatment constitutionally inadequate for all [detainees]." *Id.* at 554. Here, as in *Phillips*, all the key liability questions—even assuming the minor issues behind Plaintiffs' subclasses were actionable—"can only be answered by looking at the unique facts of each detainee's case," and therefore "are incapable of being solved on a classwide basis." *Id.* at 556.

*Phillips* itself built upon years of similar precedent from this Court. In *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010), the plaintiffs' complaint was that police took too long to release people after arresting them for "fine-only" offenses. *See id.* at 703. The plaintiffs proposed a two-hour "bright-line rule," but this Court held that to be "incompatible" with the "concept of reasonableness," which required individualized examination of why a particular detainee may have been held longer than two hours. *Id.* This Court held similarly in *Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009), where class members' claims would have turned on whether the

11

length of the delay" before their release from custody "was reasonable." *Id.* at 515. "A putative

class representative cannot satisfy the predominance requirement by defining the common issue

narrowly and leaving all of the individual issues for follow-on proceedings." *Id.*

This Court has reaffirmed *Phillips* as recently as December 2020. *See McFields v. Dart*,

982 F.3d 511 (7th Cir. 2020) (upholding denial of certification). *McFields*, like *Phillips*, involved

medical care—specifically, whether pretrial detainees must be seen face-to-face before detention

center officials classify their complaints as urgent or routine. *See id.* at 513. This Court agreed

with the district court that the plaintiffs' theory of class certification raised too many individual

issues about the impact of this policy (if any) on each detainee. *See id.* at 516-17.

Cook County and Dixon relied extensively on *Phillips* in their opposition to class

certification both times Plaintiffs moved for it. In the district court's first opinion denying

certification, the district court discussed *Phillips* extensively and held that Plaintiffs' claims fell

short of the *Phillips* standard. The district court also determined, correctly, that Plaintiffs' claims

must be considered through the lens of whether the conditions at issue were "objectively serious."

*T.S.*, 334 F.R.D. at 529-30. In the district court's second opinion granting certification, however,

it mentioned *Phillips* but did not analyze the case. Respectfully, the district court's first opinion

was correct, and its second opinion constituted error.

## II.    Interlocutory Appellate Review of this Order is Appropriate Because The State Does Not Have a Fiduciary Duty to Detainees and Such a Duty Will Create Potential for Immeasurable Liability for the State and Unduly Burden Both the State and Courts.

The district court concluded that "Illinois law recognizes a guardian-ward relationship as

a type of fiduciary relationship." Order at 26, *citing In re Estate of Gustafson*, 268 Ill. App. 3d

404, 407, 644 N.E.2d 813, 816 (2d Dist. 1994). Although detainees at the JTDC were not wards

of the State, the district court was "comfortable" that "Dixon acted as their guardian . . . and that

he therefore owed them a fiduciary duty." *Id.* That was essentially the extent of the district court's analysis of the question. Illinois law does not authorize this leap in logic, and there was no precedent for imposing a fiduciary duty on detention officials.

Courts elsewhere in the country have rejected attempts to impose fiduciary duties on detention officials. *See, e.g.*, *Sperry v. Corizon Health, Inc.*, No. 18-3119-SAC, 2020 WL 905745, at *3 (D. Kan. Feb. 25, 2020) ("Kansas courts have not recognized an action for breach of fiduciary duty in the prison context…"); *Hernandez v. Cate*, No. EDCV 11-00627 R AJW, 2014 WL 6473769, at *3 (C.D. Cal. Oct. 16, 2014) (although a fiduciary relationship may exist between a prison physician and his patient or with respect to an inmate's funds, no authority supports the existence of a fiduciary relationship with respect to a prisoner's conditions of confinement); *Rua v. Glodis*, 52 F. Supp. 3d 84, 100 (D. Mass. 2014) (jail supervisor did not owe fiduciary duties to pretrial detainees; relationship did not fall within the "many familiar and well recognized forms of fiduciary relationships"); *Surratt v. McClaran*, 234 F. Supp. 3d 815, 833 (E.D. Tex. 2016), *aff'd sub nom. Surratt v. McClarin*, 851 F.3d 389 (5th Cir. 2017) ("no basis for recognizing Plaintiff's novel conception of a fiduciary relationship" between arrestee and arresting police officers). Most recently, a district court considering this issue analyzed it in a manner directly contrary to the district court's analysis in this case:

> To the extent that Plaintiff has alleged that the Southern Regional Jail owed him a fiduciary duty . . . there is no such duty owed to a pretrial detainee under law, but only a duty of care pursuant to the Eighth and Fourteenth Amendments. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("prison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the "obligation to take reasonable measures to guarantee the safety of the inmates themselves."). In West Virginia, this has been interpreted as a duty of reasonable care, akin to the duty landowners owe to invitees. *See McNeal v. United States*, 979 F. Supp. 431 (N.D.W. Va. 1997); *see also, Burdette v. Burdette*, 127 S.E.2d 249 (W. Va. 1962).

*See Saunders v. Raleigh County*, No 5:20-cv-00221, 2020 WL 9348328, at \*15 (S.D. W. Va. May 18, 2020) (magistrate's recommendations), *aff'd*, 2021 WL 1180786 (Mar. 29, 2021).

If, as Cook County and Dixon contend, the district court erred when it became the first court in the country to impose such a duty on detention officials, granting interlocutory review will give this Court the opportunity to both develop the law of this Circuit and also address novel issues that will ultimately affect the state's potential liability for decades to come. *See Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 658 (7th Cir. 2004) ("[T]he [Rule 23(f)] case law teaches that the more novel the issue presented by the appeal and so the less likely that the district court's resolution of it will stand, the more important the resolution of the issue is either to the particular litigation or to the general development of class action law, and the more likely the prompt resolution of the issue is to expedite the litigation and prevent a coercive settlement, the stronger the case for allowing the appeal.") (collecting cases). Indeed, because it was the district court's decision to impose a fiduciary duty on detention officials that, "as a functional matter resolve[d] the question of class certification," "Rule 23(f) grants [this Court] jurisdiction to hear interlocutory appeals of [that decision]." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 444 (7th Cir. 2020); *cf. Dancel v. Groupon, Inc.*, 949 F.3d 999, 1007-08 (7th Cir. 2019) (holding that where a district court's interpretation of the prima facie elements of the claim drive the Rule 23 analysis, the issue "must be determined before class certification by considering the substantive law underlying the putative class's claims."). Cook County and Dixon should not have to take this case through a class action trial before being able to challenge the district court's ruling that Dixon owed a fiduciary duty to detainees.

### III.    The Damages Calculation for Breach of Fiduciary Duty to Detainees is Unknown.

If this Court does not grant interlocutory review and reverse the district court's Order, the resultant problems will go far beyond a new flood of litigation over non-serious conditions of

detention. The district court's Order explicitly recognized that Plaintiffs' restitutionary damages in this case, if any, are "*de minimis*." Order at 30, 70. Illinois law, however, allows for punitive damages in breach of fiduciary duty cases. *See, e.g., Tully v. McLean*, 409 Ill. App. 3d 659, 948 N.E.2d 714 (1st Dist. 2011). Plaintiffs' Complaint includes a demand for punitive damages, Plaintiffs have repeatedly stated their intention to seek punitive damages, and the district court's order did not address what kinds of damages it would allow the classes it certified to pursue.

If the district court would only allow a jury to award the *de minimis* restitutionary damages Plaintiffs are seeking—basically, a $50 "director's chair" that Dixon received from TCFTV and the value of photographs Dixon and other JTDC staff members took with *Empire* cast members— the case is not worth the resources it would cost to try it. If, by contrast, the district court would allow Plaintiffs to seek punitive damages, this would expose Cook County taxpayers to unknown liability based on whatever standards the district court may devise for the novel cause of action it created. This, too, is a basis for granting a Rule 23(f) appeal. *See Blair*, 181 F.3d at 835 (An interlocutory appeal is justified in precisely that circumstance: where the effect of class certification has so raised the stakes that it substantially increases "the risk of settlement or other disposition that does not reflect the merits of the claim.").

## CONCLUSION

For the aforementioned reasons, Cook County and Leonard Dixon respectfully request that this Court grant leave to appeal the trial court's order granting class certification.

Respectfully submitted,

<table>
<tr><td>

*s/Francis J. Catania*
Francis J. Catania
Danielle Mikhail
Cook County State's Attorney's Office
50 West Washington, 5th Floor
Chicago, IL 60602
Telephone: 312-603-3373
francis.catania@cookcountyil.gov
danielle.mikhail@cookcountyil.gov

</td><td>

*s/Lyle K. Henretty* (by consent)
Lyle K. Henretty
Patrick D. Morris
Cook County State's Attorney's Office
50 West Washington, 27th Floor
Chicago, IL 60602
Telephone: (312) 603-1434
Telephone: (312) 603-1427
lyle.henretty@cookcountyil.gov
patrick.morris@cookcountyil.gov

</td></tr>
<tr><td>

*Attorneys for Defendant the County of Cook, Illinois*

</td><td>

*Attorneys for Defendant Leonard Dixon*

</td></tr>
</table>

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEUDRE 31(e)

The undersigned hereby certifies that I have uploaded electronically, pursuant to Circuit Rule 31(e), a version of the brief, in PDF format, to the Court's web site via the internet.

*/s/ Francis J. Catania*
Francis J. Catania


## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEUDRE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because this brief contains 5,009 words inclusive of footnotes. In making this certification, I relied upon the word count of the Microsoft Office Word for Mac word processing system used to prepare this brief.


2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 12 point Times New Roman.


*/s/ Francis J. Catania*
Francis J. Catania


## CERTIFICATE OF SERVICE

I, Lyle K. Henretty, hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

*/s/ Lyle K. Henretty*
Lyle K. Henretty

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| T.S. and Q.B., on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | **No. 16 C 8303** |
| v. | ) ) | **Judge Rebecca R. Pallmeyer** |
| TWENTIETH CENTURY FOX TELEVISION, FOX BROADCASTING CO., TWENTY-FIRST CENTURY FOX, INC., THE COUNTY OF COOK, ILLINOIS, and LEONARD DIXON, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In the summer of 2015, Plaintiffs T.S. and Q.B. were pretrial detainees at the Cook County

Juvenile Temporary Detention Center ("JTDC").  During three short intervals that summer,

Defendant Twentieth Century Fox and other Fox entities (collectively, "Fox Defendants") filmed

scenes for the television show *Empire* at the JTDC.  Plaintiffs allege that *Empire* filming disrupted

the normal operations of the JTDC in ways that harmed them and other juvenile detainees.  They

further allege that Defendant Leonard Dixon (the Superintendent of the JTDC), and Cook County,

Illinois (collectively, "County Defendants"), lacked a legitimate government purpose for imposing

certain conditions of confinement to facilitate the filming.  In this proposed class action, Plaintiffs

assert claims under 42 U.S.C. § 1983 and various supplemental state law theories.  *See* 28 U.S.C.

§§ 1331, 1367(a).  The court previously denied Plaintiffs' motion for class certification without

prejudice.  *T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518, 541 (N.D. Ill. 2020).

Before the court are four motions: Plaintiffs' motion to amend their complaint to add H.C.

as a class representative [365], Plaintiffs' renewed motion for class certification [351], the County

Defendants' motion for summary judgment [411], and the Fox Defendants' motion for summary

judgment [409].  For the reasons below, the court grants Plaintiffs' motion to amend their

EXHIBIT 1

complaint; grants in part and denies in part Plaintiffs' motion for class certification; and grants in part and denies in part Defendants' respective motions for summary judgment. Because the court grants summary judgment with respect to Plaintiffs' constitutional claims, the only remaining claims arise under state law. In light of this case's long procedural history and the substantial expenditure of judicial resources, the court will exercise its discretion to retain jurisdiction of the remaining claims. *See, e.g.*, *Timm v. Mead Corp.,* 32 F.3d 273, 276–77 (7th Cir. 1994) (upholding district court's retention of jurisdiction over state claims after granting summary judgment on only federal claim in the case).

## **BACKGROUND**

The JTDC is a five-story juvenile detention facility in Cook County, Illinois that housed more than 300 youth in the summer of 2015. (Defs.' SOF [415] ¶ 1; PSOAF [421-3] ¶¶ 1–2.) These detainees were awaiting trial or other court proceedings and typically remained at the JTDC for around 10 days, though some stayed far longer. (Pls.' Ex. 10 [422-10] (hereinafter "Kraus Rpt."), ¶ 20.) There is conflicting evidence on the range of detainee ages, but the parties agree that no detainee was younger than 12 or older than 21. (*Compare* Pls.' Ex. 4 [422-4] (hereinafter "Dunlap Rpt.") ¶ 27, *with* Defs.' Ex. 3 [412-3] (hereinafter "Klemke Dep."), at 22:16–24.) Detainees at the JTDC live in units called "pods" which contain rooms for individual residents that open to an enclosed common area. (PSOAF ¶ 1.)

### **1. Fox and the JTDC**

In May 2015, the Fox Defendants were looking for a prison-related backdrop for two episodes of *Empire*, a television show set in New York City but filmed in Chicago. (*See* PSOAF ¶ 12; Fox Summ. J. Mot. [410] at 9.) Fox's "location scout" Jonathan Klemke was part of the team that first came across the JTDC. (Klemke Dep. at 19:3–5.) Klemke testified that a friend found the JTDC on Google Maps and recommended he look into it. (*Id.* at 19:6–19.) Klemke "follow[ed]

up on" the recommendation by "call[ing] and g[etting] in touch with" Dixon.  (*Id.*)  Dixon expressed

interest, and Klemke drove over to the JTDC to meet with him that same day.  (*Id.* at 23:18–24:3.)

Once at the JTDC, Klemke toured portions of the facility; the extent of the tour is not clear

from the record.  (Klemke Dep. at 27:18–24, 81:19–82:12.)  Klemke took photos, including two

pictures of the outdoor yard that appear to be taken from a window on the fourth or fifth floor of

the facility.[1]  (Defs.' Resp. to PSOAF [430] (hereinafter "Resp. to PSOAF"), ¶ 18; Pls.' Ex. 19 [422-

19]; Pls.' Ex. 20 [422-20].)  At some point during the tour, Klemke saw groups of 15 to 20 detainees

being transported in the hallways but did not know why they were moving about the hallways at

the time.  (Klemke Dep. at 25:11–26:2, 69:8–11.)  Klemke saw that the classrooms on the second

floor were empty during his tour.  (*Id.* at 69:17–70:12.)  He was surprised the classrooms were

empty, but he testified that Dixon explained the kids at the JTDC were "off during the summer."

(*Id.*)  Dixon himself testified that there is summer school at the JTDC, and, thus, he "couldn't have

told [Klemke] school was out for the entire summer . . . ."  (Defs.' Ex. 5 [412-5] (hereinafter "Dixon

Dep.") at 71:8–19.)

Klemke admitted that, based on his tour, he understood that the yards were the only place

that the detainees could go outdoors.  (Klemke Dep. at 110:1–14.)  Klemke testified, however,

that Dixon told him there were alternative indoor locations that would allow the detainees to

exercise.  (*Id.* at 109:1–12.)  Likewise, Klemke testified that Dixon assured him that visitors only

use the visitation room "on certain days and that we would be able to use the [visitation] room on

off days."  (*Id.* at 100:24–101:9.)  At the time, Klemke raised these questions because "part of the

initial scouting is to determine whether a facility can continue its operation while also

accommodating a film crew."  (*Id.* at 103:23–104:18.)  Klemke testified that he did not "really know

---

[1]    Plaintiffs cite page 46 of Klemke's deposition for the proposition that Klemke toured
JTDC's upper "Pod" floors (floors four and five) and took photographs of pods on the upper floors.
(PSOAF ¶ 18.)  The cited page, however, does not appear in the record.

about running a prison," so he trusted the JTDC to ensure that "filming at the detention center [did not] interfere[ ] with the day-to-day existence of the juveniles held there . . . ." (*Id.* at 67:8–68:7.)

On June 2, 2015, five days later, Klemke emailed Dixon to follow up on their visit. (Pls.' Ex. 16 [422-16] (hereinafter "Klemke Follow-up Email").) Klemke explained that if filming were to proceed at the JTDC, Fox would want to use "a pod, the yard, the medical center, and the visitation room." (*Id.*) Fox expected to make "extensive use of several parts of the facility over the course of two days or so," likely for about 12 hours per day. (*Id.*) Klemke wrote that Fox could "attempt to limit the personnel in the facility to only the most essential," dropping their numbers from the usual 80 crew members to "closer to 30 people total." (*Id.*) And "the two largest segments of filming would be in the visitation room and the yard, which hopefully makes our presence less of an impact." (*Id.*) Klemke noted, "Obviously your schedule would take precedence over ours, and we would discuss a way of making sure that we don't interfere with your day to day operations too badly." (*Id.*) When asked why he made that offer, Klemke testified, "My intention in writing that was to give Superintendent Dixon an opportunity to tell me that he wasn't comfortable with the things that I had suggested." (Klemke Dep. at 36:19–37:8.) Klemke explained that his understanding was that "a film crew would not be normal but [would] not necessarily [be] a hindrance." (*Id.* at 36:8–17.)

On June 5, 2015, Klemke forwarded this email to his supervisor Brady Breen, Fox's Location Manager. (Klemke Follow-up Email.) Over the next couple of weeks, Breen toured the JTDC, as did creator of *Empire* Lee Daniels and other members of the *Empire* production team. (Defs.' Ex. 7 [412-7]; Defs.' Ex. 8 [412-8].) Daniels testified that his tour did not include any of the indoor gyms or other recreational areas. (Defs.' Ex. 2 [412-2] (hereinafter "Daniels Dep."), at 93:7–11.) The parties point to little other evidence concerning these tours.

On June 12, 2015, Breen emailed Dixon's assistant, Yvonne Akins, formally requesting permission to film at the JTDC. (Defs.' Ex. 8.) On June 17, Dixon, Akins, and JTDC's Acting

4

Project Director Gene Robinson met with Breen and other Fox representatives to discuss the logistics of Fox's plan to film. (Defs.' Ex. 12 [412-12] (hereinafter "Akins Dep.") at 21:22–25:10; Defs.' Ex. 7.) There was no discussion about "any changes to the schedules of residents that would need to occur in order to facilitate the filming." (Akins Dep. at 25:6–10.) Breen explained that "there was a lot of conversation about how can we accomplish the work that we want to accomplish and be respectful of what's going on in the building, and those guidelines were set very clearly by the team that works at . . . the juvenile detention facility." (Defs.' Ex. 4 [412-4] (hereinafter "Breen Dep.") at 111:7–21.)

On June 18, 2015, Breen and Cook County's Director of Real Estate Management Anna Ashcraft signed a contract to allow Fox to film at the JTDC. (Defs.' Ex. 1 [412-1] (hereinafter "Location Agreement").) The Location Agreement would allow Fox to film in the visitation room, exercise yard, medical office, living pod, and hallways and lobby areas each day from Monday, June 22, 2015 to Friday, June 26, 2015 at a cost of $1,500 per day, payable to the Cook County Real Estate Management Division. (*Id.*) Paragraph 1(D) of the agreement read as follows:

> [Fox] acknowledges that the [JTDC] is a functioning Municipal Building, operating as a residential facility for juveniles. [Fox] will cooperate with the County, JTDC Administration, and Security . . . so that normal operations of the Building and its occupants, and access by the public, are not disrupted in any manner whatsoever.

(*Id.*) Although Daniels testified that he personally was not aware of Paragraph 1(D) (Daniels Dep. at 95:8–25), he also testified that no one ever told him that Fox's presence had the potential to have a negative impact on the detainees, and "in choosing to film at JTDC," he "assumed that the residents of JTDC would be treated with respect." (*Id.* at 96:19–22, 127:16–20.) The agreement also allowed Fox to return to JTDC to film additional scenes or retakes within a reasonable time so long as Fox provided notice. (Location Agreement ¶ 5.) Later, Fox and the JTDC would sign two addenda to the Location Agreement: one on July 7, 2015, allowing Fox to return to the JTDC to continue filming from July 13 to July 16 and another on August 14, 2015, allowing Fox to return from August 23 to August 25. (Defs.' Ex. 13 [412-13] (hereinafter "July Addendum"); Defs.' Ex.

14 [412-14] (hereinafter "August Addendum").)  The other language from the Location Agreement

applied to the addenda as well.  (Defs.' Ex. 11 [412-11] (hereinafter "Kruzel Dep.") at 54:9–18.)

After signing the Location Agreement, the parties continued their discussions.  JTDC

General Counsel Zenaida Alonzo worked with Dixon to tell Fox "what areas [JTDC] could put off

for filming and . . . still meet the requirements for the kids."  (Defs.' Ex. 42 [412-42] (hereinafter

"Alonzo Dep.") at 12:13–13:23, 27:17–29:21.)  For example, Fox had initially wanted to film in the

infirmary.  (Location Agreement ¶ 1(A).)  Alonzo emailed Breen on June 30, 2015, however, telling

him that "JTDC cannot accommodate any filming [in our infirmary]" because "we have federal

standards that we have to comply with and this would impact our ability to provide medical care

for our residents."  (Defs.' Ex. 45 [412-45] at 2–4.)  When asked how much equipment Fox would

need to store at the JTDC while filming, Breen responded, "Imagine if we emptied a semi trailer

filled to the roof."  (Defs.' Ex. 20 [412-20] at 2.)  JTDC agreed to allow Fox to use Pod 3B for

filming and Pod 3A to store their equipment, though Breen had suggested Fox could store the

equipment under tarps in the outdoor yard if necessary.  (*Id.* at 2–4.)  Pods 3A and 3B are

ordinarily "Alpha" intake pods, where new detainees are screened and assessed upon admission,

but JTDC agreed to clear out these two pods during filming.  (Resp. to PSOAF ¶ 29; *see* Pls.' Ex.

66 [422-66]; Defs.' Ex. 20.)

## 2.  Filming

Fox filmed at JTDC from June 22 to 26, from July 13 to 16, and from August 23 to 25.

(Location Agreement; July Addendum; August Addendum.)  During that time, Fox occupied, in

some capacity, the library, Pods 3A and 3B, the outdoor yards, the chapel, and several

classrooms.  (Resp. to PSOAF ¶¶ 28–30.)  Each of these rooms is located on the second or third

floor of the JTDC building.  (Resp. to PSOAF ¶¶ 4–5; *see* Pls.' Ex. 2 [422-2] at 3–4.)

Fox brought more than 150 people into the JTDC on at least four days and more than 200

people on at least one day.  (Pls.' Ex. 27 [422-27] (hereinafter "July 31 Robinson Email") at 3.)

But Plaintiffs have identified no evidence that the presence of the additional crew members by itself resulted in any additional restrictions on the JTDC detainees.  Breen understood that, despite Fox's presence, JTDC staff "had made accommodations to make sure that normal operations [of the JTDC] should continue."  (Pls.' Resp. to Defs.' SOF [421-2] (hereinafter "Resp. to SOF") ¶ 87.)  Breen explained that, while filming, Fox had "consistent conversations about, 'Yes, you can be here, no, you can't be here, these are the times at which we can do these things.'"  (Breen Dep. at 80:1–8.)  There were "certainly numerous situations where [Fox wasn't] able to do things that [they] wanted to do because of the . . . staff telling [Breen], you know, we can't do that right now, we can't do this right now because of the sensitivities of the location . . . . " (*Id.* at 146:22–147:6.)  For example, Breen testified that there were "many times" when "traffic from the lunch area to the third floor where the pods were was restricted" during filming in order to "protect the kids."  (*Id.* at 148:12–20.)

*Outdoor Yards.*  Detainees at the JTDC ordinarily get some form of Large Muscle Exercise ("LME") every day.  (Pls.' Ex. 43 [422-43] (hereinafter "Taylor Decl."), ¶ 13(c).)  While the parties do not define LME, the court presumes it includes active play such as running around, working out, or playing sports.  The JTDC has a large open-air courtyard on its third floor which is split into three adjoining yards and serves as the jail's only venue for outdoor recreation.  (Resp. to PSOAF ¶ 4.)  A rotating schedule determines each day whether detainees in a given pod will exercise in the outdoor yards or in indoor gyms on the first floor of the JTDC.  (Taylor Decl. ¶ 13(c); Pls.' Ex. 49 [422-49]; Resp. to PSOAF ¶ 6.)  No pod was scheduled to be outside every day that summer.  (Pls.' Ex. 49.)  JTDC would sometimes prohibit detainees from participating in off-pod exercise as a form of discipline or to accommodate a staff shortage.  (Taylor Decl. ¶ 13(c)(iv).)  In fact, JTDC Deputy Executive Director William Steward testified that "[l]arge muscle exercise is done on pod quite a bit," and "[i]t doesn't matter where the exercise occurs as long as they get

7

it . . . [and get it] with the proper staff." (Defs.' Ex. 17 [412-17] (hereinafter "Steward Dep."), at 233:14–234:1, 235:5–10; *see also* Defs.' Ex. 56 [412-56] at 12 (Aug. 10), 13–14 (Aug. 17).)

Fox planned to a spend substantial time filming in the outdoor yards. (Klemke Follow-up Email.) JTDC closed off the yards each time Fox came to film, and the yards remained closed on the day after at least the June and July sessions so that JTDC could clean and "thorough[ly] search" the yards. (Taylor Decl. ¶ 17; Pls.' Ex. 34 [422-34]; Pls.' Ex. 36 [422-36].) Although the indoor gyms remained open, the closure of the outdoor yards meant there were not enough off-pod spaces and time slots for every pod to use, so residents in many pods received their daily LME activity within their pods while Fox was filming. (Taylor Decl. ¶ 18; July 31 Robinson Email at 3.) One detainee filed a grievance (not signed or dated, but referred to by Plaintiffs as the "June 2015 Resident Grievance"), complaining, "We need RECK. We haven't had Reck in days. Fuck the empire. Just cause there [*sic*] here doesn't mean we don't gotta have reck." (Pls.' Ex. 57 [422-57].) Plaintiffs have identified no evidence that anyone at Fox knew that detainees were forced to exercise on their pods during Fox's visit.

***Classrooms.*** The JTDC also houses the Nancy B. Jefferson School, which is part of the Chicago Public School system and serves detainees year-round with breaks in June and August. (Resp. to PSOAF ¶ 33; Fox Summ. J. Mot. at 17.) The school's classrooms are located on the second floor of the JTDC and are used for classes, after-school programming, recreation, and commissary. (Dunlap Rpt. ¶ 67.) On normal school days, JTDC staff transport detainees from their pods to the second-floor classrooms. (Taylor Decl. ¶ 13(a).) Although Fox never filmed in the classrooms, the JTDC allowed Fox to use classrooms to store equipment and give the crew a place to rest. (Resp. to SOF ¶¶ 21–22.) During Fox's June and August filming dates, the school was on summer break. (Resp. to SOF ¶ 42.) During the July filming session, however, Fox occupied classrooms during three scheduled days of school. (*Id.* ¶¶ 41–43.)

On those three days in July, detainees remained in their pods for school, and teachers travelled to the individual pods to instruct the students. (*Id.* ¶ 43.) T.S., one of the named plaintiffs in this case, had school instruction in his pod for one or two of the three affected July days.[2] He testified that, during filming, many of his teachers did not show up, and those that did show up arrived late and left early, while the detainees just "continued to play cards and watch TV . . . [until] it was time for [the teacher] to roll off." (Defs.' Ex. 22 [412-22] (hereinafter "T.S. Dep.") at 30:4–31:21, 32:18–33:24.)  Kenya Taylor, who then worked at JTDC as a Youth Development Specialist, stated, "It was harder to maintain discipline during school because there were more distractions and temptations on the pods (televisions, rooms and beds)." (Taylor Decl. ¶¶ 1, 3, 21.)  JTDC detainees had taken classes in their pods on previous occasions, for example when guests such as Congressman John Lewis had come to speak at the facility. (Defs.' Updated Ex. 17 [431-2] at 129:23–130:24.)  Earl Dunlap, the JTDC's former Transitional Administrator, testified that in another instance, JTDC's administration had decided to switch to on-pod schooling due to a safety issue.[3] (Defs.' Ex. 60 [431-7] (hereinafter "May Dunlap Dep.") at 27:4–10.)  Plaintiff's psychiatric expert Dr. Louis Kraus[4] testified that while, in general, missing "a week of school here or there" is "likely not going to have a long-term impact on your general educational needs," and "[o]ne or two days may not impact the general education," such disruptions "may impact the youth for other reasons." (Defs.' Ex. 53 [412-53] (hereinafter "Kraus Dep.") at 58:4–59:4.)  Dr. Kraus

---

[2]    T.S. testified that, on July 14, he left the jail to appear in court. (T.S. Dep. at 136:1–24.)  Defendants' Local Rule 56.1 statement claims that T.S. was confined to his individual cell for a disciplinary violation on July 15, but they have cited no evidence in the record to support that statement. (Resp. to SOF ¶ 47.)

[3]    Dunlap has experience administering the JTDC, and Plaintiffs have retained him as an expert witness based on his "50 years of experience in the profession of juvenile justice and specifically in the area of juvenile detention." (Dunlap Rpt. ¶¶ 2–3.)

[4]    Among other things, Dr. Louis Kraus is a Professor and Chief of Child and Adolescent Psychiatry at Rush University Medical Center in Chicago, Illinois and has worked with juveniles in correctional settings for the past 28 years. (Kraus Rpt. ¶ 1.)

did not specify what those "other reasons" are.  Plaintiffs have provided no evidence that Fox knew that school was in session during the July filming session.

The second-floor classrooms, and other second-floor areas such as the library, are also ordinarily used for after-school programming such as "Free Write" and nutrition education.  (Resp. to SOAF ¶ 37; Pls.' Ex. 60 [422-60]; Pls.' Ex. 62 [422-62]; Buckingham Dep, Ex. E to Defs.' Class Cert. Mot. [248-5] at 54:1–11.)  During the weeks when Fox was filming, the JTDC postponed or cancelled a number of these programs.  (Resp. to SOF ¶ 44.)  The JTDC also eliminated or postponed some commissary visits to the second-floor classrooms during filming.  (Resp. to PSOAF ¶ 39.)  "Commissary" involved opportunities to buy snacks, as well as activities like ping pong and video games.  (PSOAF ¶ 39.)  Not all commissary visits were cancelled, however.  (Defs.' Ex. 62 [431-9] at 2 (noting that on June 23, 2015, JTDC employees "escorted residents to classroom 319 for commissary").)  Again, there is no evidence that anyone at Fox knew that the JTDC cancelled any programs or commissary visits to accommodate filming.

***Visitation room.***  JTDC typically dedicates a room on the second floor for detainees to meet visitors such as parents or grandparents.  (Resp. to PSOAF ¶ 11.)  That room is 1302 square feet and contains twelve tables.  (*Id.*; Defs.' Ex. 35 [412-35] (hereinafter "Robinson Decl.") ¶ 4.)  Fox filmed in this visitation room on at least some of its days at the JTDC.  (Resp. to PSOAF ¶ 30.)  Visitation continued on every day of filming; JTDC used classrooms as a substitute visitation area.  (Resp. to SOF ¶¶ 65, 70; July 31 Robinson Email at 3.)  The substitute visitation area was somewhat smaller:  it was just 1148 square feet and could accommodate just eight visitors at a time instead of twelve.  (Robinson Decl. ¶ 6; Pls.' Ex. 47 [422-47] at 2, 7.)  Robinson testified that he "personally designed the table arrangement [in the substitute room] . . . to ensure that visitors had space and privacy consistent with" the regular visitation space.  (Robinson Decl. ¶ 6.)  Nonetheless, two detainees testified that they felt there was less privacy during their visits in the alternate locations.  (T.S. Dep. 43:14–44:5; Defs.' Ex. 21 [412-21] (hereinafter "Q.B. Dep.")

at 64:3–14.)  It is undisputed that "[t]here is no evidence that [Fox] knew or had reason to know that the JTDC had moved visitation to a classroom, . . . the dimensions or layout of that [classroom], or the impact that the shift may have had . . . if any."  (Resp. to SOF ¶ 67.)

*Intake.*  Fox also used Pod 3A for storage and Pod 3B for filming.  (Defs.' Ex. 20 at 2–4.) As noted, these pods ordinarily serve as two of three "Alpha" intake pods, where the JTDC screens and assesses new detainees upon admission.  (Resp. to PSOAF ¶ 29.)  During Fox's visits, the JTDC transferred detainees housed in Pods 3A and 3B to other pods.  (Pls.' Ex. 66.) At least 14 residents in Pod 3A were transferred to other pods.  (*Id.*)  This forced the JTDC to "fill up" other pods "with 15 and 16 residents each."  (*Id.*)  While each JTDC pod was built to hold either 18 or 16 occupants, for safety reasons the JTDC's written policies limit the functional operating capacity of each pod to 14 or 12 occupants, respectively.  (Pls.' Ex. 67 [422-67] Part IV(a).)  Plaintiffs' experts, Mr. Dunlap and Dr. Kraus, stated in their reports that such overcrowding put the detainees' safety at risk.  (Dunlap Rpt. ¶¶ 53, 57–58; Kraus Rpt. ¶ 38.)  Although occupancy in certain pods regularly exceeded functional capacity independent of the *Empire* filming, the days in June when Fox filmed saw a significant increase in the number of pods that exceeded their functional capacity.  (*Compare* Defs.' Ex. 37 [412-37] (hereinafter "Pod Populations"), at 1–20, *with id.* at 21–26.)  Plaintiffs have identified no evidence that the JTDC informed Fox that its use of Pods 3A and 3B would force JTDC to overpopulate other pods.

*General harms.*  Dr. Kraus opined that forcing child-detainees to remain in their pods with fewer activities magnifies the psychological harm associated with keeping children in a detention center.  (Kraus Rpt. ¶ 30(a)–(b).)  JTDC's current director of mental health, Dr. Brian Conant, agreed.  (Pls.' Ex. 11 [422-11] at 177:15–178:7; *see also* Dunlap Rpt. ¶¶ 9, 65–67.)  Taylor, the Youth Development Specialist, noticed that during filming, the detainees on her pods felt "cooped up" and "there was a feeling of more tension, stress and anxiety on the pods where [she] worked." (Taylor Decl. ¶ 22.)

11

Alonzo, in her capacity as the JTDC's Rule 30(b)(6) witness,[5] testified that nobody at JTDC "notif[ied] Twentieth Century Fox Television that it was disrupting the normal operations of the JTDC." (Defs.' Ex. 6 [412-6] at 86:12–15.)

### 3.   T.S, Q.B., and H.C.

Plaintiffs have presented three representatives of the putative class: T.S., Q.B., and H.C.[6] Each is a former resident of the JTDC and was detained at the JTDC on some of the days in June, July, and August 2015 when Fox filmed *Empire*. (Resp. to SOF ¶¶ 1–2.)

*T.S.*  T.S. resided at the JTDC from December 3, 2014 until September 24, 2015. (*Id.* ¶ 37.)  While Fox was filming, T.S. recalls multiple days when JTDC provided no off-pod exercise and instead brought recreation specialists to the pods to engage the detainees in minimal exercise activities, such as twenty jumping jacks. (Pls.' Ex. 106 [422-106] (hereinafter "T.S. Interrog."), ¶ 13.)  T.S. also missed a Free Write session—and possibly a parenting class—that were cancelled due to Fox's presence. (Resp. to PSOAF ¶ 10(a); T.S. Interrog. ¶¶ 19–21.)  Due to Fox's presence at the JTDC, T.S. had school classes in his pod for one or two days during the July filming period. (T.S. Interrog. ¶ 15.)  Finally, T.S.'s mother visited him in the "less private" setting of the substitute visitation room, and her visit with him was shorter than usual. (*Id.* ¶ 16.)

*Q.B.*  Q.B. resided at the JTDC during the June and August filming sessions. (Resp. to SOF ¶ 38.)  Q.B. also had recreation on his pod for at least one day. (Pls.' Ex. 105 [422-105] ¶ 13.)  On one of the days that Fox was filming, Q.B.'s grandmother attempted to visit him but was turned away. (Resp. to PSOAF ¶ 10(b).)  Defendants dispute Plaintiffs' suggestion that

---

[5]    Alonzo gave two separate depositions: one that appears to be in her capacity as JTDC's General Counsel (Alonzo Dep.), and one on behalf of the JTDC pursuant to Federal Rule of Civil Procedure 30(b)(6), which allows an organization to designate a person to testify on its behalf. (Defs.' Ex. 6.)

[6]    Plaintiffs have sought leave to amend their complaint by, among other things, adding H.C. as a class representative. (Mot. to Am. Compl. [365].)  The court will address their motion below, but for now, the court includes all relevant facts about H.C.

Q.B.'s grandmother's inability to visit with Q.B. had anything to do with the number of tables available, and, indeed, Plaintiffs fail to cite any evidence that supports this claim. (*Id.*)

***H.C.*** H.C. resided at the JTDC from May 2015 to June 2016. (Resp. to SOF ¶ 39.) H.C. had recreation on his pod for at least one day during the filming (Pls.' Ex. 107 [422-107] (hereinafter "H.C. Interrog."), ¶ 10), and missed a Free Write session that was cancelled due to Fox's presence. (Resp. to PSOAF ¶ 10(c).) Like T.S., H.C. was in court on one of the three days that Fox filmed in July but had school on his pod for at least one day. (Resp. to SOF ¶ 46; H.C. Interrog. ¶ 8.) It is undisputed that H.C. did not leave his pod for at least one 24-hour period during Fox's filming, but the parties disagree as to why.[7] (Resp. to PSOAF ¶ 10(c).)

#### 4. Dixon's involvement

Dixon testified that he agreed to allow Fox to film *Empire* at the JTDC for a number of reasons. He felt it "would be good for the kids," "would create a certain energy in the facility," and would give everyone a "chance to see the actors." (Dixon Dep. at 111:23–112:8.) The only scheduled interaction between the detainees and the actors was a meeting in which actor Chris Rock spoke to a group of approximately 24 detainees for about 30 minutes during the June filming. (Resp. to PSOAF ¶ 47.) Terrence Howard also met with some of the detainees after filming concluded and later returned to the facility to develop a "book club." (Dixon Dep. at 205:19–207:11.) After the June filming session, a letter from the JTDC's Division of Resident Advocacy & Quality of Life to JTDC administrator Millicent McCoy commented on the effects of Empire's visit, and identified a number of benefits from the filming, including "excited-happy-enthusiastic staff," "elevated energy level," and increased staff interaction. (Pls.' Ex. 51 [422-51] (hereinafter "Resident Advocacy Letter"), at 2–3.) A July 31 email from the Acting Project Director Robinson listed similar benefits. (July 31 Robinson Email at 4.) Both communications, however, also listed

---

[7]     Defendants note that some other residents of H.C.'s pod attended off-pod activities on the day in question. (Resp. to PSOAF ¶ 10(c); *see also* Defs.' Opp'n to Renewed Mot. [397] at 39 (citing Justice Center Shift Report of 7/13/15, Opp'n Ex. LL).)

a number of negative effects of the filming, including interruptions to school, recreation, and intake (*id.*), as well as the fact that residents did not have the opportunity to "burn off some of their energy" in the school area and yards during the first week of their June summer break. (Resident Advocacy Letter at 2.)

Dixon, for his part, invited his wife to the filming and directed Akins to ask Breen to bring the actors to Dixon's office for photos before the shoot. (Resp. to PSOAF ¶ 49.) Dixon was photographed with many of the *Empire* stars. (*Id.* ¶ 52.) When Fox asked to return to film in August, Dixon's assistant said, "[I]f Dixon approve[s] this [Breen] will need to get Dixon a directors [*sic*] chair." (Pls.' Ex. 86 [422-86].) Breen did have such a chair made and gave it to Dixon. (Resp. to PSOAF ¶ 53.)

On July 15, 2015, Dixon received an email from Professor Thomas Geraghty concerning the conditions imposed on the JTDC detainees during *Empire* filming. (Pls.' Ex. 90 [422-90] at 9.) At the time, the JTDC was subject to monitoring under the ruling in *Doe v. Cook County*, No. 99-cv-3945, Dkt. No. 786 (N.D. Ill. May 15, 2015). In *Doe*, Judge Holderman appointed Dunlap to monitor the JTDC as a "Court Appointed Expert" and imposed a three-month observation period on the JTDC from May 20, 2015 to August 20, 2015. *Id.* at 1–2. In the July 15, 2015 email, Geraghty raised concerns that, in light of the *Empire* filming, the JTDC might be, among other things, putting juvenile detainees on lockdown. (Pls.' Ex. 90 [422-90] at 9.) Dixon responded by assuring Geraghty that the *Empire* filming had "no impact on regular programming for our kids other than changing the locations of some programs and visits." (*Id.* at 4.)

On August 7, Breen reached out to Dixon to propose that Fox return on August 12 for a third session of filming. (Pls.' Ex. 93 [422-93] at 2–3.) When Dixon forwarded the request to Alonzo, Alonzo replied, "I don't advise having them come before the *Doe* party meeting on 8/20," to which Dixon responded, "Agreed." (*Id.*) August 20, 2015 was the date that Judge Holderman had set for terminating the court-imposed monitoring of the JTDC. (Dunlap Rpt. ¶ 22; *Doe*, No.

14

99-cv-3945, Dkt. No. 786 at 1.)  Alonzo denied any nefarious purpose for this advice, testifying

that it simply would have been "burdensome" to accommodate filming while preparing for the *Doe*

meeting because of the "time, effort, [and] preparation for the Doe meeting" and "just having a lot

of people on site."  (Defs.' Updated Ex. 42 [431-4] at 91:12–93:6.)

## 5.  Procedural history

Plaintiffs T.S. and Q.B. filed this lawsuit on behalf of themselves and others similarly

situated on August 24, 2016.  They asserted constitutional and state-law claims against the Fox

entities, Cook County, Dixon, and numerous John Does.  The case was assigned to the Honorable

Amy J. St. Eve.  On October 5, 2016, Plaintiffs filed their First Amended Class Action Complaint

("FAC") [23].  The FAC added a Defendant: the Chief Judge of the Circuit Court of Cook County,

in his official capacity (hereinafter the "Chief Judge").  The court later granted in part and denied

in part Defendants' Rule 12(b)(6) motions to dismiss.  *See T.S. v. Twentieth Century Fox*

*Television*, No. 16 C 8303, 2017 WL 1425596 (N.D. Ill. Apr. 20, 2017).  Plaintiffs filed a Second

Amended Class Action Complaint ("SAC") [88] on May 23, 2017.  The Fox Defendants filed a

second Rule 12(b)(6) motion to dismiss, which the court granted in part and denied in part.  *See*

*T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, 2017 WL 4620841 (N.D. Ill. Oct. 17,

2017).

The following claims from the SAC moved forward:  a claim for violation of the Fourteenth

Amendment's due process clause, asserted under 42 U.S.C. § 1983 against Dixon, Cook County,

and the Chief Judge (Count I); a state-law claim for breach of fiduciary duty against Dixon (Count

VII); a state-law claim for inducement of breach of fiduciary duty against the Fox Defendants

(Count VIII); a state-law claim for intentional infliction of emotional distress against Dixon, Cook

County, and the Chief Judge (Count IX); and a state-law claim for unjust enrichment against the

Fox Defendants (Count XIII).[8]  Two remaining counts do not set forth independent claims but allege theories for holding Cook County liable for the acts of its agents: a state-law *respondeat superior* claim (Count XI), and a state-law claim for indemnification against Cook Country (Count XII).[9]

On May 23, 2018, the case was reassigned to this court after Judge St. Eve was confirmed to the Court of Appeals for the Seventh Circuit.  On January 16, 2020, the court denied without prejudice Defendants' motion to strike the class allegations [215] and Plaintiffs' motion for class certification [235].  *See T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518 (N.D. Ill. 2020).  As discussed in more detail below, the court determined that although some of Plaintiffs' claims may be amenable to class treatment, the proposed class definition was overbroad.  *See id.* at 525.

Later, on cross-motions for partial summary judgment, the court determined that the Chief Judge is entitled to Eleventh Amendment immunity because he acts on behalf of the State of Illinois, rather than Cook County, in his administrative role with respect to the JTDC.  *See T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, ___ F. Supp. 3d ___, 2020 WL 6870809, at *3 (N.D. Ill. Nov. 23, 2020).  Therefore, the court granted the Chief Judge's motion for summary judgment on all claims against him.  *See id.*  Further, based on the parties' stipulation, the court granted summary judgment in favor of Plaintiff's claim that Defendant Dixon was the Chief Judge's final decisionmaker with respect to the *Empire* filming.  *See id.* at *2.

---

[8]    In the SAC, Plaintiffs asserted a claim against Cook County and/or the Chief Judge for liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Plaintiffs withdrew that claim in their brief opposing summary judgment (*see* Pls.' Br. in Opp'n to Mot. for Summ. J. ("Pls.' Opp'n") [421-1] at 50 n.10), so the court dismisses it with prejudice.  The court also notes that the SAC (and the proposed Third Amended Complaint) asserts Counts VII and VIII against the Doe Defendants.  The time for identifying and serving the Doe Defendants passed long ago.  *See* FED. R. CIV. P. 4(m).  Therefore, the court assumes that the Plaintiffs are not pursuing any claims against those Defendants and dismisses them without prejudice.  *See id.*

[9]    The parties do not discuss *respondeat superior* liability in their briefs on summary judgment and class certification, but they do address indemnification.  *See infra* Part II.C.

## **DISCUSSION**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 248; *Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 984 (7th Cir. 2021).

Under Rule 23, a proposed class must satisfy four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. FED. R. CIV. P. 23(a). The class must then meet the requirements of one of the categories of class actions in Rule 23(b). *See Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). Plaintiffs seek certification of three classes under Rule 23(b)(3), which requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Plaintiffs also seek to bring their unjust enrichment claims against the Fox Defendants under Rule 23(b)(1)(B), which is appropriate when "adjudications with respect to individual class members . . . would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." FED. R. CIV. P. 23(b)(1)(B).

## I.     **Conditions of Confinement Claims under § 1983**

Defendants Cook County and Dixon have moved for summary judgment on Plaintiffs' conditions of confinement claims under 42 U.S.C. § 1983. In the alternative, Defendant Dixon

argues that qualified immunity applies.  Because the merits of Plaintiffs' § 1983 claims are closely intertwined with the qualified immunity inquiry, the court addresses them together.

### A. Merits

The Fourteenth Amendment's due process clause prohibits conditions of confinement that amount to punishment of pretrial detainees.  *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("pretrial detainees (unlike convicted prisoners) cannot be punished at all"); *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019).[10]  "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).  "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."  *Id.*  A combination of conditions of confinement, "even if not individually serious enough to work constitutional violations, may violate the Constitution . . . when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'"  *Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013) (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)).  In *Kingsley v. Hendrickson*, the Supreme Court clarified that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is *not rationally related to a legitimate governmental objective* or that it is *excessive in relation to that purpose.*"  *Kingsley*, 576 U.S. at 398 (emphases added).  In other words, a pretrial detainee need not show evidence of a defendant's subjective intent to punish.  *Id* at 397–98.

Although *Kingsley* addressed conditions-of-confinement claims in the excessive force context, the Seventh Circuit has extended *Kingsley*'s objective unreasonableness inquiry to "all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees."

---

[10]     By contrast, convicted prisoners may bring claims for unconstitutional conditions of confinement under the Eighth Amendment's cruel and unusual punishment clause.  *See Hardeman*, 933 F.3d at 821 (citing *Kingsley*, 576 U.S. at 400).

*Hardeman*, 933 F.3d at 823; *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018)

(applying *Kingsley* to pretrial detainee's claims of inadequate medical care).   Courts must also

consider whether the defendant acted purposefully, knowingly, or recklessly.   *See Kingsley*, 576

U.S. at 396 ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of

constitutional due process") (emphasis in original).[11]   Defendant Dixon does not dispute that he

personally approved both the filming of *Empire* at the JTDC and operational changes that enabled

the filming.   Indeed, the parties previously stipulated that Dixon was the final decisionmaker with

respect to "whether to permit the staging and filming of scenes for *Empire* at the [JTDC]" and

"whether and how the JTDC's operations would be altered in order to accommodate the *Empire*

filming."   *T.S.*, 2020 WL 6870809 at *2.

        To survive summary judgment on their conditions-of-confinement claims, therefore,

Plaintiffs must show a genuine dispute of material fact regarding whether the conditions at issue

were "not rationally related to a legitimate governmental objective" or were "excessive in relation

to that purpose."   *Kingsley*, 576 U.S. at 398.   In *Mulvania v. Sheriff of Rock Island Cnty.*, pretrial

detainees challenged a jail's policy requiring female detainees to wear either white underwear or

no underwear at all.   850 F.3d 849, 852 (7th Cir. 2017).   The Seventh Circuit reversed the district

court's grant of summary judgment for defendants, concluding that genuine disputes of material

---

[11]        At least one judge on the Seventh Circuit would impose a third requirement: that
the conditions in question be "objectively serious."   *Hardeman*, 933 F.3d at 827 (Sykes, J.,
concurring).   *But see McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018) (identifying only
two inquiries for due process challenges to pretrial detainees' medical care: (1) "whether the [ ]
defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the
consequences of their handling of [plaintiff's] case," and (2) "whether the challenged conduct was
objectively reasonable"); *accord Clark v. Trammell*, No. 18 C 5142, 2021 WL 979157, at *4 (N.D.
Ill. Mar. 16, 2021) (Lee, J.) (applying *McCann*'s two-step framework).
        Chief Judge Sykes's concurrence draws upon the Eighth Amendment deliberate
indifference standard for claims brought by convicted prisoners.   *See Hardeman*, 933 F.3d at 827
(Sykes, J., concurring) ("only 'objectively [and] sufficiently serious' deprivations are actionable as
a violation of the Constitution") (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).   This court
has previously quoted the *Hardeman* concurrence, *see T.S.*, 334 F.R.D. at 529, 536, but
acknowledges here that the Seventh Circuit has not yet held that "objectively serious" is a required
element for all Fourteenth Amendment conditions-of-confinement claims.

fact as to whether the policy was rationally related to a government interest—or, even if it was rationally related, whether the policy was excessive in light of detainees' dignitary interests— precluded summary judgment. *Id.* at 857–58.

Plaintiffs in this case have made a showing sufficient to survive summary judgment as well. They have identified facts suggesting that Dixon's decision to allow Fox to film at the JTDC was not rationally related to a government purpose, or that the conditions imposed to facilitate the filming were excessive in light of that purpose. Dixon testified that he believed filming "would be good for the staff" and "good for the kids." (Defs.' SOF ¶ 26 (citing Dixon Dep. 112:1–8).) There is some evidence that staff morale improved during filming, possibly because filming provided opportunities for staff to earn overtime. (*See* Defs.' SOF ¶ 36; PSOAF ¶ 54.) But Plaintiffs have offered facts suggesting there was little effort to encourage detainee meet-and-greets with the stars, such that any potential benefit the detainees would have derived from such contacts was minimal. (*See* Pls.' Opp'n at 21–22.) Some detainees were able to meet briefly with actors Chris Rock and Terrence Howard in June, but there were no interactions between *Empire*'s cast and crew and the detainees during the July or August filming periods. (PSOAF ¶ 47.) A reasonable jury could find that Dixon's motivations were more personal ones: He met and took photos with all of *Empire*'s stars, and he even received a "director's chair" to use during the August filming. (*Id.* ¶¶ 49–53.) There also is some evidence that Dixon took steps to minimize scrutiny of the filming by Professor Geraghty and Judge Holderman, who was monitoring the JTDC as part of the *Doe* litigation. (*Id.* ¶¶ 56–58.) A reasonable jury could conclude that Dixon lacked a legitimate governmental purpose for imposing the challenged conditions, or that the conditions were excessive in light of that purpose. *See Mulvania*, 850 F.3d at 856–58.

It is not enough, however, for Plaintiffs to show that Defendant Dixon may have violated their constitutional rights. Plaintiffs are suing Dixon in his individual capacity (Pls.' Opp'n at 45), meaning that he may raise qualified immunity as an affirmative defense. *Kentucky v. Graham*,

473 U.S. 159, 166 (1985) ("[A]n official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses," including qualified immunity.).[12]  If Dixon is entitled to qualified immunity, then Plaintiffs' § 1983 claims cannot go forward.

### B. Qualified Immunity

The doctrine of qualified immunity consists of two related inquiries: "first, whether the constitutional right asserted by the plaintiffs was clearly established at the time the defendants acted; and second, whether defendants' actions violated that clearly established right." *Hardeman*, 933 F.3d at 820 (citations omitted).  "If either inquiry is answered in the negative, the defendant official is protected by qualified immunity."  *Id.* (citations omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that courts may exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first").  Once defendants have raised qualified immunity as an affirmative defense, plaintiffs bear the burden of showing that the constitutional right was "clearly established."  *Hardeman*, 933 F.3d at 820; *see also Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007) ("Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it.").  Courts should not define clearly established law "at a high level of generality."  *Hardeman*, 933 F.3d at 820 (citations omitted).  "An appropriately defined right is clearly established if there is a closely analogous— though not necessarily identical—case identifying that right, or if the defendant's conduct was so egregious and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully."  *Id.* (internal quotation marks and citation omitted).  "The dispositive question is whether

---

[12]    Because Plaintiffs' claims against Dixon are in his individual capacity, not his official capacity, the County Defendants' Eleventh Amendment arguments are irrelevant.  *See Graham*, 473 U.S. at 167 ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.").  The court also notes that *Mathlock v. Fleming*, No. 18-cv-6406, 2019 WL 2866726 (N.D. Ill. July 3, 2019), is inapposite here.  In *Mathlock*, Dixon and the Chief Judge were named as defendants in their official capacities, and the district court concluded that both had Eleventh Amendment immunity.  *Id.* at *4.  In any case, the fact that an officer has Eleventh Amendment immunity in a single case does not mean the officer has such immunity in all cases.

the violative nature of *particular* conduct is clearly established." *Id.* (internal quotation marks and citations omitted, emphasis in original).

At a high level of generality, the right of pretrial detainees to be free of conditions of confinement imposed for no legitimate governmental purpose is clearly established. *See Bell*, 441 U.S. at 539. "The dispositive question," however, "is whether the violative nature of *particular* conduct is clearly established." *Hardeman*, 933 F.3d at 820 (emphasis in original). As discussed above, the parties dispute whether the challenged conditions were objectively unreasonable or were excessive in relation to a legitimate government purpose. In the absence of an analogous case holding that similar conditions are unconstitutional, the court cannot conclude, as a matter of law, that pretrial detainees have a clearly established right to be free of the arguably modest disruptions at issue here.

The two cases that Plaintiffs cite in their brief opposing summary judgment are not analogous. In *Demery v. Arpaio*, the Ninth Circuit held that the practice of installing webcams in a county jail and livestreaming the video online violated detainees' Fourteenth Amendment rights because the webcams were not reasonably related to a nonpunitive purpose. 378 F.3d 1020, 1030–31 (9th Cir. 2004). Applying *Bell*, the court reasoned that "the webcams did not improve the security of the pretrial detention center when closed-circuit video cameras were already present," and "turning pretrial detainees into the unwilling objects of the latest reality show" did not serve a legitimate goal, such as ensuring detainees' attendance at trial or promoting prison safety. *Id.* at 1030, 1031. In *Robles v. Prince George's Cnty.*, the Fourth Circuit held that police officers violated a pretrial detainee's due process rights when they tied him to a metal pole in a deserted parking lot and left him there for approximately ten minutes. 302 F.3d 262, 269–70 (4th Cir. 2002). The court observed that the detainee's injury "was more than de minimis" because he was "tied up in a dark and deserted location in the middle of the night" and "did not know when or if anyone would come to rescue him or who might discover him." *Id.* at 270.

22

Neither *Demery* nor *Robles* dealt with the kinds of conditions at issue in this case: operational disruptions to a juvenile detention facility.   Plaintiffs have not pointed to cases involving, for example, changes to the location of schooling or recreation; missed opportunities for enrichment programs; marginally reduced privacy during visitation; or "overcrowding" in pods that nonetheless provide detainees with their own rooms.[13]   The court is sensitive to the fact that Plaintiffs are or were juveniles at the time of the filming, and that the standard for substantive due process violations may well be lower for juvenile pretrial detainees than for adult detainees.   *See Bergren v. City of Milwaukee*, 811 F.2d 1139, 1143 (7th Cir. 1987) ("In assessing whether the treatment of the detained juvenile satisfies the requirements of due process, it is quite appropriate—indeed necessary—to consider that in such an environment juveniles may indeed have different needs and more importantly, different capacities than adults."); *Doe v. Cook Cnty.*, No. 99 C 3945, 1999 WL 1069244, at *4 (N.D. Ill. Nov. 22, 1999) ("[T]he 14th amendment due process standard should, as a general matter, be more liberally construed when applied to juvenile pretrial detainees.").   But even under a more liberal standard, Plaintiffs have not identified an analogous case that would have put Defendant Dixon on notice that his conduct was unlawful.[14]

---

[13]    The court notes that in *Bell v. Wolfish*, the Supreme Court held that the practice of "double-bunking" did not violate pretrial detainees' constitutional rights.  *Bell*, 441 U.S. at 541. Here, there is no evidence that detainees had to share rooms; a pod may have had 15 or 16 detainees, each with their own room, even though the JTDC's internal policies set the "functional operating capacity" of a given pod at 14.  (*See* Defs.' SOF ¶¶ 71–72; Resp. to PSOAF ¶ 40–41.) To be sure, *Bell* involved adult detainees rather than juveniles, but Plaintiffs have not provided precedent for their assertion that minor increases to pod population amount to a constitutional violation.

[14]    In *Bergren*, for example, the Seventh Circuit held that a juvenile detainee who was arrested and held in custody for ten hours did not suffer unconstitutional conditions of confinement because he was not punished or confined for an excessive amount of time.  *Bergren*, 811 F.2d at 1144 ("We stress that, in holding that the actions of the police officers in this case did not violate the minimum standards imposed by the federal constitution, we do not express in any way our approval of the methodology employed by the officers in this case.  We simply hold that, under these circumstances, there was no violation of the federal constitution.").

Plaintiffs are correct that, when determining whether a government official violated a constitutional right, courts should view the facts "in the light most favorable to the party asserting the injury." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 236. But if the right asserted is not clearly established, then the court need not proceed to the other qualified immunity inquiry. *See Hardeman*, 933 F.3d at 820 ("If either inquiry is answered in the negative, the defendant official is protected by qualified immunity."). Furthermore, this case does not involve such extreme circumstances that no reasonable officer could have concluded that the conditions were constitutionally permissible. *Compare Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (holding that correctional officers were not entitled to qualified immunity where inmate was confined in a pair of shockingly unsanitary cells for six days).

Because Plaintiffs have not met their burden, Defendant Dixon is entitled to qualified immunity on Plaintiffs' § 1983 claims. The court grants the County Defendants' motion for summary judgment as to those claims.

## II.    State-Law Claims

The following state-law claims remain: breach of fiduciary duty against Dixon (Count VII), intentional infliction of emotional distress against the County Defendants (Count IX), indemnification against Cook County (Count XII), inducement of a breach of fiduciary duty against the Fox Defendants (Count VIII), and unjust enrichment against the Fox Defendants (Count XIII). Now that the court has dismissed all of Plaintiffs' federal claims, the court would ordinarily dismiss Plaintiffs' remaining state law claims without prejudice. *Harvey v. Town of Merrillville,* 649 F.3d 526, 533 (7th Cir. 2011) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." (quoting *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir.1999))). Here, however, given this case's lengthy procedural history and the extensive judicial resources expended thus far, the court will exercise its discretion to retain jurisdiction over the remaining

24

state law claims.  *See, e.g.*, *Timm*, 32 F.3d at 276–77 (holding that it was not improper for district

court to retain jurisdiction over state claims after granting summary judgment on only federal claim

in the case).

### A.  Breach of Fiduciary Duty

#### 1.  Merits

Plaintiffs argue that Dixon owed them a fiduciary duty and breached it by permitting the

*Empire* filming.  Specifically, they contend that Dixon "misdirected [the JTDC's] resources for his

own benefit and that of Fox, to the detriment of the youth who had been placed in his care."  (Pls.'

Opp'n at 38.)  By Plaintiffs' account, Dixon's actions injured them by exacerbating the

psychological impact of incarceration and endangered them by increasing the risk of physical

violence at the JTDC.

To prevail on their claim for breach of fiduciary duty under Illinois law, Plaintiffs must show

that "(1) a fiduciary duty existed, (2) that duty was breached, and (3) the breach of the duty

proximately caused damages."  *Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 777

(N.D. Ill. 2015) (citing *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010)).  This court

has repeatedly recognized that "the state has a duty, under clearly established principles of

constitutional and tort law, 'to assume some responsibility' for the 'safety and general well-being'

of detainees."  *T.S.*, 334 F.R.D. at 538 n.14 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc.*

*Servs.*, 489 U.S. 189, 199–200 (1989)); *see also T.S.*, 2017 WL 1425596 at *10 (same).

Defendants agree that detention center officials owe detainees a duty to provide "for basic human

needs, such as 'food, clothing, shelter, medical care, and reasonable safety.'"  (County Defs.'

Summ. J. Mot. [414] at 27 (quoting *DeShaney*, 489 U.S. at 200)).  But they argue that the duty is

not a fiduciary one.  (*See, e.g.*, County Defs.' Summ. J. Mot. at 27; County Defs.' Summ. J. Reply

[428] at 1 (maintaining that "no Illinois case, state or federal, has held that detention officials are

fiduciaries for detainees").)

In this court's view, Defendants have defined the scope of their responsibility too narrowly. Illinois law recognizes a guardian-ward relationship as a type of fiduciary relationship. *See In re Estate of Gustafson*, 268 Ill. App. 3d 404, 407, 644 N.E.2d 813, 816 (2d Dist. 1994). At the motion to dismiss stage, Judge St. Eve recognized that Plaintiffs "were not officially adjudicated as 'wards' of the court . . . during the relevant time period." *T.S.*, 2017 WL 1425596 at *10. She nevertheless agreed that Illinois law supports Plaintiffs' theory that Dixon acted as their guardian while they were housed at the JTDC, and that he therefore owed them a fiduciary duty. *See id.* (citing cases). Defendants maintain that Judge St. Eve did not determine that Dixon's duty "definitely was fiduciary in nature." (County Defs.' Summ. J. Reply at 9.) This court is comfortable concluding that it was.

*Parks v. Kownacki* supports this conclusion. 305 Ill. App. 3d 449, 461, 711 N.E.2d 1208, 1216 (5th Dist. 1999), *rev'd on other grounds*, 193 Ill. 2d 164, 737 N.E.2d 287 (2000). There, an Illinois appellate court determined that a guardian-ward relationship arose between a priest and a teenaged girl when the priest kept the girl "in the rectory as his housekeeper, [sent] her to school far away from her parents and family, and . . . exercise[d] all the control over her that a legal guardian would be allowed to exercise." *Id.* Likewise, the court determined that the priest owed the girl a fiduciary duty because of this relationship. *See id.* The Illinois Supreme Court reversed the decision on other grounds and therefore did not expressly endorse these conclusions. 193 Ill. 2d 164, 737 N.E.2d 287. But the Court did state that when the priest "accepted the responsibility of plaintiff's care and education, he took on the role of her guardian, even though he was not given that title by a court." *Id.* at 169, 737 N.E.2d at 290; *see also Clayton v. Millers First Ins. Cos.*, 384 Ill. App. 3d 429, 436, 892 N.E.2d 613, 619 (5th Dist. 2008) (noting same). The JTDC housed and educated these Plaintiffs while they were away from their parents, and Dixon "exercise[d] all the control over [them] that a legal guardian would be allowed to exercise." *Parks*,

305 Ill. App. 3d at 461, 711 N.E.2d at 1216.  So, like the priest in *Parks*, Dixon can fairly be said

to have acted as Plaintiffs' guardian and fiduciary while they were detained at the JTDC.

That *Parks* involved different kinds of harm does not change this conclusion.  *See Parks*,

305 Ill. App. 3d at 454, 711 N.E.2d at 1211 (priest allegedly beat and sexually abused teenaged

girl).  Nor do Defendants' cited cases, in which, according to Defendants, the courts held either

that "there is no fiduciary relationship between prison officials and detainees" or that "[any]

fiduciary relationship is limited to physicians and detainee patients or . . . the handling of

detainees' funds." (County Defs.' Summ. J. Mot. at 28.)  In the only cited case applying Illinois

law, *Day v. Jeffreys*, the court stated that it was "unclear" whether the plaintiff's claim for breach

of fiduciary duty against the director of the Illinois Department Corrections was cognizable under

a statute concerning sexually dangerous persons.  No. 19-CV-00945-NJR, 2019 WL 6701671, at

*4 (S.D. Ill. Dec. 9, 2019).  Despite the uncertainty, the court denied the motion to dismiss the

claim.  *See id.*  If anything, therefore, *Day* undermines Defendants' position.  More importantly,

neither *Day* nor the other cited cases (which are, in any event, not controlling authority) concerned

juvenile detainees.  *See id.*; *Surratt v. McClaran*, 234 F. Supp. 3d 815 (E.D. Tex. 2016), *aff'd sub*

*nom. Surratt v. McClarin*, 851 F.3d 389 (5th Cir. 2017); *Rua v. Glodis*, 52 F. Supp. 3d 84 (D. Mass.

2014); *Sperry v. Corizon Health, Inc.*, No. 18-3119-SAC, 2020 WL 905745 (D. Kan. Feb. 25,

2020); *Hernandez v. Cate*, No. EDCV 11-00627 R AJW, 2014 WL 6473769 (C.D. Cal. Oct. 16,

2014), *report and recommendation adopted*, No. EDCV11-00627 R AJW, 2014 WL 6606901

(C.D. Cal. Nov. 18, 2014).  This line of cases does not disturb the basis for finding a fiduciary duty

here: the guardian-ward relationship between Dixon and the JTDC detainees.

Defendants next argue that, even if Dixon owed Plaintiffs a fiduciary duty, the scope of the

duty is the same as Dixon's obligation to juveniles or pretrial detainees under the Fourteenth

Amendment's due process clause.  For support, they observe that the court has cited *DeShaney*,

489 U.S. at 199–200, for the proposition that Dixon's fiduciary duty involved protecting Plaintiffs'

safety and well-being.  *See, e.g.*, *T.S.*, 2017 WL 1425596 at *10.  Defendants are correct that in

the cited portion of *DeShaney*, the Supreme Court discussed a constitutional standard.  *See*

*DeShaney*, 489 U.S. at 199–200 (explaining that when a state restrains a person's liberty by

taking him into custody, "the Constitution imposes upon it a corresponding duty to assume some

responsibility for his safety and general well-being").  But the *DeShaney* Court also emphasized

that a state can "impose such affirmative duties of care and protection upon its agents as it

wishes," and that "not 'all common-law duties owed by government actors

were . . . constitutionalized by the Fourteenth Amendment.'"  *Id.* at 202 (quoting *Daniels v.*

*Williams*, 474 U.S. 327, 335 (1986)); *see also Daniels*, 474 U.S. at 335 ("Jailers may owe a special

duty of care to those in their custody under state tort law . . . .").  Because *DeShaney* draws a

distinction between constitutional obligations and state-law tort duties, it does not establish that

Dixon's fiduciary duty to Plaintiffs was congruent with his obligations to them under the Fourteenth

Amendment.  *See also, e.g.*, *T.S.*, 2017 WL 1425596 at *10 (recognizing that Dixon's duty to

protect Plaintiffs has constitutional and tort-law dimensions).

Illinois courts require a child's guardian-fiduciary to "protect the child from harm."  *Parks*,

305 Ill. App. 3d at 461, 711 N.E.2d at 1216 (citing *People v. Watson*, 103 Ill. App. 3d 992, 998,

431 N.E.2d 1350, 1355 (4th Dist. 1982)).  That duty includes "refrain[ing] from harming

and . . . restrain[ing] others within one's control from harming" the child.  *Parks*, 305 Ill. App. 3d at

461, 711 N.E.2d at 1216.  It can also be understood as encompassing an obligation to "care" for

the child.  *See, e.g.*, *Parks*, 193 Ill. 2d at 169, 737 N.E.2d at 290 (priest assumed role as teenager's

guardian by "accept[ing] the responsibility" for her "care and education").  Under these definitions,

a guardian necessarily must protect a child's "safety and general well-being."  *DeShaney*, 489

U.S. at 200.  But because a guardian's fiduciary duty arises under Illinois law, there is no support

for importing Fourteenth Amendment standards to limit it—even in the juvenile detention context.

Defendants point to no Illinois law providing otherwise.

If the standard for establishing a breach of fiduciary duty is lower than that for establishing a Fourteenth Amendment violation, Defendants contend, the court must conclude Plaintiffs cannot meet that standard because none of Dixon's actions "put detainees' safety and well-being at risk." (County Defs.' Summ. J. Mot. at 29 (internal quotation marks omitted).)  A reasonable jury could disagree.  Dixon did testify during his deposition that he permitted the *Empire* filming because he thought it would benefit the detainees.  (Dixon Dep. 112:1–8.)  But Plaintiffs have presented evidence tending to show that by permitting the filming, Dixon interrupted the normal operations of the JTDC in ways that harmed the detainees' well-being.  For example, a jury reasonably could infer that the filming caused T.S., Q.B., and H.C. to miss at least one day of recreation outside of their pods.  In addition, a jury reasonably could find that because of the filming, T.S. had less privacy during a family visit; T.S. had to take one day of summer school classes in his pod rather than in a classroom; and T.S. and H.C. missed one session of a free-writing program that they regularly attended after school.  Considering (among other things) Dr. Kraus's opinion that spending more time on the pod with fewer activities can worsen the psychological impact of detention on juveniles (*see, e.g.*, Kraus Rpt. ¶ 6), a reasonable jury could conclude that Dixon breached his fiduciary duty and caused Plaintiffs harm.

There is also evidence tending to show that the *Empire* filming required increasing the population in certain pods beyond their functional capacity.  Dunlap opined that following functional capacity guidelines was "essential [for] youth in custody to fe[el] safe and [to be] safe." (Dunlap Rpt. ¶ 57.)  Dr. Kraus opined that overcrowding in pods can put detainees' safety at risk. (Kraus Rpt. ¶¶ 30(c), 38.)  Although Plaintiffs have not identified evidence that fights occurred more frequently in the pods whose population exceeded functional capacity, a jury reasonably could conclude based on the expert opinions that detainees in those pods felt less safe.  In turn, a reasonable jury could find that Dixon breached his fiduciary duty to protect the detainees in those pods, and that those detainees suffered harm to their well-being.

29

It bears mention that Plaintiffs' failure to present evidence that the *Empire* filming jeopardized their medical treatment is not fatal to their claim. Defendants argue that the claim survived only because of medical-related claims that Plaintiffs later withdrew, but they are incorrect. In ruling on Defendants' first motion to dismiss, the court credited Plaintiffs' allegations that Dixon and Cook County subjected them "to *numerous restrictions that were detrimental to their health and safety* so that the Fox Defendants could film a television show." *T.S.*, 2017 WL 1425596 *10 (emphasis added). That language cannot reasonably be understood as limiting Plaintiffs' claim to a medical context. And it is broad enough to encompass restrictions that increased detainees' time on the pod and interfered with their schooling, activities, and family visits.

For the reasons just explained, a reasonable jury could find that Dixon breached his fiduciary duty to Plaintiffs and caused them harm. The court, therefore, denies the County Defendants' motion for summary judgment on the breach of fiduciary duty claim. In addition to seeking damages for harm resulting from the alleged breach, Plaintiffs seek restitution. First, they appear to seek the value of the director's chair and autographed photographs that Dixon received from Fox and *Empire* actors. (*See* Pls.' Renewed Mot. for Class Cert. [351] (hereinafter "Renewed Mot.") at 32.) Plaintiffs maintain that the value of those items is "quantifiable" (*id.*), though they have not identified evidence showing that the value is significant. On the other hand, the County Defendants do not cite legal authority providing that restitution is unavailable for an ill-gotten benefit whose value is de minimis. Because the evidence permits a reasonable inference that Dixon received the items in question because of the alleged breach, the court denies the County Defendants' motion for summary judgment on Plaintiffs' restitution claim as it relates to Dixon. *See Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 56–57, 643 N.E.2d 734, 745 (1994) (to obtain restitution from breaching party, a plaintiff must show that the party obtained a benefit from the breach). Second, Plaintiffs seek restitution of the benefits that the Fox Defendants gained

because of Dixon's alleged breach: the revenue Fox received from the *Empire* filming. The court addresses this request in its discussion of the Fox Defendants' alleged liability. *See infra* Part II.D.2.

### 2. State-Law Sovereign Immunity

The County Defendants have raised state sovereign immunity as an affirmative defense to Plaintiffs' state-law claims. (County Defs.' Summ. J. Mot. [414] at 23–24.) They argue that the Illinois Court of Claims has exclusive jurisdiction over all tort claims against the State of Illinois, and Plaintiffs' state-law claims against Dixon and the County are claims against the State because Dixon is a state employee.[15] *See* Illinois Court of Claims Act, 705 ILCS 505/8(d); *Healy v. Vaupel*, 549 N.E.2d 1240, 1246–47, 133 Ill.2d 295, 307–08 (Ill. 1990). The Seventh Circuit has recognized, however, that "Congress, not the states, determines the jurisdictional authority of the federal courts." *Rodriguez v. Cook County*, 664 F.3d 627, 632 (7th Cir. 2011). Thus, "a state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case." *Fields v. Wharrie*, 672 F.3d 505, 518 (7th Cir. 2012). The court concludes that the Illinois Court of Claims Act does not deprive it of jurisdiction over the remaining state-law claims in this case. *See id.* at 518–19.

Setting aside the jurisdictional issue, Defendant Dixon is not entitled to sovereign immunity under Illinois law, at least at this juncture. Defendants appear to invoke the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1, which provides that the State is generally immune from suit in federal court. That immunity can shield state employees even when those employees are sued in their

---

[15]    Plaintiffs do not concede that Dixon is a state employee. (Pls.' Opp'n [421] at 48.) But the same rationale that justified concluding that "the Chief Judge acts an arm of the State of Illinois when he operates and administers the JTDC" could apply to Dixon. *T.S.*, 2020 WL 6870809, at *8. In the November 23, 2020 opinion, this court granted summary judgment on the parties' stipulation that "Dixon was the Chief Judge's final decision-maker." *Id.* It follows that Dixon was exercising State authority rather than County authority when he made the decision to allow *Empire* filming at the JTDC.

individual capacity.  *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001).  But the Seventh

Circuit has recognized an exception where the "plaintiff alleges that state officials or employees

violated 'statutory or constitutional law.'"  *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016)

(quoting *Healy*, 549 N.E.2d at 1247); *see also Fritz v. Johnson*, 807 N.E.2d 461, 468, 209 Ill. 2d

302, 313 (2004) ("Whenever a state employee performs illegally, unconstitutionally, or without

authority, a suit may still be maintained against the employee in his individual capacity and does

not constitute an action against the State of Illinois.").  This exception, which appears to eviscerate

the statutory immunity in many cases, applies to state-law claims as well, "so long as the same

alleged conduct underlies both the constitutional claims and the state tort claims." *Gay v. Ortman*,

No. 18 C 50310, 2020 WL 5593283, at *2 (N.D. Ill. Sept. 18, 2020).

Because Plaintiffs' state-law claims against Dixon are based on the same conduct as their

constitutional claims, the court is not prepared at this time to conclude that Defendant Dixon claim

has sovereign immunity.  *Murphy*, 844 F.3d at 660 (denying sovereign immunity where plaintiff

alleged and proved that state officers "acted in violation of statutory or constitutional law").  He

will be free to raise the sovereign immunity defense again at trial.  *Murphy*, 844 F.3d at 660 n.3

("We believe Illinois also requires a plaintiff ultimately to prove the alleged [constitutional]

violations."); *Nadzhafaliyev v. Hardy*, No. 16 C 6844, 2020 WL 7027578, at *10–11 (N.D. Ill. Nov.

30, 2020) (denying state sovereign immunity at the summary judgment stage because "a jury

reasonably could find that Defendants . . . violated Plaintiff's right to due process under the

Fourteenth Amendment").  In other words, sovereign immunity may apply if Dixon can persuade

the jury that he had a legitimate government purpose for imposing the challenged conditions, or

that the conditions were reasonable in relation to that purpose, and thus Plaintiffs have not proved

their constitutional claim.  This is so even though the court has granted summary judgment for

Dixon on the constitutional claims on the basis of qualified immunity.  The application of qualified

immunity shields an officer from liability, but it does not negate the possible presence of an

underlying constitutional violation.  *See* Aaron L. Nielson & Christopher J. Walker, *The New Qualified Immunity*, 89 S. Cal. L. Rev. 1, 34–36 (2015) (examining cases in which courts recognized that a constitutional violation had occurred but nonetheless granted qualified immunity because the violation was not clearly established at the time).

### B.  Intentional Infliction of Emotional Distress

Plaintiffs also assert a claim against Dixon and the County for intentional infliction of emotional distress (IIED).  In short, they argue that by allowing Fox to film *Empire* at the JTDC, Dixon exacerbated the adverse psychological impact of incarceration on the detainees.  To prevail on their IIED claim, Plaintiffs must prove three elements.  "First, the conduct involved must be truly extreme and outrageous.  Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress.  Third, the conduct must in fact cause severe emotional distress." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 269, 798 N.E.2d 75, 80 (2003) (internal quotation marks omitted); *see also, e.g.*, *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016) (same).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to an IIED claim.  *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988) (quoting Restatement (Second) of Torts § 46, cmt. d, at 73 (Am. L. Inst. 1965)).  Instead, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community."  *Feltmeier*, 207 Ill. 2d at 270, 798 N.E.2d at 80–81.

The court first considers whether the evidence permits a reasonable conclusion that Dixon's conduct was objectively extreme and outrageous.  Three non-exclusive factors are relevant to this inquiry.  *See Cairel*, 821 F.3d at 835.  The first is "the degree of power or authority the defendant holds over the plaintiff."  *Id.*  The more control a defendant has over a plaintiff, "the more likely that defendant's conduct will be deemed outrageous . . . ."  *Feltmeier*, 207 Ill. 2d at

273, 798 N.E.2d at 82 (quoting *McGrath,* 126 Ill. 2d at 86–87, 533 N.E.2d at 809). "Second, courts consider whether the defendant knew the plaintiff was particularly susceptible to emotional distress and acted inappropriately despite that knowledge." *Cairel*, 821 F.3d at 836; *see also Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 746, 742 N.E.2d 858, 867 (1st. Dist. 2000). "Behavior that would not normally be considered outrageous may be actionable if the defendant knows that the plaintiff is particularly susceptible." *Graham*, 318 Ill. App. 3d at 746, 742 N.E.2d at 867 (citing *McGrath*, 126 Ill. 2d at 89–90, 533 N.E.2d at 811). "Third, courts consider whether the defendant reasonably believed that his objective was legitimate." *Cairel*, 821 F.3d at 836 (internal quotation marks omitted) (citing *McGrath*, 126 Ill. 2d at 88, 533 N.E.2d at 810).

In contending that Dixon's conduct was extreme and outrageous, Plaintiffs suggest that Dixon permitted the *Empire* filming not for a legitimate purpose, but rather because he wanted to meet celebrities. Plaintiffs also emphasize that the detainees were children and Dixon was responsible for their care. In addition, Plaintiffs argue that Dixon knew the detainees were particularly susceptible to emotional distress. To that end, they cite Dixon's testimony during his deposition for this case that "juvenile detention is the emergency room of the juvenile justice system." (Dixon Dep. at 49:13–15.) Finally, Plaintiffs maintain that Dixon exercised "complete control" over the detainees. (Pls.' Opp'n at 44.) Whether Dixon's decision to permit the *Empire* filming went "beyond all possible bounds of decency" is debatable. *Feltmeier*, 207 Ill. 2d at 270, 798 N.E.2d at 80–81. But considering the power Dixon wielded over the children and their vulnerability as detainees, a jury drawing all reasonable inferences in Plaintiffs' favor could conclude that it did.

Plaintiffs stumble on the other elements of their claim, however. Regarding intent, Plaintiffs parrot the case law. They argue that Dixon knew there was a high probability that his conduct could cause the detainees severe emotional distress, but they do not explain why.

34

Dixon's deposition testimony that "juvenile detention is the emergency room of the juvenile justice system" does not fill this gap. (Dixon Dep. at 49:13–15.) The testimony can fairly be understood as showing Dixon's knowledge that the detainees were susceptible to emotional distress. But it says nothing about how JTDC operations or changes thereto can affect the detainees, psychologically or otherwise. Considering the cited testimony alone, no reasonable jury could find that Dixon acted with the requisite knowledge that permitting the disruptions generated by the *Empire* filming would cause Plaintiffs severe emotional distress.

Nor is it clear that Plaintiffs' suffering in fact rose to this level. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, cmt. j, at 77–78 (Am. L. Inst. 1965)). Where plaintiffs have alleged that defendants' actions "caused them simply to become annoyed, frustrated, stressful, distressed, embarrassed, humiliated or nervous," courts generally have determined that they did not state a claim for IIED under Illinois law. *Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001); *see also, e.g.*, *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155, 713 N.E.2d 679, 684 (1st Dist. 1999). True, a plaintiff can establish that he suffered severe emotional distress without proof of a physical injury or the need for medical or psychiatric treatment. *See Honaker*, 256 F.3d at 496; *Bristow v. Drake St. Inc.*, 41 F.3d 345, 350 (7th Cir. 1994). But courts are "more inclined" to find that a plaintiff has established such a claim "when the distress has manifested itself either through physical symptoms or has necessitated medical treatment." *Honaker*, 256 F.3d at 495.

According to Dixon and the County, Plaintiffs have not submitted evidence suggesting that T.S., Q.B., or H.C. suffered any emotional distress, let alone severe emotional distress. Defendants also emphasize that Dr. Kraus—who opined that increasing juveniles' time on the pod and limiting their activities can exacerbate the psychological effects of incarceration—did not examine T.S., Q.B., or H.C. Plaintiffs do not dispute these points. Furthermore, in their IIED

briefing, Plaintiffs do not mention the statement from Taylor—a youth development specialist at the JTDC—that detainees in the pods where she worked seemed more anxious and felt "cooped up" during the *Empire* filming. (Taylor Decl. ¶ 22.) Plaintiffs certainly do not attempt to argue that the changes Taylor claims to have observed in the detainees went beyond mere annoyance, frustration, or stress, which do not supply a basis for an IIED claim under Illinois law. *See, e.g.*, *Honaker*, 256 F.3d at 495. Instead, Plaintiffs maintain that, based solely on the purported outrageousness of Dixon's conduct, a jury reasonably could find that T.S., Q.B., H.C., or other putative class members suffered severe emotional distress.

It is true that "the extreme and outrageous character of the defendant's conduct" may itself be "important evidence that the distress has existed." *Honaker*, 256 F.3d at 496 (quoting *Wall v. Pecaro,* 204 Ill. App. 3d 362, 368, 561 N.E.2d 1084, 1088 (1st Dist. 1990)). Relatedly, Illinois courts "tend to merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress . . . ." *Bristow*, 41 F.3d at 350. But Plaintiffs have not cited any authority providing that outrageous conduct, without more, constitutes proof that a victim suffered severe emotional distress. Indeed, the court in *Honaker* stated that outrageous conduct may be "important" to the inquiry, not that it is sufficient. 256 F.3d at 496. And in *Bristow*, the court explained that "the *weaker* the evidence of distress," the more evidence of outrageousness is required to tip the balance in the plaintiff's favor. 41 F.3d at 350 (emphasis added). *Bristow* does not establish that a plaintiff can satisfy his burden of proof without *any* evidence that he suffered severe emotional distress.

In short, the purported outrageousness of Dixon's conduct does not substitute for evidence that Plaintiffs suffered severe emotional distress. And although the court has concluded that a reasonable jury could find that Dixon's breach of fiduciary duty harmed Plaintiffs—including by increasing the psychological effects that incarceration had on them—Plaintiffs make no effort to

explain how that harm was sufficiently severe to support an IIED claim. The court grants summary judgment on the IIED claim in favor of Dixon and the County.

### C. Indemnification

Because at least one state-law claim against Dixon survives this ruling, the court turns to Plaintiffs' argument that Cook County is obligated by Illinois law to pay any judgment entered against Dixon. In Illinois, counties are obligated to "pay any tort judgment" against an employee found liable for actions taken "within the scope of his employment." 745 ILCS 10/9-102. Cook County argues, however, that this obligation is not triggered here because, as an employee of the Chief Judge's office, Dixon is a state employee rather than a county employee. But that status does not control the analysis; that is, "the fact that [the defendant] is not an employee of the County is not dispositive." *Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *21 (N.D. Ill. Feb. 2, 2006). Instead, "under the Seventh Circuit's decision in *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003), the County has a duty to indemnify claims brought against State officials where the County funds the office of that state official." *Cannon*, 2006 WL 273544, at *21. Cook County funds the JTDC, *see* 55 ILCS 75/1(a), and thus remains liable for indemnification for any tortious actions that Dixon takes within the scope of his employment.[16]

In challenging this determination, Cook County contends that *Robinson*'s holding applies only to state employees where the county not only funds, but also "maintain[s]" the office in question. *Robinson*, 351 F.3d at 339 ("The responsibility for maintaining and funding the Macon County Circuit Court lies with Macon County."). And the County notes that, in its November 2020 decision to grant partial summary judgment, this court already found that there is no evidence that Cook County has the authority "to dictate how the Chief Judge operates and administers the

---

[16]    Cook County argues that although it pays JTDC salaries such as Dixon's, those salaries are reimbursed by the state. *See* 730 ILCS 110/15(4). But Cook County points to no caselaw suggesting that such a reimbursement structure affects whether a county funds the office of a particular state official for the purposes of indemnification.

[JTDC]." *T.S.*, 2020 WL 6870809, at *5. That statement appears, however, in a separate discussion of whether the Chief Judge was, himself, an agent of the county. *Id.* Elsewhere in the opinion, the court listed a number of ways in which the county might be said to "maintain" the JTDC, including the county's ability to rebuild or relocate the JTDC if the county determines it is obsolete; the ability to fix the monthly salary of the superintendent and other necessary personnel; and the ability, at any time, to require the superintendent to provide information concerning the conduct, maintenance, or residents of the JTDC. *Id.*

Further, although the Seventh Circuit in *Robinson* noted that the county defendant there both maintained *and* funded the county court in question, the Seventh Circuit did not go so far as to say that such maintenance was a requirement for finding the county responsible for indemnifying the defendant state judge. Notably, the Seventh Circuit grounded the *Robinson* holding in the Illinois Supreme Court's decision in *Carver v. Sheriff of La Salle Cnty.*, 203 Ill. 2d 497, 787 N.E.2d 127 (2003). The *Carver* Court made no mention of the county's role in "maintaining" the sheriff's office at issue there; instead the Court said only, "Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against [defendant sheriff's office employee] . . . ."[17] *Id.* at 522, 787 N.E.2d at 141. For that reason, the court denies Cook County's motion for summary judgment on Plaintiffs' indemnification claim. *See Haag v. Cook County*, No. 1:17-CV-05403, 2021 WL 1192440, at *5 (N.D. Ill. Mar. 29, 2021) (finding, in dicta, that *Robinson*'s and *Carver*'s holding suggest that "[b]ecause Cook County funds the Office of the Chief Judge for Cook County, it would have been responsible for indemnification" of an employee of that office).

---

[17] Unlike the defendants in *Robinson* and *Carver*, Dixon faces suit here in his individual, rather than official, capacity. Cook County did not argue that this distinction materially distinguishes these cases from Dixon's.

### D. Inducement and Unjust Enrichment

Plaintiffs next argue that Fox is liable for inducing Dixon to breach his fiduciary duty. "Under Illinois law, a party is liable for tortious inducement if a plaintiff demonstrates that the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits resulting from that breach." *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 508–09 (7th Cir. 2007) (citing *Regnery v. Meyers*, 287 Ill. App. 3d 354, 364, 679 N.E.2d 74, 80 (1st Dist. 1997)). In short, Plaintiffs must show both that the Fox Defendants engaged in "active misbehavior" that facilitated the breach and that the Fox Defendants knew that this behavior would cause Dixon to breach his fiduciary duty to the JTDC's detainees. *Id.*; *see also In re Pritzker*, No. 02 CH 21426, 03 CH 7531, 2004 WL 414313, at *7 (Cir. Ct. of Ill. Mar. 5, 2014) (finding that active participation requires "that the parties knew or had reason to believe at the time of their alleged participation that the acts were wrongful"). Here, the Fox Defendants argue that Plaintiffs' evidence could not support a jury finding on either front.

### 1. Tortious Inducement to Breach a Fiduciary Duty

First, Fox contends that they did not engage in the requisite level of "active misbehavior." A reasonable jury could disagree. Illinois courts define active misbehavior as "an act or omission which furthers or completes the breach of trust by the trustee." *Chabraja v. Martwick*, 248 Ill. App. 3d 995, 998, 618 N.E.2d 800, 803 (1st Dist. 1993) (citing G. Bogert, Trusts & Trustees § 901, 258–259 (2d ed. 1982)). Courts apply this standard liberally. For example, in *Vill. of Wheeling v. Stavros*, the court reversed dismissal of a complaint alleging tortious inducement where the defendant "was in a position to and did control certain officials of the Village" who "violated their fiduciary duties to the village" even though "the means by which [the defendant] influenced Village officials to breach their duties [we]re not set forth" in the complaint. 89 Ill. App. 3d 450, 452–53, 455, 411 N.E.2d 1067, 1068–69, 1071 (1st Dist. 1980). Likewise, in *Regnery*, the First District

Appellate Court affirmed a judgment for a group of minority shareholders following a bench trial where the evidence showed that defendant, the brother of a majority shareholder, not only initiated the majority shareholder's "sale of stock to his brother and himself at a price far below market value," but also "fully participated in all steps of the transaction." 287 Ill. App. 3d at 363–64, 679 N.E.2d at 80.

In support of its argument that no jury could find that Fox engaged in active misbehavior, Fox cites *Chabraja*, where plaintiffs alleged that the Cook County School Superintendent had violated a fiduciary duty to the county by improperly holding public funds in a non-interest-bearing account. 248 Ill. App. 3d at 996, 618 N.E.2d at 801. Plaintiffs in *Chabraja* also alleged that the bank was liable for allowing the Superintendent to deposit the public funds. Affirming dismissal of that claim, the First District Appellate Court explained that "the mere act of accepting a deposit" did not amount to an "act or omission which furthers or completes the breach." *Id.* at 999, 618 N.E.2d at 803 (internal citations omitted). Fox also cites *Borsellino*, where plaintiff—a partner in a stock-trading company—claimed that defendant Goldman Sachs had tortiously induced plaintiff's two partners to breach their fiduciary duty to him by defrauding him of his rightful interest in the company. 477 F.3d at 504, 508. The Seventh Circuit affirmed dismissal of that claim on motion, explaining that "the plaintiffs have not alleged any active misbehavior on the part of Goldman Sachs," because the allegations that Goldman Sachs conspired against plaintiff with plaintiff's business partners "ma[de] neither economic nor common sense." *Id.* at 508–09. Thus, "even accepting all of the plaintiffs' allegations at face value, there was no interference by the defendant that could have induced a breach." *Id.* at 508.

In the case before this court, there is evidence from which a reasonable jury could find that Fox "further[ed] or complete[d]" Dixon's breach of fiduciary duty. *Chabraja*, 248 Ill. App. 3d at 998, 618 N.E.2d at 803 (internal citations omitted). Klemke reached out to Dixon to propose filming *Empire* at the JTDC (Klemke Dep. at 19:6–21); Klemke and Breen requested use of the

classrooms, the outdoor yards, the visitation room, the chapel, and Pods 3A and 3B (Klemke Follow-up Email; Defs.' Ex. 20 at 2–5); and Fox repeatedly used those spaces, bringing some 150 crew members to the JTDC on at least four different days.  (July 31 Robinson Email at 3.)  These actions substantially exceed the conduct at issue in *Chabraja*, where the bank merely accepted a deposit.  248 Ill. App. 3d at 999, 618 N.E.2d at 803.  Thus, if a jury finds that Dixon breached his fiduciary duty to the JTDC's detainees, then that jury could also reasonably find that Fox's actions furthered or completed that breach.

Fox's more powerful argument relates to knowledge: Fox argues that no reasonable jury could find that Fox knew that Dixon was breaching his fiduciary duty by allowing Fox to film at the JTDC.  The parties debate whether the tortious inducement standard requires a plaintiff to show *actual* knowledge or whether *constructive* knowledge will suffice.  This question does not appear to have a simple answer.  *Compare People ex rel. Daley v. Warren Motors, Inc.*, 114 Ill. 2d 305, 319, 500 N.E.2d 22, 28 (1986) (quoting Restatement (First) of Restitution § 174 cmt. a (Am. L. Inst. 1937)) ("A person has notice of facts giving rise to a constructive trust not only when he knows them, but also when he should know them."),[18] *with In re Canopy Fin., Inc.*, No. 12-cv-4646, 2015 WL 3505010, at *7 (N.D. Ill. June 2, 2015) ("[A]nalysis of claims of aiding and abetting . . . breach of fiduciary duty has consistently distinguished actual knowledge and participation from the 'should have known' state of mind, and has just as consistently held that the latter mindset is not actionable.").

The court need not decide whether constructive knowledge suffices, however, for the record lacks sufficient evidence to support a finding that Fox had even constructive knowledge.  Fox, of course, knew that the detainees could not use the classrooms, chapel, outdoor yards, or

---

[18]    The court in *Warren Motors* was referring to fiduciary breach in the context of the "constructive trust" doctrine in which courts of equity will "impose a constructive trust to prevent a person from holding for his own benefit an advantage gained by the abuse of a fiduciary relationship."  114 Ill. 2d 305, 314, 500 N.E.2d 22, 26 (1986) (internal citations omitted).

intake pods while Fox was filming. But Klemke was under the impression that the JTDC could provide indoor alternatives for exercise (Klemke Dep. at 109:1–12), and there is no evidence that anyone at Fox knew that school would be in session at all that summer. School was in fact not in session during the June filming period (Resp. to SOF ¶ 42), and there is no evidence to suggest anybody at Fox knew or should have known that the July schedule would be any different. Plaintiffs have also identified no evidence that the Fox Defendants knew their use of Pods 3A and 3B would force JTDC to overpopulate other pods. And regarding visitation, Plaintiffs do not dispute that there is no evidence suggesting that Fox had any reason to know that JTDC had moved visitation to a smaller or less accommodating space. (Resp. to SOF ¶ 67.)

The only reasonable interpretation of the evidence is that JTDC officials created the impression that they would inform Fox if any of Fox's requests jeopardized the detainees' needs. In fact, Fox and the JTDC agreed to as much in Paragraph 1(D) of the Location Agreement.[19] (Location Agreement.) And JTDC's actions sent the same signals. JTDC General Counsel Alonzo testified that she worked with Dixon before the filming to tell Fox "what areas [JTDC] could put off for filming and . . . still meet the requirements for the kids." (Alonzo Dep. at 12:13–13:23, 27:17–29:21.) For example, while Fox originally wanted to film in the infirmary (Location Agreement ¶ 1(A)), Alonzo rejected Fox's request, explaining that filming in the infirmary would not comply with federal standards surrounding detainee care. (Defs.' Ex. 45 at 2–4.) Such communication continued during filming, as well. Breen testified that, during filming, Fox had "consistent conversations" about where they could and could not be at certain times, leading to

---

[19]    Plaintiffs cite to a footnote in *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 302 n.4 (2001), for the proposition that such "formalism" present in this clause of the Location Agreement is not the "*sine qua non*" of liability in cases such as this one. Plaintiffs also cite *Wickersham v. City of Columbia*, 481 F.3d 591, 599 (8th Cir. 2007), for essentially the same proposition. Each of these cases, however, deals not with questions of liability, but rather with questions of whether formalistic lines drawn in rules or legislation can be dispositive of whether behavior by a defendant constitutes state action. In this case, the text of the Location Agreement is far from the only evidence suggesting that JTDC assured Fox that it would notify Fox if any of the filming requests had gone too far.

"numerous situations" where staff told Breen that they could not "do this right now because of the sensitivities of the location . . . ." (Breen Dep. at 80:1–8, 146:22–147:6.) Given JTDC's behavior, the only reasonable conclusion about Fox's knowledge is that Fox assumed that JTDC would inform the filming crew if their actions were negatively impacting the detainees.

Plaintiffs' counterarguments are not persuasive. First, Plaintiffs point to Klemke's post-tour email to Dixon as evidence that Klemke knew Fox's visit would lead Dixon to breach his fiduciary duty. In that email, Klemke stated that he hoped the filming schedule would make Fox's presence "less of an impact," and that he hoped that Fox and the JTDC could "discuss a way of making sure that we don't interfere with your day to day operations *too badly*." (Klemke Follow-Up Email (emphasis added).) Plaintiffs seize on this language, arguing that Klemke knew Fox's presence would impact the JTDC and interfere with the jail's day to day operations to some extent. At most, however, Klemke's language indicates only what is obvious: that Fox's presence would have some effect on the day-to-day operations of the JTDC. No reasonable jury could conclude from Klemke's comment that Fox knew that the impact on operations would amount to a breach of fiduciary duty. In fact, when asked about this language, Klemke testified that his intention was to "give Superintendent Dixon an opportunity to tell me that he wasn't comfortable with the things that I had suggested." (Klemke Dep. at 36:19–37:8.) And Plaintiffs ignore the first part of the "too badly" quote in which Klemke stated, "Obviously your schedule would take precedence over ours . . ." (*Id.*) It is true that, in the same email, Klemke suggested Fox would try to only bring 30 people into the facility—a number that Fox ultimately far exceeded, bringing at least 100 people every day of filming. (Klemke Follow-up Email; July 31 Robinson Email at 3.) But Plaintiffs can point to no evidence suggesting that the increased number of visitors caused the JTDC to place any extra restrictions on the detainees. Indeed, much of the requested space was used for filming or equipment storage and thus would have been unavailable to detainees even if Fox had brought only 30 people. (Klemke Follow-up Email; Defs.' Ex. 20 at 2–4.)

Plaintiffs also emphasize evidence that Fox typically paid third parties for the inconvenience of having television shows filmed nearby. Whatever the significance of this evidence might be in another context, it is not sufficient to support a finding that Fox had constructive knowledge of harm that the *Empire* filming allegedly was inflicting on JTDC detainees. (Pls.' Opp'n at 59.) For one, Breen testified that these payments are not for mere inconvenience but rather for encroachments such as placing a light on someone's front lawn, boarding a barking dog in a kennel, or changing the neighbors' drapes if they are going to appear in a shot. (Pls.' Corrected Ex. 15 [426-3] at 55:21–56:19.) And if Plaintiffs are correct that Fox had a practice of paying third parties for mere inconvenience, that also does not change the outcome. Fox's potential knowledge of possible inconvenience for the JTDC is not sufficient to support an inference that Fox knew or should have known that its presence would harm the detainees.

Plaintiffs also suggest that Fox must have been aware of the potential for harm, because "Fox had filmed at night in both Cook County's downtown administration building and its courthouse at 26th and California so that it would not disturb the governmental work being done in those locations." (Pls.' Opp'n at 59.) Assuming this is true, it does not obviously support Plaintiffs' claims; it is at least as consistent with a conclusion that Fox would have catered to the JTDC's request to film at night, had the JTDC suggested that was necessary in order to protect the detainees. The court concludes that no reasonable jury could find that Fox had even constructive knowledge that Dixon was breaching his fiduciary duty to the detainees at the JTDC. For that reason, Plaintiffs' tortious inducement claim against Fox fails.

### 2. Unjust Enrichment

Plaintiffs argue in the alternative that even if the Fox Defendants are not liable for tortious inducement, they are liable under an unjust enrichment theory because they benefitted from Dixon's breach of fiduciary duty. In support of this argument, Plaintiffs cite *Stavros*, where the

First District Appellate court of Illinois explained that "[a] third party who . . . knowingly accepts any benefit from . . . a breach [of a trustee's duty of loyalty] becomes directly liable to the aggrieved party."  89 Ill. App. 3d at 455, 411 N.E.2d at 1070; *accord* Restatement (Third) of Restitution and Unjust Enrichment § 43 cmt. g (Am. L. Inst. 2011) ("Benefits derived from a fiduciary's breach of duty may therefore be recovered from third parties, not themselves under any special duty to the claimant, who acquire such benefits with notice of the breach.")  But as Plaintiffs admit, this theory of unjust enrichment still requires a showing that the third party in question had notice or knowledge of the breach when accepting the benefit in question.  For the reasons already stated, the court concludes that no reasonable jury could find that the Fox Defendants had knowledge of the breach of duty in this case.

In a similar vein, Plaintiffs cite *Pro-Pac, Inc. v. WOW Logistics Co.* for the proposition that "[a] person who obtains a benefit . . . in consequence of another's breach of [a fiduciary duty] is liable in restitution to the person to whom the duty is owed."  721 F.3d 781, 787 (7th Cir. 2013) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 43(c)).  But in *Pro-Pac*—a case decided under Wisconsin law—the Seventh Circuit discussed the possibility of the plaintiff recovering under an unjust enrichment theory only after affirming a bankruptcy court's determination that the defendant had aided and abetted a third party's breach of fiduciary duty owed to the plaintiff.  *See* 721 F.3d at 782–84, 787 (explaining that the third party breached its fiduciary duty by diverting a deal from the plaintiff to the defendant, and that the plaintiff might be entitled to restitution from the defendant of the value the defendant obtained from the deal).  The Seventh Circuit provided no discussion of how Section 43(c) of the Third Restatement applies where, as here, there is no reasonable basis for finding that the party from whom restitution is being sought (Fox) tortiously induced (or was otherwise liable for) another party's alleged breach of fiduciary duty.  The courts in Plaintiffs' other cited cases did not address that issue, either.  *See Martin*, 163 Ill. 2d at 56, 643 N.E.2d at 745 (considering only whether the breaching party had a

45

duty to return the benefit he obtained); *Happy R Sec., LLC v. Agri-Sources, LLC*, 2013 IL App

(3d) 120509, ¶ 44, 988 N.E.2d 972, 982 (stating in dicta that Section 43 "discuss[es] restitution in

the context of a breach of fiduciary duty").  For these reasons, Plaintiffs' unjust enrichment claim

fails.

**III.    Class Certification**

The court previously denied Plaintiffs' motion for class certification without prejudice.  *T.S.*

*v. Twentieth Century Fox Television*, 334 F.R.D. 518, 541 (N.D. Ill. 2020) ("the January 16, 2020

opinion").  Plaintiffs have filed a renewed motion for class certification [351] along with a motion

to amend their complaint by adding H.C. as a class representative [365].  As explained below, the

court grants Plaintiffs' motion to amend their complaint, and grants in part and denies in part the

motion to certify the class.

**A.    Motion to Amend Complaint or, Alternatively, Add Class Representative**

The Federal Rules of Civil Procedure provide that leave to amend a pleading should be

freely given "when justice so requires."  FED. R. CIV. P. 15(a)(2).  When assessing such a request,

courts typically consider whether granting or denying leave to amend will prejudice the parties.

*See* 6 Wright & Miller, Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2021) ("This entails an inquiry into

[1] the hardship to the moving party if leave to amend is denied, [2] the reasons for the moving

party failing to include the material to be added in the original pleading, and [3] the injustice

resulting to the party opposing the motion should it be granted."); *accord Kasak v. Vill. of Bedford*

*Park*, 552 F. Supp. 2d. 787, 793–94 (N.D. Ill. 2008) (granting leave to amend where new claim

would not affect defendants' pending summary judgment motion, and prejudice plaintiff would

face outweighed prejudice to defendants).

Plaintiffs have requested leave to amend their Second Amended Complaint [88] solely for

the purpose of adding H.C. as a class representative.  (*See* Pls.' Mot. to Amend Compl. or to

Permit Consideration of H.C. as Potential Class Representative [365] (hereinafter "Mot. to

Amend") at 1 & n.1.)  They offer H.C. in response to concerns that the court raised in its January 16, 2020 opinion denying class certification.  Plaintiffs now propose three classes.  The first, labeled "Class 1—Increased Confinement Class," would include "[a]ll youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods" who were "confined to their pods more than they otherwise would [have] been because of the filming . . . ."  (Pls.' Renewed Mot. for Class Cert. [351] (hereinafter "Renewed Class Mot.") at 6.)  In the alternative, Plaintiffs have identified six subclasses within Class 1, depending on the type of off-pod activity that detainees allegedly were denied due to filming.  (*Id.* at 6–7.)  Subclass 1(f) would consist of detainees who were subject to "severe confinement," meaning that they did not leave their pods for at least 24 hours consecutively.  (Mot. to Amend at 3; Renewed Class Mot. at 7.)  Because neither T.S. nor Q.B. were confined to their pods for at least 24 consecutive hours during filming, Plaintiffs have proposed the addition of H.C. to satisfy Rule 23(a)(3)'s typicality requirement for Subclass 1(f).  Again, Plaintiffs believe that this subclass is unnecessary, but they have proposed it in the event the court determines that Class 1's injuries are not constitutionally cognizable.  (Mot. to Amend at 3; Renewed Class Mot. at 27.)

In support of their motion, Plaintiffs have provided a redline comparison of the Second Amended Complaint and the proposed Third Amended Complaint.  (*See* Redline, Ex. 2 to Mot. to Amend [365-2].)  Aside from the addition of allegations concerning H.C. (*see* Redline at 2–3, 23), the only other changes are corrections to allegations that Plaintiffs now acknowledge were inaccurate in light of discovery.  (*See id.* at 13, 16, 18–20.)[20]  According to the Third Amended Complaint, H.C. and the other residents of Pod 3J normally left the pod every day for activities, such as recreation, school, and programming, but on multiple days during filming, H.C. and the

---

[20]    Specifically, Plaintiffs have deleted their allegations that: the JTDC infirmary was used as a film set (Redline at 13); visitation was "severely shortened" (*id.* at 16); T.S.'s mother saw "a large group of what appeared to be *Empire*'s cast or crew leave the building" while waiting to visit her son (*id.* at 19); and detainees on Q.B.'s pod "never" received recreation during *Empire*'s filming (*id.* at 20).

other residents were confined to their pod for the entire day.  (Third Am. Compl. ¶ 53, Ex. 2 to Renewed Class Mot [365-2].)

Defendants oppose amendment of the complaint and H.C.'s addition as a class representative.  They argue that a declaration submitted by Plaintiffs' counsel in support of Subclass 1(f) contained factual inaccuracies.  (*See* Defs.' Opp'n to Mot. to Amend [374] at 1–3.) Specifically, Plaintiffs' counsel created a chart that purported to summarize the number of juvenile detainees who did not leave their pods for at least 24 consecutive hours.  (*See* Ex. A to Weil Decl. 6/15/20 [351-2].)   The chart relied solely on the JTDC's "DC5 Movement Logs," which are Microsoft Excel spreadsheets that track the movement of all detainees.  (Weil Decl. 6/15/20 ¶ 3.) Plaintiffs concede that this declaration contained unintentional errors, but they insist that H.C. is nonetheless a suitable class representative.  (Pls.' Reply in Support of Mot. to Amend [380] at 1; Pls.' Status Report 8/2/20 [388] (acknowledging that "[t]he missing data renders the DC5 logs insufficient, standing alone, to supply reliable "no movement" figures set out in the ECF 375-1 table").)  Plaintiffs have submitted a supplemental chart that attempts to address the errors in the original declaration.  (*See* Weil Decl. 8/7/20, Ex. A to Pls.' Suppl. Filing Pursuant to Rule 23(a)(1) [390-1].)  In any event, Defendants have been able to conduct some discovery already, including a deposition of H.C. on August 4, 2020.  (*See generally* H.C. Dep., Ex. O to Defs.' Class Opp'n [398-3]; *see also* H.C. Responses to Defense Rule 33 Discovery of July 14, 2020, Ex. 3 to Pls.' Reply in Support of Mot. to Amend [380-1].)

The court agrees with Plaintiffs that they would suffer hardship if they are unable to add H.C. because Subclass 1(f) would be left without a class representative.  Plaintiffs' failure to add H.C. as a named plaintiff until now is an understandable response to the court's January 16, 2020 opinion.  By contrast, any prejudice to Defendants would be minimal; indeed, discovery pertaining to H.C. is already underway and should not take long to complete.  Accordingly, the court grants Plaintiffs' motion to amend their complaint.

48

### B. Renewed Motion to Certify Class

With H.C. added as a named plaintiff, the court turns to the renewed motion for class certification. In response to this court's January 16, 2020 opinion denying their first motion for class certification, Plaintiffs have made significant changes to their class definition. Rather than attempting to certify a class of all juveniles detained at the JTDC during the filming of *Empire*, Plaintiffs now propose three classes that they believe will satisfy Rule 23(a)(3)'s typicality requirement: (1) detainees subject to additional confinement, (2) detainees who experienced "degraded visitation," and (3) detainees subject to overcrowding. (Renewed Class Mot. at 2, 6–7.) All three classes are limited to detainees who were at the JTDC for at least 24 hours consecutively. (*Id.*)

Specifically, Plaintiffs have offered the following class definitions:

**Class 1—Increased confinement class:** All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods. Each member of this proposed class was confined to their pods more than they otherwise would [have] been because of the filming of *Empire* in the JTDC facility.

In the alternative, Plaintiffs have divided Class 1 into subclasses. . . . [:]

> ***Subclass 1(a)—LME subclass***—All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods who did not receive at least one hour of Large Muscle Exercise ("LME") recreation off-pod during any day of the filming periods.

> ***Subclass 1(b)—Outdoor recreation subclass***—All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming who did not receive scheduled outdoor recreation during the filming periods or whose outdoor recreation was not scheduled because of the filming of *Empire* in the JTDC facility.

> ***Subclass 1(c)—School break recreation subclass***—All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods who did not receive off-pod recreation or programming in addition to one hour of LME during each day of the June and August filming periods because of the filming of *Empire* in the JTDC facility.

> ***Subclass 1(d)—School subclass***—All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods who were detained on residential pods during the July filming period who did not travel to the Nancy B. Jefferson school each day for class.

> **Subclass 1(e)—Program subclass**—All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods who were scheduled to participate in off-pod programs like Free Write, Karma Garden, or off-pod activities like commissary or game room but who did not do so because of the *Empire* filming.
>
> **Subclass 1(f)—Severe confinement subclass**—All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods who did not leave their pods for at least 24 consecutive hours because of schedule disruptions caused by the filming of *Empire*. For this subclass, Plaintiffs propose a new class representative, H.C. . . .

**Class 2.** All youth detained at the JTDC for at least 24 consecutive hours who had family visitation during the June and July filming periods.

**Class 3.** All youth detained at the JTDC for at least 24 consecutive hours during the *Empire* filming periods who were . . . on pods with populations that exceeded safe functional operating capacity.

(*Id.* at 6–7.)

Plaintiffs bear the burden of showing that a proposed class complies with Rule 23, "but they need not make that showing to a degree of absolute certainty." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Id.* A court may look beyond the pleadings to determine whether class certification is appropriate, because "[o]n issues affecting class certification, [ ] a court may not simply assume the truth of the matters as asserted by the plaintiff." *Id.* If there are factual disputes, "the court must receive evidence and resolve the disputes before deciding whether to certify the class." *Id.* (internal quotation omitted). This inquiry may involve "some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), but class certification is not a "dress rehearsal for a trial on the merits," *Messner*, 669 F.3d at 811.

Because the court has granted summary judgment with respect to Plaintiffs' constitutional claims on the basis of qualified immunity, as well as the inducement and unjust enrichment claims against the Fox Defendants, the court's class certification analysis is limited to the remaining state-law claims against Defendants Dixon and Cook County. In other words, the court will

consider whether certification of the proposed classes and subclasses is appropriate for the breach of fiduciary duty and indemnification claims against the County Defendants.

### 1.   Rule 23(a) Requirements

*Ascertainability*

As explained in the January 16, 2020 opinion, courts have recognized that a proposed class must be ascertainable, meaning it must be "defined clearly and based on objective criteria." *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015).  If a proposed class sweeps in a large proportion of persons who could not have been injured by a defendant's conduct, the class is overbroad.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).  The court previously expressed concerns that the Plaintiffs' proposed class included some individuals who could not have been harmed because they were released shortly after arriving at the "Alpha" intake unit and thus were never assigned to a pod.  *T.S.*, 334 F.R.D. at 527–28.  Plaintiffs have attempted to correct potential overbreadth problems by limiting each of the three proposed classes to detainees who were at the JTDC for at least 24 consecutive hours.  (Renewed Class Mot. at 2, 6–7.)  Plaintiffs emphasize that even "Alpha" intake detainees are typically provided with daily off-pod recreation.  (*Id.* at 8 (citing Dunlap Supp. Rpt. ¶ 4).)  Thus, intake detainees who spent at least 24 hours at the JTDC may have been affected by *Empire* filming if they did not receive off-pod recreation.

Defendants argue that the proposed classes are still overbroad for several reasons.  First, they point out that not all detainees were juveniles—between 6 and 14 detainees were adults on each day of the June and July filming periods.  (Defs.' Opp'n to Renewed Mot. [397] at 21 (citing Opp'n Ex. M 21:3–22:20 & Opp'n Ex. L).)  Second, they argue that T.S. and Q.B. (as well as presumably H.C.) lack standing to represent female detainees, who are housed separately and receive separate schooling, recreation, and programming.  (Defs.' Opp'n to Renewed Mot. at 22 (citing Opp'n Ex. M 108:1–109:10).)  Third, Defendants argue that Alpha detainees should be

excluded from the class definitions because they do not attend school and are more likely to be restricted from recreation. (Defs.' Opp'n to Renewed Mot. at 22 (citing Opp'n Ex. AA and Opp'n Ex. BB ¶ 4).)

The court is satisfied that Plaintiffs' adjustments to their proposed classes have mitigated any potential overbreadth problems. First, the court is not concerned that the presence of a handful of adult detainees will have a significant impact on the certifiability of the proposed classes.[21] *See Messner*, 669 F.3d at 825–26 (reversing denial of class certification where only 2.4 percent of putative class members could not have been harmed by defendant's conduct). Second, Defendants' arguments regarding female detainees go more to typicality and adequacy than overbreadth. As Plaintiffs explain, female pods are segregated from male pods, but female detainees still attend school on the JTDC's second floor, receive off-pod recreation, and participate in programming. Accordingly, they may have been subject to increased confinement during filming. (Renewed Mot. at 5.) Finally, the court agrees that the 24-consecutive-hours requirement for all proposed classes ensures that even Alpha detainees are among those who would normally have received some off-pod movement. As the court explains below, the addition of subclasses within Class 1, the "increased confinement" class, means that Alpha detainees will be included in a subclass only if they actually would have left their pods for recreation. The court is therefore no longer concerned about overbreadth, and now turns to Rule 23(a)'s four requirements.

### *Numerosity*

To satisfy numerosity, Plaintiffs must show that the proposed classes are "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(2). Generally, classes of forty or more members are sufficiently numerous. *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773,

---

[21]    Plaintiffs' class definitions arguably exclude adult detainees by referring to "youth," but the parties do not address this argument.

777 (7th Cir. 2021). Even if a plaintiff cannot provide precise numbers at the certification stage, "a good faith estimate is sufficient to satisfy the numerosity requirement where it is difficult to assess the exact class membership." *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 329 (N.D. Ill. 1995) (quotation marks and alterations omitted). Defendants do not challenge numerosity under Rule 23(a)(1). (Defs.' Opp'n to Renewed Mot. at 23.) Nonetheless, as the party seeking class certification, Plaintiffs bear the burden of proving by a preponderance of the evidence that their proposed classes are sufficiently numerous. *Anderson*, 986 F.3d at 777 (citing *Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 433 (7th Cir. 2015)).

Class 1, the "increased confinement" class, easily satisfies numerosity. More than 300 juvenile detainees were confined at the JTDC during each of the *Empire* filming sessions, and Plaintiffs maintain that the vast majority of those detainees were detained for at least 24 consecutive hours. (Renewed Mot. at 9.) The numerosity of subclass 1(a), the off-pod LME subclass, is less certain, but Plaintiffs point the court to the number of detainees who were confined to their pods for at least 24 hours (Subclass 1(f)) as evidence in support of finding numerosity for Subclass 1(a) because those same detainees were presumably denied off-pod LME, as well. (*See* Ex. A to Weil Decl. 8/7/20.)[22] The court agrees that this is a logical assumption and finds that Subclass 1(a) satisfies numerosity.

For Subclass 1(b), the outdoor recreation subclass, Plaintiffs have submitted an exhibit showing the recreation schedule for one of the JTDC's centers, showing that multiple pods were scheduled for outdoor recreation every day between June 1, 2015 and June 13, 2015. (*See* Ex. B to Weil Decl. 6/15/20 [351-2].) The first *Empire* filming period spanned June 22–26, 2015, so

---

[22]     The court notes that this new chart does not attempt to calculate the total number of detainees who were confined for at least 24 consecutive hours, as previous versions of the exhibit did. Instead, the chart calculates the number of detainees who satisfied that criteria per pod per day of filming. Nonetheless, by the court's reading of the chart, well over 40 detainees may have been subject to "severe confinement" on at least one day during each of the three filming periods.

the schedule set forth in Plaintiffs' exhibit is not clear evidence of the frequency of outdoor recreation later in June, much less in July and August. Nonetheless, given that Defendants have not challenged the numerosity of this or any subclass, the court is willing to assume—solely for purposes of class certification—that on a typical day in June, at least two pods would have been scheduled for outdoor recreation. If each pod contained at least a dozen detainees, and there were twelve days of filming across all three filming periods, then well over forty detainees could have been affected.

Subclass 1(c), the school-break recreation subclass, consists of detainees who did not receive "extra" off-pod activity during the school breaks in June and August. According to Earl Dunlap's supplemental expert report, all detainees, regardless of behavioral level, would have been eligible for additional time off-pod when school was not in session. (*See* Dunlap Suppl. Expert Rpt., Ex. 1 to Renewed Class Mot. [351-1] ¶ 5; Ex. 10 to Dunlap Suppl. Expert Rpt. (showing "break tournament!" between August 17, 2014 and August 29, 2014).) Plaintiffs again point to counsel's declaration as evidence that well over 100 detainees would be part of this subclass. (*See* Ex. A to Weil Decl. 8/7/20.) As with Subclass 1(a), the court is willing to assume that detainees confined for at least 24 consecutive hours during the June and August filming periods would also have been denied extra school-break recreation. Subclass 1(c) therefore satisfies numerosity.

Subclass 1(d), the school subclass, consists of detainees who did not travel to classes at the Nancy B. Jefferson school during the July filming period. Plaintiffs attest that this would have included all detainees at the JTDC, except for those in the Alpha intake pods. The court agrees that this subclass is sufficiently numerous.

Subclass 1(e), the programming subclass, includes detainees who were deprived of programming during the filming periods. Plaintiffs contend that the cancellation of Free Write alone affected 41 detainees in June. (Renewed Mot. at 10 (citing Ex. A to Weil Decl. 6/15/20).)

Although the cited declaration does not make clear how Plaintiffs arrived at this number, the court notes that other parts of the record suggest that at least 40 detainees may have missed programming opportunities during the filming periods. (*See* Renewed Mot. at 25; PSOAF ¶ 54.)

Subclass 1(f), the "severe confinement" subclass, is sufficiently numerous for the same reasons as Subclasses 1(a) and 1(c). (*See* Ex. A to Weil Decl. 8/7/20.)

Class 2, the "degraded visitation" class, includes all detainees who had visitors during the June and July filming periods, when the Fox Defendants used the room where visitation typically occurred. Detainees in this class received visitors in a classroom that was approximately 10 percent smaller than the normal visitation room. (*See* Defs.' SOF ¶ 66; Resp. to Defs.' SOF ¶ 66.) Because dozens of detainees receive visitors every day, this class is sufficiently numerous. (*See* PSOAF ¶ 42 ("Detainees have two one-hour visiting slots per week."); Resp. to PSOAF ¶ 42 (not disputing this fact).)

Finally, Class 3, the "overcrowding" class, consists of detainees who were assigned to pods that exceeded the JTDC's own guidelines. The JTDC's pods contain 16 or 18 single-bed rooms, but the JTDC's written policies provide that the "functional operating capacity" of those pods is 12 or 14 residents, respectively. (*See* PSOAF ¶¶ 40.) Based on undisputed pod population records during the filming periods, the court concludes that this class satisfies numerosity. (*See* PSOAF ¶¶ 40–41; Resp. to PSOAF ¶¶ 40–41 (conceding the existence of the JTDC's policy and the pod population records, but noting that no pod housed more detainees than the number of single-bed rooms in the pod).)

### *Commonalit.*

Rule 23(a) requires Plaintiffs to show that there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A single common question may be sufficient, so long as "determination of [the] truth or falsity [of a common contention] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d

541, 550 (7th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. at 350). This inquiry may "entail some overlap with the merits of the plaintiff's underlying claim." *Phillips*, 828 F.3d at 550 (quoting *Wal-Mart*, 564 U.S. at 351). A common question need not resolve every issue in the case. *Phillips*, 828 F.3d at 551. Supplemental proceedings may be appropriate "if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011).

The court previously concluded that Plaintiffs had satisfied commonality by identifying at least one common question: "whether *Empire* filming disturbed operations at the JTDC in ways that violated class members' constitutional rights," and specifically whether "allowing *Empire* to film at the JTDC is a legitimate justification for altering the normal operations of the facility." *T.S.*, 334 F.R.D. at 528, 530. Because the court has granted summary judgment with respect to Plaintiffs' constitutional claims, however, it must now reexamine whether Plaintiffs have met this requirement for the remaining state-law claims. Plaintiffs identify the following common questions regarding breach of fiduciary duty: (1) whether Defendant Dixon owed JTDC detainees a fiduciary duty, (2) whether Dixon breached that duty, and (3) whether the breach proximately caused damages. (Renewed Mot. at 29 (citing *T.S.*, 334 F.R.D. at 537).) Plaintiffs intend to offer common evidence that (1) Defendant Dixon assumed the position of guardian over the JTDC's detainees, (2) Dixon breached his duty to ensure the "safety and general well-being" of his wards by eliminating or degrading services for his own benefit, and (3) Dixon's breach proximately caused injuries to the classes in the form of psychological harm and increased risk of violence. (Renewed Mot. at 29–30.) Defendants concede that Plaintiffs have identified common questions but argue that they are "too superficial" to satisfy Rule 23(a)(2). (Defs.' Opp'n to Renewed Mot. at 23.)

The court concludes that Plaintiffs have identified at least two common questions that can be proved with common evidence. Specifically, the first two elements of their breach of fiduciary duty claim—(1) whether Defendant Dixon owed JTDC detainees a fiduciary duty, and (2) whether

Dixon breached that duty by allowing filming at the JTDC—are clearly "capable of classwide resolution." *Phillips*, 828 F.3d at 550 (quoting *Wal-Mart*, 564 U.S. at 350). These questions pertain to all three classes and the subclasses within Class 1. The third element of a breach of fiduciary duty, proximate cause, may be more challenging to prove with common evidence, but the first two common questions are sufficient to satisfy Rule 23(a)(2).

### *Typicality*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the named plaintiff's] claims are based on the same legal theory." *Oshana*, 472 F.3d at 514 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). The claims of the representatives need not be identical to those of the class members, but they should have the "same essential characteristics as the claims of the class at large." *Oshana*, 472 F.3d at 514 (internal quotation marks and citations omitted). In other words, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586.

In the January 16, 2020 opinion, the court noted that "[s]ome of the conduct giving rise to Q.B. and T.S.'s claims appear to be typical of the class, but other alleged deprivations that they experienced appear to be unique." *T.S.*, 334 F.R.D. at 530–31. The court recommended narrowing the class "to include only the alleged deprivations that are common to every class member" or, alternatively, proposing subclasses. *Id.* at 531. In response to these concerns, Plaintiffs have proposed three classes and offered H.C. as a class representative for Subclass 1(f). (*See* Renewed Mot. at 15 n.2.) The court will first describe the classes or subclasses that satisfy the typicality requirement, and then describe those that do not.

57

Class 1, the increased confinement class, includes detainees who were subject to increased confinement for a variety of reasons (denial of off-pod LME, outdoor recreation, "extra" school-break recreation, school in the Nancy B. Jefferson classrooms, and/or programming). Plaintiffs insist that subclasses are unnecessary because the increased confinement stemmed from the same course of conduct: Defendant Dixon's decision to allow the filming of *Empire* at the JTDC. (*Id.* at 12–13.) They also emphasize that each subclass is bringing claims based on the same legal theory: that Defendant Dixon breached his fiduciary duty to detainees at the JTDC, and that the breach proximately caused them harm. (*Id.* at 13.) According to Dr. Kraus's expert report, "any increased restrictions on juveniles are psychologically harmful," and "any youth detained at the JTDC who spent more time on the pod than he or she otherwise would have was harmed." (*Id.* at 14 (citing Kraus Rpt. ¶ 6).)

The court agrees with Defendants, however, that the reason for a given detainee's increased confinement matters and that Class 1 does not satisfy typicality in the absence of subclasses. Without dividing class members into subclasses, it will be difficult, if not impossible, to prove that the decision to permit filming at the JTDC proximately caused detainees' increased confinement—a separate question from the amount of damages they may have incurred as a result of that confinement. To take just one example, *Empire* filming may not have caused the cancellation of off-pod recreation for H.C.'s pod on one day in July because a fight broke out around the time that pod members would have left to go to the gym. (*See* Defs.' Opp'n to Renewed Mot. at 16 (citing Robinson Decl. of 7/17/20, Opp'n Ex. MM ¶¶ 17–20).) Defendants have challenged typicality only as to Subclasses 1(c), 1(d), and 1(f), (Defs.' Opp'n to Renewed Mot. at 23), but the court addresses the issue with respect to each class and subclass for completeness.

Subclass 1(a), the off-pod LME subclass, consists of detainees who did not leave their pods for LME on at least one day during the *Empire* filming periods. T.S., Q.B., and H.C. each

58

claim that they received LME on their pods—instead of traveling to the yard, the gym, or the game room—on at least one day.[23]  (PSOAF ¶ 10.)  Because their claims are typical of the subclass that they seek to represent, this subclass satisfies Rule 23(a)(3).  Defendants emphasize that whether *Empire* filming was the *cause* of a given pod not receiving off-pod recreation on a given day is a fact-intensive inquiry (Defs.' Opp'n to Renewed Mot. at 34–35), but that alone does not justify denying certification of this subclass.

All named plaintiffs claim to have lost extra school-break recreation, such as tournaments, that they allegedly would have received but for the filming.  (PSOAF ¶¶ 10, 34.)  Defendants nevertheless challenge the typicality of Subclass 1(c) because H.C. never participated in a tournament despite opportunities to do so later in 2015.  (Defs.' Opp'n to Renewed Mot. at 36 n.5 (citing H.C. Dep. at 48:8–49:4).)  It is similarly unclear whether T.S. or Q.B. would have participated in a tournament during the June or August filming periods.  (Defs.' Opp'n to Renewed Mot. at 36 n.5*; but see* T.S. Dep. at 117:1–9 (stating that T.S. recalled participating in a basketball tournament while on a school break at the JTDC).)  At the time of T.S. and Q.B.'s depositions, Plaintiffs had not yet asserted claims on the basis of a right to extra recreation during school breaks, so T.S. and Q.B. were not asked about tournaments at their depositions.  (Defs.' Opp'n to Renewed Mot. at 36 n.5.)  Plaintiffs respond that, according to Dunlap's expert report, break activities were not limited to tournaments, and all residents would have been brought off their pods for other recreation activities.  (Pls.' Reply in Support of Renewed Mot. [400] at 18 (citing Dunlap Suppl. Expert Rpt. ¶¶ 5, 8.)  This report satisfies the court that the named Plaintiffs' claims are sufficiently typical of those in Subclass 1(c), regardless of whether T.S., Q.B., or H.C. personally participated in tournaments.

---

[23]    Defendants continue to dispute whether T.S. was denied off-pod recreation, noting that the JTDC's records offer conflicting evidence regarding his pod's recreation schedule on the day in question.  (Defs.' Opp'n to Renewed Mot. at 33–34.)

Next, Subclass 1(d), the school subclass, satisfies typicality because T.S. and H.C. claim that they had school instruction on their pods on at least one day during the July filming period. (PSOAF ¶ 10.)  Defendants concede that this happened because of filming but dispute whether conducting the classes in the pod common areas was harmful.  (Defs.' Opp'n to Renewed Mot. at 36–37.)  Plaintiffs are no longer arguing that these classes were less effective; instead, they contend that the loss of movement to the Nancy B. Jefferson school was psychologically harmful, in that it contributed to increased confinement on the pods.  (Renewed Mot. at 15.)  With this narrower definition, Subclass 1(d) satisfies typicality.

Subclass 1(e), the programming subclass, also satisfies typicality because T.S. and H.C. both missed one Free Write session during filming.  (PSOAF ¶ 10(a), (c).)  Defendants do not dispute that the sessions were cancelled or that T.S. and H.C. were otherwise eligible to attend. (Resp. to PSOAF ¶ 10(a), (c).)

T.S. and Q.B.'s claims are not typical of those in Subclass 1(f), the "severe confinement" subclass, because they were not confined to their pods for 24 consecutive hours during the filming periods.  Plaintiffs acknowledge this and have proposed the addition of H.C. as a class representative.  (*See* Renewed Mot. at 15 n.2.)  Defendants argue the evidence that H.C. himself spent 24 consecutive hours on his pod is suspect because some residents on his pod left to watch a movie on the day in question.  (Defs.' Opp'n to Renewed Mot. at 39 (citing Justice Center Shift Report of 7/13/15, Opp'n Ex. LL).)  At the class certification stage, however, Plaintiffs need not prove their claims to an absolute certainty.  *Messner*, 669 F.3d at 811 ("It is sufficient if each disputed requirement has been proven by a preponderance of evidence.")  There is evidence that H.C. was confined to his pod for at least 24 hours consecutively, so his claims are typical of those of Subclass 1(f) for purposes of Rule 23(a)(3).

Finally, Class 3, the overcrowding subclass, satisfies typicality.  According to the JTDC's pod capacity logs, Q.B.'s pod exceeded its functional capacity by one resident during filming.

*T.S.*, 334 F.R.D. at 534.  That resident was moved from pod 3A or 3B (Alpha intake pods), which were closed due to filming, to Q.B.'s pod.  *Id.*  Plaintiffs allege that overcrowding creates safety risks and can be psychologically harmful to detainees.  (Renewed Mot. at 16.)  Because Q.B.'s claims are typical of those in Class 3, the class satisfies Rule 23(a)(3).

By contrast, the court concludes that Subclass 1(b) and Class 2 do not satisfy typicality. Turning to Subclass 1(b): none of the named plaintiffs alleges that he was personally denied scheduled outdoor recreation during the filming periods, or that outdoor recreation was not scheduled for his pod because of the *Empire* filming.  Instead, T.S. and Q.B. attest that they were confined to their pods for LME for at least one day and that they lost "break rec" during the June and August filming periods.  (PSOAF ¶¶ 10(a)–(b).)  H.C. similarly does not claim to have been denied outdoor recreation, arguing only that he lost "break rec" in June and August.  (*Id.* ¶ 10(c).) Because none of the named plaintiffs claims to have personally experienced the loss of outdoor recreation that they otherwise would have received, they lack standing to represent Subclass 1(b). *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."  (internal quotation marks and citation omitted)).  In any event, there is likely substantial overlap between this proposed subclass and Subclasses 1(a) and 1(c), which claim more generally that members were denied off-pod recreation, whether indoors or outdoors.

Class 2, the "degraded visitation" class, also cannot survive typicality.  The JTDC moved visitation to a different location during the June and July filming periods (no *Empire* filming occurred in the visitation room during the August filming period).  As Defendants note, the JTDC used a different classroom during the June filming period than it did in July.  Both classrooms used eight tables, but according to JTDC documents prepared in anticipation of filming, the placement of those tables within the rooms varied significantly between June and July.  (*See*

61

Opp'n to Renewed Mot. at 6 (citing Opp'n Ex. C at 6, 13).)  Specifically, the June layout placed

six of the eight desks along the walls of the classroom, with two desks in the center, while the July

layout placed all eight desks in the center of the room in two rows of four desks.  (*Id.*)  Neither

T.S. nor Q.B. had visitation during the July filming period,[24] and H.C. has not made any allegations

regarding reduced privacy during visitation.  (*See* T.S. Dep. at 127:17–129:7, Opp'n Ex. N [398-

3]; Q.B. Dep. at 65:13-66:3, Opp'n Ex. P [398-3]; H.C. Dep. at 54:19–57:19, Opp'n Ex. O [398-

3].)  Because the basis for Plaintiffs' claims hinges on the reduced privacy that detainees may

have experienced during visitation due to the spacing of the tables, the named Plaintiffs are not

proper representatives of detainees who had visitation in July.

### *Adequacy*

Rule 23(a)'s requirement that "the representative parties will fairly and adequately protect

the interests of the class" implicates both the named representatives and the proposed class

counsel.  FED. R. CIV. P. 23(a)(4).  Specifically, the "claims and interests of the named Plaintiffs

must not conflict with those of the class, the class representatives must have sufficient interest in

the outcome of the case, and class counsel must be experienced and competent."  *Van v. Ford

Motor Co.*, 332 F.R.D. 249, 282 (N.D. Ill. 2019) (citing *Retired Chi. Police Ass'n v. City of Chicago*,

7 F.3d 584, 598 (7th Cir. 1993)).  The experience and competence of class counsel includes

"counsel's work on the case to date, counsel's class action experience, counsel's knowledge of

the applicable law, and the resources counsel will commit to the case."  *Reliable Money Order,

Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

In the January 16, 2020 opinion, the court invited Plaintiffs to provide updated biographies

of Ms. Chardon and Mr. Weil, and to explain how the addition of Loevy & Loevy would affect class

representation in this case.  *T.S.,* 334 F.R.D. at 535.  Ms. Chardon has since withdrawn as

---

[24]    Q.B. alleges that his grandmother was not able to visit him on one day during
*Empire* filming (*see* Third Am. Compl. ¶ 49), but Plaintiffs are not attempting to certify Class 2 on
that basis.

Plaintiffs' counsel (Minute Entry of 7/21/20 [376]), so the court will focus on Mr. Weil and Loevy & Loevy's collective experience with class action litigation. While working for various law firms, Mr. Weil has represented clients in multi-district litigation, an ERISA class action, and a *parens patriae* action (a lawsuit brought by a state on behalf of its own citizens). (Renewed Mot. at 17.) This experience, combined with Mr. Weil's long history litigating this case, satisfies the court that he will perform adequately as class counsel. Mr. Weil is now associated with Loevy & Loevy, a firm that has extensive experience representing incarcerated people. The firm has committed to provide resources toward all phases of the litigation, including class certification, trial, appeal, and settlement negotiations. (*Id.* at 17–18.) Mr. Weil and his firm are adequate class counsel in this case.

Indeed, Defendants do not challenge the adequacy class counsel. They do argue, however, that T.S., Q.B., and H.C. are not adequate class representatives. (Defs.' Opp'n to Renewed Mot. at 43–44.) Specifically, Defendants suggest that T.S., Q.B., and H.C. have had minimal communication with their attorneys and have not been kept apprised of settlement negotiations. (*Id.* (citing H.C. Dep. at 26:11–13).) Defendants concede that putative class representatives need not be legal experts, but they nonetheless contend that the three proposed representatives have not met even minimum standards of supervision. (*Id.* at 44 (citing *In re: Ocean Bank*, No. 06 C 3515, 2007 WL 1063042, at * 8 (N.D. Ill. Apr. 9, 2007).) Defendants point out that H.C. seemed caught off-guard during his deposition on August 4, 2020, in that he had not seen the proposed Third Amended Complaint before it was filed on July 1, 2020, and was not familiar with the interrogatory responses his attorneys had prepared. (*See* H.C. Dep. at 28:1–10, 115:21–116:21, 118:4–10, 119:3–22.)

Plaintiffs respond that "understanding the minutia of a case is not a prerequisite to being a class representative." (Pls.' Reply in Support of Class Cert. at 29 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).) With respect to keeping Plaintiffs

apprised of progress, counsel reports that he was able to meet with T.S. but not Q.B. on January 30, 2020 at the Cook County Jail.  (Pls.' Reply in Support of Class Cert. at 30 (citing Weil Decl. 9/25/20, Ex. 11 to Pls.' Reply).)  Counsel did speak with Q.B. on February 25, 2020.  (*See* Minute Entry of 6/24/20 [359] (ordering Plaintiffs to disclose the dates of any additional communications with their attorneys since August 7, 2018); Defs.' Opp'n to Renewed Mot. at 43.)  With respect to H.C.'s deposition testimony, Mr. Weil attests that he showed H.C. the Second Amended Complaint before filing the Third Amended Complaint, and reviewed H.C.'s interrogatory responses with him before H.C. signed them.  (Pls.' Reply in Support of Class Cert. at 30 (citing Weil Decl. 9/25/20 ¶¶ 10–11).)

The court concludes that T.S., Q.B., and H.C. are adequate class representatives for purposes of Rule 23(a)(4).  Plaintiffs are correct that "[e]xperience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions." *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002).  Indeed, "[I]t is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification, unless his ignorance unduly impacts his ability to vigorously prosecute the action."  *In re Ocean Bank*, 2007 WL 1063042, at *5 (quoting *Murray*, 232 F.R.D. at 300).  Here, H.C.'s missteps during his deposition are not so significant as to defeat his adequacy as a class representative.  The court is confident that counsel understands the need to continue updating T.S., Q.B., and H.C. about the litigation, including the possibility of a settlement, while recognizing that the COVID-19 pandemic has complicated their ability to meet in person.

\* \* \*

To summarize, the remaining classes are: Subclass 1(a) (the off-pod LME subclass), Subclass 1(c) (the school-break recreation subclass), Subclass 1(d) (the school subclass), Subclass 1(e) (the programming subclass), Subclass 1(f) (the severe confinement class), and Class 3 (the overcrowding class).

### 2. Rule 23(b)(3) Requirements

Because Plaintiffs have shown that at least some of their proposed classes and subclasses satisfy the four requirements of Rule 23(a), the court now assesses whether they can meet the criteria of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the court must find that common questions predominate over individual ones and that a class action is "superior to other available methods of adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

*Predominance*

The predominance requirement is "far more demanding" than the commonality requirement, and tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). The Rule 23(b)(3) analysis begins with the "elements of the underlying cause of action." *Messner*, 669 F.3d at 815. "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Id.* (citation omitted). "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* Rule 23(b)(3) does not require "that each element of [a] claim is susceptible to classwide proof." *Alicea v. Cnty. of Cook*, No. 18 C 5381, 2019 WL 3318140, at *3 (N.D. Ill. July 24, 2019) (quoting *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015)). But the common questions must "represent a significant aspect of a case." *Messner*, 669 F.3d at 815 (citation and internal quotation marks omitted); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses.") (citation omitted).

Plaintiffs claim that Defendant Dixon breached a fiduciary duty to JTDC detainees by allowing *Empire* to film at the facility. To succeed on a claim for breach of fiduciary duty for

damages under Illinois law, Plaintiffs must show that "(1) a fiduciary duty existed, (2) that duty was breached, and (3) the breach of the duty proximately caused damages." *Chi. Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 777 (N.D. Ill. 2015) (citing *Gross*, 619 F.3d at 709). As explained above in the court's summary judgment analysis, Defendant Dixon may have owed a fiduciary duty to detainees similar to that of a guardian to his wards. A reasonable jury could also conclude that Defendant Dixon breached that duty by approving the *Empire* filming. Plaintiffs can prove these elements with common evidence. More complicated is whether common questions predominate regarding the third element: whether the approval of filming proximately caused the specific harms alleged by each class or subclass.

In the January 16, 2020 opinion, the court concluded that "Plaintiffs need to show that [Dixon's] decision had a class-wide effect on the detainees' safety or well-being." *T.S.*, 334 F.R.D. at 538. For the Class 1 subclasses, Plaintiffs argue that the expert reports from Dunlap and Dr. Kraus constitute common evidence that increased confinement, regardless of the precise reason, was psychologically harmful to detainees. (Renewed Mot. at 27.) For Class 3, Plaintiffs again point to the expert reports as evidence that overcrowding on the pods was not only psychologically harmful, but also put detainees at greater risk of violence. (*Id.* at 28–29 (citing Dunlap Rpt. ¶ 57; Kraus Rpt. at ¶ 38).)[25]

---

[25]     Class 2, the visitation class, does not satisfy Rule 23(a). Even if it did, this class would fail Rule 23(b)(3) because Plaintiffs have not offered common evidence that the spacing of the tables in the alternate classrooms offered reduced privacy during visitation. (*See* Pl.'s Resp. to Defs.' SOF ¶ 66 (not disputing that there was only 10% less space (by square footage) in the classroom used for visitation during filming compared to the typical room).) The normal visitation room had 12 tables, but the evidence suggests that the alternate visitation rooms had 8 tables. (PSOAF ¶ 42–43.) Empirically, it is unclear if there was in fact less space between the tables and/or visitors in the classrooms. And as Defendants observe, the precise spacing of the tables matters only to the extent that the alternate visitation room was *full* at a given time. (Defs.' Opp'n to Renewed Mot. at 39–40.) Individual inquiries into the number of people in the alternate visitation room and their locations at a given time would render this class unmanageable. Without common evidence, Plaintiffs cannot make a *prima facie* showing that the loss of privacy amounted to a breach of Defendant Dixon's fiduciary duty to detainees.

Defendants assert that proving a breach and subsequent harm to detainees will require extensive individual inquiries. (Defs.' Opp'n to Renewed Mot. at 32–33, 41–42.) Plaintiffs respond that the individual issues Defendants have identified concern the amount of damages that each detainee suffered. (Pls.' Reply in Support of Renewed Mot. at 11–12.) The court agrees that Plaintiffs may satisfy predominance "despite the need to make individualized damage determinations." *Mulvania*, 850 F.3d at 859. Plaintiffs can use common evidence to show that Defendant Dixon had a fiduciary duty and that he breached that duty. But the expert reports alone are not common evidence that Defendant Dixon's breach is what caused detainees to spend more time on their pods than they otherwise would have. Individual questions regarding the precise cause of a detainees' increased confinement would predominate among Class 1 in the absence of subclasses.

Subclass 1(a), the off-pod LME subclass, does not satisfy predominance. The evidence necessary to prove whether, but for the filming, a particular pod would have received off-pod LME would vary from pod to pod, and even from detainee to detainee within a given pod. *See Messner*, 669 F.3d at 815 ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question."). To take just one example, on the day that Plaintiffs claim T.S. had on-pod recreation, another JTDC record states that his pod went to the gym. (*See* Defs.' Opp'n to Renewed Mot. at 15–16.) The jury would need to make an individual determination as to whether T.S. had off-pod recreation on a single day, and that determination might differ from whether the rest of the detainees in his pod had off-pod recreation. Those determinations would also not advance the claims of any other pod because detainees in each pod had their own recreation schedules. (*See* Steward Decl., Opp'n Ex. Q ¶ 13; May Dunlap Dep., Opp'n Ex. K 35:12–20.) Similarly, Defendants do not dispute that Q.B. had on-pod recreation on one day of filming, but it was not uncommon for Q.B.'s pod, which had a history of disciplinary problems, to have on-pod

recreation due to safety concerns. (*See* Defs.' Opp'n to Renewed Mot. at 16.)  A jury would need to consider whether it was the presence of the *Empire* crew or some other factor that resulted in Q.B.'s pod being limited to on-pod recreation.  Because individual questions of causation would predominate over common questions of duty and breach, this subclass does not satisfy Rule 23(b)(3).

Subclass 1(c), the extra school-break recreation subclass, does satisfy the predominance requirement.  Plaintiffs can use common evidence to show that all detainees would have received extra recreation opportunities during the June and August filming periods when school was not in session.  According to Dunlap's supplemental expert report, "all kids, regardless of [behavior] level, would spend as much time off the 'Center' pods as possible . . . in addition to the one-hour of 'large muscle activity' recreation that they were normally provided."  (Opp'n Ex. BB ¶¶ 4–5.) Defendants dispute whether detainees actually received "extra" recreation when Dunlap worked at the JTDC in 2014, the year before *Empire* filming.  (Defs.' Opp'n to Renewed Mot. at 15.)  But Plaintiffs need not establish that they will prevail on their claims at this stage.  Should they ultimately be unable to do so, the court would dismiss all such claims for members of a class certified under Rule 23(b)(3).

Subclass 1(d), the school subclass, also satisfies predominance.  Plaintiffs have presented evidence that almost all detainees would have attended school in the Nancy B. Jefferson classrooms during the July filming period.  Defendants do not dispute that "this happened because of the filming," with the minor caveat that some detainees may have been in court, in the Alpha pods, or confined to their rooms for disciplinary reasons at the time.  (Defs.' Opp'n to Renewed Mot. at 36.)  Defendants also question whether offering classes on the pods instead of in classrooms was harmful, but this argument goes to the merits of Plaintiffs' claim rather than certification.

Subclass 1(e), the programming subclass, narrowly satisfies predominance.  Although Plaintiffs have not provided a definitive list of programs that were scheduled but cancelled due to filming, there is evidence in the record that the following programs were cancelled: a program by the Chicago Alliance Against Sexual Exploitation, a University of Illinois nutrition education program, Karma Garden, and Free Write.  (*See* PSOAF ¶ 37–38; Free Write Roster [400-10].)[26] At least some trips to the "commissary," which took place in repurposed classrooms where detainees could purchase items or engage in activities like ping pong or video games, were cancelled because of filming.  (PSOAF ¶ 39; Resp. to PSOAF ¶ 39.)  To comply with Rule 23(b)(3), the court narrows the subclass definition to include detainees who would have attended these off-pod programs (as opposed to unspecified additional programs) during *Empire* filming.

Subclass 1(f), the severe confinement class, does not satisfy predominance.  Plaintiffs have made repeated attempts to compile charts calculating the number of detainees who did not leave their pods for at least 24 consecutive hours during filming.  Each time, Defendants have pointed out inaccuracies in those charts, and Plaintiffs now concede that the DC5 logs, alone, are insufficient to establish numerosity of this subclass.  (*See* Pls.' Status Report 8/2/20 [388].)  As with Subclass 1(a), individual questions regarding why a particular detainee did not leave his or her pod abound.  Because Plaintiffs cannot prove their claims with common evidence, the court denies certification of this subclass.

For Class 3, common questions predominate over individual inquiries because Plaintiffs can rely on pod population records for evidence that pod populations increased during filming. (*See* PSOAF ¶ 41.)  In turn, Plaintiffs can rely on the expert reports to establish that such overcrowding may have caused harm.  Again, Defendants will be free to demonstrate that Dixon's

---

[26]    Defendants dispute whether all of these programs were offered in the summer of 2015 and whether they were canceled because of filming.  (Defs.' Resp. to PSOAF ¶ 37–39.)

breach did not proximately cause the alleged overcrowding and that such overcrowding did not compromise detainees' safety. (*See* Defs.' Opp'n to Renewed Mot. at 40–41.)

The elements of a claim for breach of fiduciary duty for restitution under Illinois law are similar to but distinct from a claim for damages. Instead of showing that the breach proximately caused damages to the plaintiff, a plaintiff must show that the breach benefitted the fiduciary. *See Pro-Pac Inc.*, 721 F.3d at 787 (quoting Restatement (Third) of Restitution & Unjust Enrichment § 43). Plaintiffs argue that they will offer common evidence that Defendant Dixon received quantifiable benefits from the breach, including autographed photographs from *Empire* stars and a director's chair. (Renewed Mot. at 32.) Defendants argue that restitution is unavailable as a remedy, but it is unclear if they are referring solely to restitution flowing from the Fox Defendants' alleged inducement of a breach. (*See* Opp'n to Renewed Mot. at 41.) Because the court has granted summary judgment to the Fox Defendants on the inducement count, Plaintiffs may seek restitution only from the County Defendants. The amount of such restitution may be de minimis, but the court concludes that common questions predominate for this aspect of their restitution claim.

### *Superiority*

Rule 23(b)(3) requires that proceeding as a class action under this provision be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Courts consider the following factors:

> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> **(D)** the likely difficulties in managing a class action.

*Id.* Plaintiffs argue that Rule 23(b)(3)(A)–(C) all weigh in favor of proceeding as a class action. (Renewed Mot. at 33.) Specifically, a class action will enable detainees to pursue many small

claims together and avoid repeated litigation of threshold issues, such as whether Dixon owed detainees a fiduciary duty. *See Chi. Tchrs. Union*, 797 F.3d at 433 ("The purpose of class action litigation is to avoid repeated litigation of the same issue and to facilitate prosecution of claims that any one individual might not otherwise bring on her own."). Plaintiffs are also unaware of any additional litigation pertaining to the conduct at issue in this case. Defendants' brief implicitly raises Rule 23(b)(3)(D), the likely difficulties in managing a class action, as a reason to deny certification, but they otherwise do not challenge superiority. The court concludes that Plaintiffs have satisfied superiority for the remaining classes and subclasses.

### 3. Rule 23(b)(1)(B)

The court may certify a class under Rule 23(b)(1)(B) if "prosecuting separate actions . . . would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." FED. R. CIV. P. 23(b)(1)(B). Plaintiffs argue that Rule 23(b)(1)(B) certification is appropriate for their claims against the Fox Defendants (Count VIII for tortious inducement of a breach of fiduciary duty and Count XIII for unjust enrichment). In their renewed motion for class certification, Plaintiffs clarify that they are not seeking certification of this class in the alternative; instead, they believe that Rule 23(b)(1)(B) is preferable to Rule 23(b)(3) for their unjust enrichment claims. (Renewed Mot. at 34.) Because the court has granted Defendants' motion for summary judgment on the inducement and unjust enrichment claims against the Fox Defendants, the court need not consider whether certification under Rule 23(b)(1)(B) would be appropriate here.

## **CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part Defendants' motions

for summary judgment [361, 409, 411], grants Plaintiffs' Motion to Amend [365], and grants in part

and denies in part Plaintiffs' renewed motion for class certification [351]. The following classes

and subclasses are certified under Rule 23(b)(3): Subclass 1(c), Subclass 1(d), Subclass 1(e),

and Class 3. Although the only remaining claims are state law claims, the court will exercise its

discretion to retain jurisdiction of those claims. Plaintiffs are directed, within 21 days, to prepare

and submit a proposed class certification order consistent with this opinion. The court encourages

the parties to consider the possibility of settlement in light of the narrowed scope of the litigation.


ENTER:


Dated:  June 10, 2021

REBECCA R. PALLMEYER
United States District Judge

CASREF,KIM,PROTO

# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:16–cv–08303

T.S et al v. Twentieth Century Fox Television, Inc. et al
Assigned to: Honorable Rebecca R. Pallmeyer
Referred to: Honorable Young B. Kim (Settlement)
Cause: 42:1983 Civil Rights Act

Date Filed: 08/24/2016
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**T.S.**
*a minor by and through his parent and*
*guardian, S.S, on behalf of themselves*
*and all others similarly situated.*

represented by

**Adam J Pessin**
Fine, Kaplan and Black, RPC
One South Broad Street
23rd Floor
Philadelphia, PA 19107
(215) 567–6565
Email: apessin@finekaplan.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen H. Weil**
Loevy & Loevy
311 N. Aberdeen Street
Chicago, IL 60607
312–243–5900
Email: weil@loevy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexis Garmey Chardon**
Alexis Garmey Chardon, Esq.
4422 North Ravenswood
Chicago, IL 60640
3127526046
Email: ali@weilchardon.com
*TERMINATED: 07/21/2020*

**Jonathan I. Loevy**
Loevy & Loevy
311 N. Aberdeen
3rd FL
Chicago, IL 60607
(312)243–5900
Email: jon@loevy.com
*ATTORNEY TO BE NOTICED*

**Mariah Esperanza Garcia**
Loevy & Loevy
311 N. Aberdeen
3rd Floor
Chicago, IL 60607
(312) 243–5900
Email: mariah@loevy.com
*ATTORNEY TO BE NOTICED*

**Michael I Kanovitz**
Loevy & Loevy
311 N. Aberdeen
3rd FL
Chicago, IL 60607
United Sta

(312)243−5900
Email: mike@loevy.com
*ATTORNEY TO BE NOTICED*

**Pamela Reasor Hanebutt**
Eimer Stahl LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660−7600
Email: phanebutt@eimerstahl.com
*TERMINATED: 05/01/2017*

**Sarah Copeland Grady**
Loevy & Loevy
311 N. Aberdeen Street
3rd Floor
Chicago, IL 60607
(312) 243−5900
Email: sarah@loevy.com
*ATTORNEY TO BE NOTICED*

**Susan M. Razzano**
Eimer Stahl LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604−2516
312 660−7600
Email: srazzano@eimerstahl.com
*TERMINATED: 05/01/2017*

**TERRENCE D GARMEY**
TERRY GARMEY & ASSOCIATES
SUITE 402
482 CONGRESS STREET
PORTLAND, ME 04101
(207) 899−4644
Email: TGARMEY@GARMEYLAW.COM
*TERMINATED: 07/21/2020*
*PRO HAC VICE*

**Plaintiff**

**Q.B.**                                         represented by **Adam J Pessin**
*a minor by and through his grandparent*                      (See above for address)
*and guardian, V.P, on behalf of*                             *LEAD ATTORNEY*
*themselves and all others similarly*                         *PRO HAC VICE*
*situated.*                                                   *ATTORNEY TO BE NOTICED*

                                                 **Stephen H. Weil**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Alexis Garmey Chardon**
                                                 (See above for address)
                                                 *TERMINATED: 07/21/2020*

                                                 **Jonathan I. Loevy**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Mariah Esperanza Garcia**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Michael I Kanovitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela Reasor Hanebutt**
(See above for address)
*TERMINATED: 05/01/2017*

**Sarah Copeland Grady**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Susan M. Razzano**
(See above for address)
*TERMINATED: 05/01/2017*

**TERRENCE D GARMEY**
(See above for address)
*TERMINATED: 07/21/2020*
*PRO HAC VICE*

V.

**Defendant**

**Twentieth Century Fox Television**         represented by   **Jeffrey S. Jacobson**
*a division of Twentieth Century Fox Film*                   Faegre Drinker Biddle & Reath LLP
*Corporation*                                                1177 Avenue of the Americas, 41st Floor
                                                             New York, NY 10036
                                                             212–248–3191
                                                             Email: jeffrey.jacobson@faegredrinker.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Catherine E. James**
                                                             Kelley Drye & Warren LLP
                                                             333 West Wacker Drive
                                                             Suite 2600
                                                             Chicago, IL 60606
                                                             312–857–7078
                                                             Email: cjames@kelleydrye.com
                                                             *TERMINATED: 08/21/2020*

                                                             **Christina Rae Chapin**
                                                             Faegre Drinker Biddle & Reath LlP
                                                             191 N Wacker Dr
                                                             Suite 3700
                                                             Chicago, IL 60601
                                                             (312) 569–1106
                                                             Email: christina.chapin@faegredrinker.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Janine Nicole Fletcher–Thomas**
                                                             Kelley Drye & Warren Llp
                                                             333 W. Wacker Drive
                                                             26th Floor
                                                             Chicago, IL 60606
                                                             (312) 857–7070
                                                             Email: jfletcher@kelleydrye.com
                                                             *TERMINATED: 08/21/2020*

                                                             **Justin O'Neill Kay**
                                                             Faegre Drinker Biddle & Reath LLP
                                                             191 N. Wacker Drive

Suite 3700
Chicago, IL 60606
312 569 1381
Email: justin.kay@faegredrinker.com
*ATTORNEY TO BE NOTICED*

**Matthew Charles Luzadder**
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857–7070
Email: mluzadder@kelleydrye.com
*TERMINATED: 08/21/2020*

**Defendant**

**Fox Broadcasting Company**                    represented by **Jeffrey S. Jacobson**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Catherine E. James**
                                                (See above for address)
                                                *TERMINATED: 08/21/2020*

                                                **Christina Rae Chapin**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Janine Nicole Fletcher–Thomas**
                                                (See above for address)
                                                *TERMINATED: 08/21/2020*

                                                **Justin O'Neill Kay**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Matthew Charles Luzadder**
                                                (See above for address)
                                                *TERMINATED: 08/21/2020*

**Defendant**

**Twenty–First Century Fox, Inc.**              represented by **Jeffrey S. Jacobson**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Catherine E. James**
                                                (See above for address)
                                                *TERMINATED: 08/21/2020*

                                                **Christina Rae Chapin**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Janine Nicole Fletcher–Thomas**
                                                (See above for address)
                                                *TERMINATED: 08/21/2020*

                                                **Justin O'Neill Kay**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Matthew Charles Luzadder**

(See above for address)
*TERMINATED: 08/21/2020*

**Defendant**

**Fox Entertainment Group LLC**
*TERMINATED: 05/23/2017*

represented by **Jeffrey S. Jacobson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Catherine E. James**
(See above for address)
*TERMINATED: 08/21/2020*

**Matthew Charles Luzadder**
(See above for address)
*TERMINATED: 08/21/2020*

**Defendant**

**Fox Networks Group, Inc.**
*TERMINATED: 05/23/2017*

represented by **Jeffrey S. Jacobson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Catherine E. James**
(See above for address)
*TERMINATED: 08/21/2020*

**Matthew Charles Luzadder**
(See above for address)
*TERMINATED: 08/21/2020*

**Defendant**

**Fox Television Group**
*TERMINATED: 10/05/2016*

**Defendant**

**The County of Cook, Illinois**

represented by **Anthony E. Zecchin**
Hale Law LLC
53 West Jackson Blvd.
Suite 330
Chicago, IL 60604
(312) 870−6933
Email: azecchin@ahalelaw.com
*TERMINATED: 11/26/2018*
*LEAD ATTORNEY*

**Danielle Mikhail**
Cook County State's Attorney Office
50 West Washington Street
Richard J. Daley Center, 500
Chicago, IL 60602
(312) 603−3368
Email: danielle.mikhail@cookcountyil.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Francis J. Catania**
Cook County State's Attorney
Richard J Daley Center
50 W Washington St Room 530
Chicago, IL 60602
(312) 603−5440

Email: francis.catania@cookcountyil.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marissa D. Longoria**
Cook County State's Attorney's Office
50 W. Washington Street
Suite 500
Chicago, IL 60602
(312) 603−5691
Email: Marissa.Longoria2@cookcountyil.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson Lynn West**
Hale Law LLC
53 W Jackson Blvd.
Suite 330
Chicago, IL 60604
312−870−6924
Email: awest@ahalelaw.com
*TERMINATED: 01/15/2019*

**Ryan Gillespie**
Liberty Mutual Insurance
225 W. Washington Street
Suite 500
Chicago, IL 60606
(312) 761−7394
Email: ryan.gillespie@libertymutual.com
*TERMINATED: 12/09/2019*

**Thomas Edward Nowinski**
Cook County State's Attorneys Office
50 West Washington Avenue
5th Floor
Chicago, IL 60602
312−603−4327
Email: tnowinski@cookcountyassessor.com
*TERMINATED: 05/04/2017*

**Defendant**

**Leonard Dixon**                     represented by   **Anthony E. Zecchin**
(See above for address)
*TERMINATED: 11/26/2018*
*LEAD ATTORNEY*

**Francis J. Catania**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lyle Kevin Henretty**
Cook County State's Attorney
2760
50 West Washington
20th Floor
Chicago, IL 60602
312−603−1424
Email: lyle.henretty@cookcountyil.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Daniel Morris**

Cook County State's Attorney's Office
50 W. Washington Street
Suite 2760
Chicago, IL 60602
312.603−1426
Email: patrick.morris@cookcountyil.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allyson Lynn West**
(See above for address)
*TERMINATED: 01/15/2019*

**Joi Kamper**
City of Chicago Law Dept
2 N. LaSalle St., Suite 420
Chicago, IL 60602
(312) 744−0226
Email: Joi.Kamper@cityofchicago.org
*TERMINATED: 09/11/2020*

**Thomas Edward Nowinski**
(See above for address)
*TERMINATED: 05/04/2017*

**Defendant**

**John Does 1 through 20**

**Defendant**

| | | |
|---|---|---|
| **The Chief Judge of the Circuit Court of Cook County** *in his official capacity* | represented by | **Hal Dworkin** Office Of Illinois Attorney General 100 W. Randolph 13th Fl. Chicago, IL 60613 (312) 814−5159 Email: hdworkin@atg.state.il.us *ATTORNEY TO BE NOTICED* |

**Michael T. Dierkes**
Illinois Attorney General's Office (100 West Randolph)
100 West Randolph Street
13th Floor
Chicago, IL 60601
(312) 814−3672
Email: michael.dierkes@illinois.gov
*ATTORNEY TO BE NOTICED*

**T. Andrew Horvat**
Cook County State's Attorney's Office
Complex Litigation Unit
50 West Washington Street
5th Floor
Chicago, IL 60601
312−603−3362
Email: timothy.horvat@cookcounty.il.gov
*TERMINATED: 06/11/2019*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/24/2016 | 1 | COMPLAINT filed by Q.B., a minor by and through his grandparent and guardian, V.P, T.S., a minor by and through his parent and guardian, S.S. ; Jury Demand. Filing fee $ 400, receipt number 0752−12285760.(Weil, Stephen) (Entered: 08/24/2016) |

| 08/24/2016 | 2 | CIVIL Cover Sheet (Weil, Stephen) (Entered: 08/24/2016) |
|---|---|---|
| 08/24/2016 | 3 | ATTORNEY Appearance for Plaintiffs Q.B., a minor by and through his grandparent and guardian, V.P, T.S., a minor by and through his parent and guardian, S.S. by Stephen Heschel Weil (Weil, Stephen) (Entered: 08/24/2016) |
| 08/24/2016 | 4 | ATTORNEY Appearance for Plaintiffs Q.B., a minor by and through his grandparent and guardian, V.P, T.S., a minor by and through his parent and guardian, S.S. by Pamela Reasor Hanebutt (Hanebutt, Pamela) (Entered: 08/24/2016) |
| 08/24/2016 | 5 | ATTORNEY Appearance for Plaintiffs Q.B., a minor by and through his grandparent and guardian, V.P, T.S., a minor by and through his parent and guardian, S.S. by Susan M. Razzano (Razzano, Susan) (Entered: 08/24/2016) |
| 08/24/2016 | | CASE ASSIGNED to the Honorable Amy J. St. Eve. Designated as Magistrate Judge the Honorable Young B. Kim. (daj, ) (Entered: 08/24/2016) |
| 08/24/2016 | 6 | MOTION by Plaintiffs Q.B., a minor by and through his grandparent and guardian, V.P, T.S., a minor by and through his parent and guardian, S.S. to Permit Guardians to Proceed Anonymously (Weil, Stephen) (Entered: 08/24/2016) |
| 08/24/2016 | 7 | NOTICE of Motion by Stephen Heschel Weil for presentment of motion for miscellaneous relief 6 before Honorable Amy J. St. Eve on 9/1/2016 at 08:30 AM. (Weil, Stephen) (Entered: 08/24/2016) |
| 08/29/2016 | | SUMMONS Issued as to Defendant The County of Cook, Illinois (pg, ) (Entered: 08/29/2016) |
| 08/30/2016 | 8 | SUMMONS Returned Executed by Q.B., T.S. as to The County of Cook, Illinois on 8/29/2016, answer due 9/19/2016. (Weil, Stephen) (Entered: 08/30/2016) |
| 08/31/2016 | 9 | WAIVER OF SERVICE returned executed by Q.B., T.S.. Fox Broadcasting Company, Inc. waiver sent on 8/29/2016, answer due 10/28/2016; Fox Entertainment Group, Inc. waiver sent on 8/29/2016, answer due 10/28/2016; Fox Networks Group, Inc. waiver sent on 8/29/2016, answer due 10/28/2016; Twentieth Century Fox Television, Inc. waiver sent on 8/29/2016, answer due 10/28/2016; Twenty−First Century Fox, Inc. waiver sent on 8/29/2016, answer due 10/28/2016. (Attachments: # 1 Fox Entertainment Group LLC, # 2 Fox Networks Group, Inc., # 3 Twentieth Century Fox Television, # 4 Twenty−First Century Fox, Inc.)(Weil, Stephen) (Entered: 08/31/2016) |
| 09/01/2016 | 10 | MINUTE entry before the Honorable Amy J. St. Eve:Motion hearing held on 9/1/2016. Plaintiffs' motion to permit guardians to proceed anonymously 6 is entered and continued to 10/20/16 at 8:30 a.m. Status hearing set for 10/20/16 at 8:30 a.m. If no motion to dismiss is filed, a joint status report shall be filed by 10/17/16 if the defendants have appeared. Mailed notice (kef, ) (Entered: 09/01/2016) |
| 09/07/2016 | 11 | ATTORNEY Appearance for Defendants Fox Broadcasting Company, Inc., Fox Entertainment Group, Inc., Fox Networks Group, Inc., Twentieth Century Fox Television, Inc., Twenty−First Century Fox, Inc. by Jeffrey S. Jacobson (Jacobson, Jeffrey) (Entered: 09/07/2016) |
| 09/07/2016 | 12 | ATTORNEY Appearance for Defendants Fox Broadcasting Company, Inc., Fox Entertainment Group, Inc., Fox Networks Group, Inc., Twentieth Century Fox Television, Inc., Twenty−First Century Fox, Inc. by Matthew Charles Luzadder (Luzadder, Matthew) (Entered: 09/07/2016) |
| 09/07/2016 | 13 | ATTORNEY Appearance for Defendants Fox Broadcasting Company, Inc., Fox Entertainment Group, Inc., Fox Networks Group, Inc., Twentieth Century Fox Television, Inc., Twenty−First Century Fox, Inc. by Catherine E. James (James, Catherine) (Entered: 09/07/2016) |
| 09/08/2016 | 14 | ATTORNEY Appearance for Defendants Fox Broadcasting Company, Inc., Fox Entertainment Group, Inc., Fox Networks Group, Inc., Twentieth Century Fox Television, Inc., Twenty−First Century Fox, Inc. by Jeffrey S. Jacobson *(Amended)* (Jacobson, Jeffrey) (Entered: 09/08/2016) |
| 09/15/2016 | 15 | ATTORNEY Appearance for Defendants Leonard Dixon, The County of Cook, Illinois by Thomas Edward Nowinski (Nowinski, Thomas) (Entered: 09/15/2016) |

| 09/15/2016 | 16 | MOTION by Defendants Leonard Dixon, The County of Cook, Illinois for extension of time *to answer or otherwise plead (Unopposed)* (Nowinski, Thomas) (Entered: 09/15/2016) |
|---|---|---|
| 09/15/2016 | 17 | NOTICE of Motion by Thomas Edward Nowinski for presentment of extension of time 16 before Honorable Amy J. St. Eve on 9/21/2016 at 08:30 AM. (Nowinski, Thomas) (Entered: 09/15/2016) |
| 09/15/2016 | 18 | ATTORNEY Appearance for Defendants Leonard Dixon, The County of Cook, Illinois by Anthony E. Zecchin (Zecchin, Anthony) (Entered: 09/15/2016) |
| 09/19/2016 | 19 | MINUTE entry before the Honorable Amy J. St. Eve: Defendants Cook County and Leonard Dixon's unopposed motion for extension of time 16 is granted. Said defendants shall answer or otherwise plead by 10/28/16. Status hearing set for 10/20/16 is stricken and reset to 11/3/16 at 8:30 a.m. If no motion to dismiss is filed, a joint status report shall be filed by 10/31/16. Hearing on plaintiff's motion to Permit Guardians to Proceed Anonymously 6 set for 10/20/16 is stricken and reset to 11/3/16 at 8:30 a.m. No appearance is required on the 9/21/16 notice motion date. Mailed notice (kef, ) (Entered: 09/19/2016) |
| 10/04/2016 | 20 | MOTION by Plaintiffs Q.B., T.S. to amend/correct complaint 1 *Unopposed Motion to Amend Complaint* (Weil, Stephen) (Entered: 10/04/2016) |
| 10/04/2016 | 21 | NOTICE of Motion by Stephen Heschel Weil for presentment of motion to amend/correct, motion for relief 20 before Honorable Amy J. St. Eve on 10/10/2016 at 08:30 AM. (Weil, Stephen) (Entered: 10/04/2016) |
| 10/05/2016 | 22 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' unopposed motion for leave to file an amended complaint 20 is granted. No appearance is required on the notice motion date. Mailed notice (kef, ) (Entered: 10/05/2016) |
| 10/05/2016 | 23 | *First* AMENDED complaint by Q.B., T.S. against Leonard Dixon, Fox Networks Group, Inc., John Does, The County of Cook, Illinois, Twenty−First Century Fox, Inc., Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation, Fox Broadcasting Company, Fox Entertainment Group LLC, The Chief Judge of the Circuit Court of Cook County in his official capacity and terminating Fox Television Group, Twentieth Century Fox Television, Inc., Fox Broadcasting Company, Inc. and Fox Entertainment Group, Inc. (Weil, Stephen) (Entered: 10/05/2016) |
| 10/06/2016 | | SUMMONS Issued as to Defendant The Chief Judge of the Circuit Court of Cook County in his official capacity (pg, ) (Entered: 10/06/2016) |
| 10/07/2016 | 24 | SUMMONS Returned Executed by Q.B., T.S. as to The Chief Judge of the Circuit Court of Cook County on 10/6/2016, answer due 10/27/2016. (Weil, Stephen) (Entered: 10/07/2016) |
| 10/19/2016 | 25 | ATTORNEY Appearance for Defendant The Chief Judge of the Circuit Court of Cook County by T. Andrew Horvat (Horvat, T.) (Entered: 10/19/2016) |
| 10/20/2016 | 26 | MOTION by Defendant The Chief Judge of the Circuit Court of Cook County for extension of time to file answer *(Unopposed)* (Horvat, T.) (Entered: 10/20/2016) |
| 10/20/2016 | 27 | NOTICE of Motion by T. Andrew Horvat for presentment of motion for extension of time to file answer 26 before Honorable Amy J. St. Eve on 10/26/2016 at 08:30 AM. (Horvat, T.) (Entered: 10/20/2016) |
| 10/21/2016 | 28 | MINUTE entry before the Honorable Amy J. St. Eve: Defendant The Chief Judge of the Circuit Court of Cook County's unopposed motion for extension of time 26 is granted. Said defendant shall answer or otherwise plead by 11/10/16. No appearance is required on the 10/26/16 notice motion date. Mailed notice (kef, ) (Entered: 10/21/2016) |
| 10/26/2016 | 29 | MOTION by Plaintiffs Q.B., T.S. to amend/correct *Unopposed Motion to Rename Parties and Amend the Docket* (Weil, Stephen) (Entered: 10/26/2016) |
| 10/26/2016 | 30 | NOTICE of Motion by Stephen Heschel Weil for presentment of motion to amend/correct 29 before Honorable Amy J. St. Eve on 11/3/2016 at 08:30 AM. (Weil, Stephen) (Entered: 10/26/2016) |

| | | |
|---|---|---|
| 10/26/2016 | 31 | MOTION by Plaintiffs Q.B., T.S. to amend/correct order on motion for extension of time to answer,, terminate deadlines and hearings, 28, order on motion for extension of time,,, terminate deadlines and hearings,,, set deadlines/hearings,,, set motion and R&R deadlines/hearings,, 19 *Plaintiffs Unopposed Motion to Amend Schedule* (Weil, Stephen) (Entered: 10/26/2016) |
| 10/26/2016 | 32 | NOTICE of Motion by Stephen Heschel Weil for presentment of motion to amend/correct,, motion for relief,,,,,,,,,, 31 before Honorable Amy J. St. Eve on 11/3/2016 at 08:30 AM. (Weil, Stephen) (Entered: 10/26/2016) |
| 10/27/2016 | 33 | ORDER: Plaintiffs' unopposed motion to rename parties and amend the docket 29 is granted. The Clerk's Office is directed to change Fox Broadcasting Company, Inc. to Fox Broadcasting Company; Fox Entertainment Group, Inc. to Fox Entertainment Group LLC; and Twentieth Century Fox Television, Inc. to Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corporation. The Clerk's Office is also directed to reinstate these defendants as parties. Plaintiffs' unopposed motion to amend schedule 31 is granted in part. Defendants shall answer or otherwise plead by 12/5/16. Plaintiffs' motion to permit guardians to proceed anonymously 6 is reset to 12/8/16 at 8:30 a.m. Status hearing set for 11/3/16 is stricken and reset to 12/8/16 at 8:30 a.m. at which time the court will set a briefing schedule. Notice motion date of 11/3/16 is stricken. Signed by the Honorable Amy J. St. Eve on 10/27/2016. Mailed notice (mc, ) (Entered: 10/27/2016) |
| 10/27/2016 | 34 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' motion to Permit Guardians to Proceed Anonymously 6 is entered. Defendants' response shall be filed by 11/3/16. Mailed notice (kef, ) (Entered: 10/27/2016) |
| 11/02/2016 | 35 | MOTION by Plaintiffs Q.B., T.S. to Permit Serving of Document Preservation Subpoenas (Weil, Stephen) (Entered: 11/02/2016) |
| 11/02/2016 | 36 | NOTICE of Motion by Stephen Heschel Weil for presentment of motion for miscellaneous relief 35 before Honorable Amy J. St. Eve on 11/7/2016 at 08:30 AM. (Weil, Stephen) (Entered: 11/02/2016) |
| 11/03/2016 | 37 | CERTIFICATE of Service of Discovery Documents (Mincieli, Jonathan) (Entered: 11/03/2016) |
| 11/03/2016 | 38 | NOTICE of Correction regarding certificate 37 . (kp, ) (Entered: 11/03/2016) |
| 11/04/2016 | 39 | MEMORANDUM by Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in Opposition to motion for miscellaneous relief 35 (Jacobson, Jeffrey) (Entered: 11/04/2016) |
| 11/04/2016 | 40 | MEMORANDUM by Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in Opposition to motion for miscellaneous relief 35 (Attachments: # 1 Exhibit A)(Jacobson, Jeffrey) (Entered: 11/04/2016) |
| 11/04/2016 | 41 | REPLY by Plaintiffs Q.B., T.S. to motion for miscellaneous relief 35 (Weil, Stephen) (Entered: 11/04/2016) |
| 11/07/2016 | 43 | MINUTE entry before the Honorable Amy J. St. Eve: Motion hearing held on 11/7/16. Plaintiffs' motion to permit serving of document preservation subpoenas 35 is granted in part as stated in open court. Defendants shall disclose the names of non−Fox employees and third parties as directed in court and file a response verifying whether or not there are non−Fox employees and third parties who may have relevant knowledge on the identified subjects by 11/11/16. Defense counsel must also advise Plaintiff's counsel if he can accept preservation subpoenas for the identified individuals. Plaintiffs' motion to permit guardians to proceed anonymously 6 is granted without objection.Mailed notice (kef, ) (Entered: 11/15/2016) |
| 11/11/2016 | 42 | RESPONSE by Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to MOTION by Plaintiffs Q.B., T.S. to Permit Serving of Document Preservation Subpoenas 35 (Jacobson, Jeffrey) (Entered: 11/11/2016) |

| 11/21/2016 | 44 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Horvat, T.) (Entered: 11/21/2016) |
|---|---|---|
| 11/30/2016 | 45 | MOTION by Defendants Leonard Dixon, Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., The County of Cook, Illinois, Twentieth Century Fox Television, Twenty–First Century Fox, Inc. for leave to file excess pages *(unopposed)* (James, Catherine) (Entered: 11/30/2016) |
| 11/30/2016 | 46 | NOTICE of Motion by Catherine E. James for presentment of motion for leave to file excess pages, 45 before Honorable Amy J. St. Eve on 12/5/2016 at 08:30 AM. (James, Catherine) (Entered: 11/30/2016) |
| 12/02/2016 | 47 | MINUTE entry before the Honorable Amy J. St. Eve: Joint motion for leave to exceed page limitation 45 is granted. No appearance is required on the 12/5/16 notice motion date. Mailed notice (kef, ) (Entered: 12/02/2016) |
| 12/05/2016 | 48 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Nowinski, Thomas) (Entered: 12/05/2016) |
| 12/05/2016 | 49 | NOTICE of Motion by Thomas Edward Nowinski for presentment of Motion to Dismiss for Failure to State a Claim 48 before Honorable Amy J. St. Eve on 12/8/2016 at 08:30 AM. (Nowinski, Thomas) (Entered: 12/05/2016) |
| 12/05/2016 | 50 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Jacobson, Jeffrey) (Entered: 12/05/2016) |
| 12/05/2016 | 51 | MEMORANDUM by Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Twentieth Century Fox Television, Twenty–First Century Fox, Inc. in support of Motion to Dismiss for Failure to State a Claim 50 (Attachments: # 1 Declaration of Catherine E. James, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Jacobson, Jeffrey) (Entered: 12/05/2016) |
| 12/05/2016 | 52 | NOTICE of Motion by Jeffrey S. Jacobson for presentment of Motion to Dismiss for Failure to State a Claim 50 before Honorable Amy J. St. Eve on 12/8/2016 at 08:30 AM. (Jacobson, Jeffrey) (Entered: 12/05/2016) |
| 12/08/2016 | 53 | MINUTE entry before the Honorable Amy J. St. Eve:Status hearing held on 12/8/2016 and continued to 4/12/17 at 8:30 a.m. Defendants' motions to dismiss 44 48 50 are entered. Responses by 1/17/17. Replies by 2/7/17. Mailed notice (kef, ) (Entered: 12/08/2016) |
| 12/14/2016 | 54 | TRANSCRIPT OF PROCEEDINGS held on 11/7/16 before the Honorable Amy J. St. Eve. Court Reporter Contact Information: Joseph Rickhoff, 312–435–5562, joseph_rickhoff@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 1/4/2017. Redacted Transcript Deadline set for 1/17/2017. Release of Transcript Restriction set for 3/14/2017. (Rickhoff, Joseph) (Entered: 12/14/2016) |
| 01/17/2017 | 55 | MOTION by Plaintiffs Q.B., T.S. for leave to file excess pages *Plaintiffs' Unopposed Motion to Exceed Page Limit* (Attachments: # 1 Exhibit A)(Weil, Stephen) (Entered: 01/17/2017) |
| 01/17/2017 | 56 | NOTICE of Motion by Stephen Heschel Weil for presentment of motion for leave to file excess pages 55 before Honorable Amy J. St. Eve on 1/23/17 at 08:30 AM. (Weil, Stephen) (Entered: 01/17/2017) |
| 01/18/2017 | 57 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' unopposed motion to exceed page limit 55 is granted. Counsel shall separately file their response to the motion to dismiss upon receipt of this order. No appearance is required on the 1/23/17 notice motion date. Mailed notice (kef, ) (Entered: 01/18/2017) |
| 01/18/2017 | 58 | RESPONSE by Q.B., T.S.in Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 48 , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 44 , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 50 |

| | | *Plaintiffs' Consolidated Response to Defendants' Motions to Dismiss First Amended Complaint* (Attachments: # 1 Declaration of Stephen Weil, # 2 Exhibit A)(Weil, Stephen) (Entered: 01/18/2017) |
|---|---|---|
| 02/03/2017 | 59 | REPLY by The Chief Judge of the Circuit Court of Cook County to response in opposition to motion, 58 (Horvat, T.) (Entered: 02/03/2017) |
| 02/06/2017 | 60 | MOTION by Defendants Leonard Dixon, The County of Cook, Illinois for extension of time to file response/reply as to response in opposition to motion, 58 (Zecchin, Anthony) (Entered: 02/06/2017) |
| 02/06/2017 | 61 | NOTICE of Motion by Anthony E. Zecchin for presentment of motion for extension of time to file response/reply, motion for relief 60 before Honorable Amy J. St. Eve on 2/9/2017 at 08:30 AM. (Zecchin, Anthony) (Entered: 02/06/2017) |
| 02/07/2017 | 62 | REPLY by Defendants Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to Motion to Dismiss for Failure to State a Claim 50 (Jacobson, Jeffrey) (Entered: 02/07/2017) |
| 02/08/2017 | 63 | MINUTE entry before the Honorable Amy J. St. Eve: Defendants Cook County and Leonard Dixon's unopposed motion for extension of time 60 is granted. Said defendants' reply brief shall be filed on 2/10/17. No appearance is required on the 2/9/17 notice motion date. Mailed notice (kef, ) (Entered: 02/08/2017) |
| 02/10/2017 | 64 | REPLY by Leonard Dixon, The County of Cook, Illinois to response in opposition to motion, 58 (Nowinski, Thomas) (Entered: 02/10/2017) |
| 02/10/2017 | 65 | NOTICE by Leonard Dixon, The County of Cook, Illinois re reply to response to motion 64 (Nowinski, Thomas) (Entered: 02/10/2017) |
| 02/14/2017 | 66 | MOTION by Plaintiffs Q.B., T.S. for leave to file *a Sur−Reply* (Attachments: # 1 Proposed Sur Reply)(Weil, Stephen) (Entered: 02/14/2017) |
| 02/14/2017 | 67 | NOTICE of Motion by Stephen Heschel Weil for presentment of motion for leave to file 66 before Honorable Amy J. St. Eve on 2/21/2017 at 08:30 AM. (Weil, Stephen) (Entered: 02/14/2017) |
| 02/15/2017 | 68 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' motion for leave to file a sur−reply 66 is granted. Counsel shall separately file the sur−reply upon receipt of this order. No further briefing unless ordered by the court. No appearance is required on the notice motion date. Mailed notice (kef, ) (Entered: 02/15/2017) |
| 02/15/2017 | 69 | SUR−REPLY by Plaintiffs Q.B., T.S. to reply to response to motion 59 *Plaintiffs' Sur−Reply* (Weil, Stephen) (Entered: 02/15/2017) |
| 03/16/2017 | 70 | NOTICE by Stephen Heschel Weil of Change of Address (Weil, Stephen) (Entered: 03/16/2017) |
| 04/10/2017 | 71 | MINUTE entry before the Honorable Amy J. St. Eve: Status hearing set for 4/12/17 is stricken and reset to 5/4/2017 at 08:30 AM. Mailed notice (kef, ) (Entered: 04/10/2017) |
| 04/20/2017 | 72 | MINUTE entry before the Honorable Amy J. St. Eve: The Court grants in part and denies in part Defendants' motions to dismiss. 44 48 50 The Court grants Plaintiffs leave to file a Second Amended Complaint in accordance with this ruling by no later than 5/12/17. [For further details, see separate Memorandum Opinion and Order.] Mailed notice (kef, ) (Entered: 04/20/2017) |
| 04/20/2017 | 73 | MEMORANDUM Opinion and Order Signed by the Honorable Amy J. St. Eve on 4/20/2017:Mailed notice(kef, ) (Entered: 04/20/2017) |
| 04/28/2017 | 74 | ATTORNEY Appearance for Plaintiffs Q.B., T.S. by Alexis Garmey Chardon (Chardon, Alexis) (Entered: 04/28/2017) |
| 04/28/2017 | 75 | MOTION by Attorney Pamela R. Hanebutt and Susan M. Razzano to withdraw as attorney for Q.B., T.S.. No party information provided (Hanebutt, Pamela) (Entered: 04/28/2017) |

| 04/28/2017 | 76 | NOTICE of Motion by Pamela Reasor Hanebutt for presentment of motion to withdraw as attorney 75 before Honorable Amy J. St. Eve on 5/4/2017 at 08:30 AM. (Hanebutt, Pamela) (Entered: 04/28/2017) |
|---|---|---|
| 05/01/2017 | 77 | ORDER: Motion for leave to withdraw 75 is granted. Pamela Hanebutt and Susan Razzano are given leave to withdraw as counsel for plaintiffs T.S. and Q.B. Signed by the Honorable Amy J. St. Eve on 5/1/2017. Mailed notice (nsf, ) (Entered: 05/01/2017) |
| 05/04/2017 | 78 | ORDER: Status hearing held on 5/4/17 and continued to 6/29/17 at 8:30 a.m. Plaintiffs' second amended complaint shall be filed by 5/19/17. Defendants shall answer or otherwise plead by 6/19/17. Rule 26(a)(1) disclosures shall be exchanged by 5/31/17. Thomas Nowinski's oral motion to withdraw is granted. Thomas Nowinski is given leave to withdraw as counsel for defendants The County of Cook, Illinois and Leonard Dixon. Signed by the Honorable Amy J. St. Eve on 5/4/2017. Mailed notice (aee, ) (Entered: 05/04/2017) |
| 05/16/2017 | 79 | ATTORNEY Appearance for Defendants Leonard Dixon, The County of Cook, Illinois by Allyson Lynn West (West, Allyson) (Entered: 05/16/2017) |
| 05/19/2017 | 80 | MOTION by Plaintiffs Q.B., T.S. to amend/correct *Complaint* (Attachments: # 1 Exhibit Proposed Second Amended Class Action Complaint)(Chardon, Alexis) (Entered: 05/19/2017) |
| 05/19/2017 | 81 | NOTICE of Motion by Alexis Garmey Chardon for presentment of motion to amend/correct 80 before Honorable Amy J. St. Eve on 5/24/2017 at 08:30 AM. (Chardon, Alexis) (Entered: 05/19/2017) |
| 05/19/2017 | 82 | MOTION by Plaintiff T.S. For Leave to Proceed Anonymously (Chardon, Alexis) (Entered: 05/19/2017) |
| 05/19/2017 | 83 | NOTICE of Motion by Alexis Garmey Chardon for presentment of motion for miscellaneous relief 82 before Honorable Amy J. St. Eve on 5/24/2017 at 08:30 AM. (Chardon, Alexis) (Entered: 05/19/2017) |
| 05/22/2017 | 84 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' unopposed motion to permit named plaintiff T.S. to continue to proceed anonymously 82 is granted. Mailed notice (kef, ) (Entered: 05/22/2017) |
| 05/22/2017 | 85 | RESPONSE by Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Fox Television Group, Twentieth Century Fox Television, Twenty−First Century Fox, Inc.in Opposition to MOTION by Plaintiffs Q.B., T.S. to amend/correct *Complaint* 80 (Jacobson, Jeffrey) (Entered: 05/22/2017) |
| 05/23/2017 | 86 | REPLY by Plaintiffs Q.B., T.S. to motion to amend/correct 80 (Chardon, Alexis) (Entered: 05/23/2017) |
| 05/23/2017 | 87 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' motion for leave to file a second amended class action complaint 80 is granted. Counsel shall separately file the second amended complaint upon receipt of this order. Defendant can raise its arguments in a motion to dismiss the second amended complaint. As previously ordered, defendants shall answer or otherwise plead by 6/19/17. Status hearing remains set for 6/29/17 at 8:30 a.m. No appearance is required on the 5/24/17 notice motion date. Mailed notice (kef, ) (Entered: 05/23/2017) |
| 05/23/2017 | 88 | *SECOND* AMENDED complaint by Q.B., T.S. against All Defendants and terminating Fox Entertainment Group LLC and Fox Networks Group, Inc. (Weil, Stephen) (Entered: 05/23/2017) |
| 05/24/2017 | 89 | ATTORNEY Appearance for Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. by Janine Nicole Fletcher (Fletcher, Janine) (Entered: 05/24/2017) |
| 06/07/2017 | 90 | NOTICE by Stephen H. Weil of Change of Address (Weil, Stephen) (Entered: 06/07/2017) |
| 06/19/2017 | 91 | MOTION by Defendants Fox Entertainment Group LLC, Twentieth Century Fox Television, Fox Networks Group, Inc., Fox Broadcasting Company, Twenty−First Century Fox, Inc. to dismiss *Plaintiffs' Second Amended Complaint* (Jacobson, Jeffrey) (Entered: 06/19/2017) |

| 06/19/2017 | 92 | NOTICE of Motion by Jeffrey S. Jacobson for presentment of motion to dismiss 91 before Honorable Amy J. St. Eve on 6/29/2017 at 08:30 AM. (Jacobson, Jeffrey) (Entered: 06/19/2017) |
|---|---|---|
| 06/19/2017 | 93 | ANSWER to amended complaint by Leonard Dixon, The County of Cook, Illinois (Attachments: # 1 Notice of Filing)(West, Allyson) (Entered: 06/19/2017) |
| 06/19/2017 | 94 | ANSWER to amended complaint by The Chief Judge of the Circuit Court of Cook County(Horvat, T.) (Entered: 06/19/2017) |
| 06/29/2017 | 95 | MINUTE entry before the Honorable Amy J. St. Eve:Status hearing held on 6/29/2017 and continued to 7/25/17 at 8:30 a.m. Fox Defendants' motion to dismiss 91 is entered. Response by 7/14/17. Reply by 7/28/17. Parties shall submit (not file) an agreed protective order by 7/10/17. Parties shall file an agreed proposed discovery schedule by 7/18/17. Mailed notice (kef, ) (Entered: 06/29/2017) |
| 07/11/2017 | 96 | AGREED CONFIDENTIALITY ORDER Signed by the Honorable Amy J. St. Eve on 7/11/2017:Mailed notice(kef, ) (Entered: 07/11/2017) |
| 07/14/2017 | 97 | RESPONSE by Q.B., T.S.in Opposition to MOTION by Defendants Fox Entertainment Group LLC, Twentieth Century Fox Television, Fox Networks Group, Inc., Fox Broadcasting Company, Twenty−First Century Fox, Inc. to dismiss *Plaintiffs' Second Amended Complaint* 91 (Weil, Stephen) (Entered: 07/14/2017) |
| 07/17/2017 | 98 | MOTION by Plaintiffs Q.B., T.S. for extension of time to file *Rule 26(f) Report* (Weil, Stephen) (Entered: 07/17/2017) |
| 07/17/2017 | 99 | NOTICE of Motion by Stephen H. Weil for presentment of motion for extension of time to file 98 before Honorable Amy J. St. Eve on 7/25/2017 at 08:30 AM. (Weil, Stephen) (Entered: 07/17/2017) |
| 07/18/2017 | 100 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' unopposed motion for extension of time 98 is granted. The parties' Rule 26(f) report shall be filed by 7/21/17. Mailed notice (kef, ) (Entered: 07/18/2017) |
| 07/21/2017 | 101 | REPORT of Rule 26(f) Planning Meeting by Q.B., T.S. (Weil, Stephen) (Entered: 07/21/2017) |
| 07/25/2017 | 102 | MINUTE entry before the Honorable Amy J. St. Eve:Status hearing held on 7/25/2017 and continued to 9/27/27 at 08:30 AM. Written discovery shall be issued by 8/11/17. Fact discovery shall be completed by 3/16/18. Discovery is stayed as to the Fox defendants. Mailed notice (kef, ) (Entered: 07/25/2017) |
| 07/28/2017 | 103 | REPLY by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to response in opposition to motion, 97 *Reply Memorandum in Support of the Fox Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint* (Luzadder, Matthew) (Entered: 07/28/2017) |
| 07/31/2017 | 104 | MOTION by Plaintiffs Q.B., T.S. to strike reply to response to motion, 103 *And Motion to File Sur−Reply* (Attachments: # 1 Exhibit Proposed Sur−Reply)(Weil, Stephen) (Entered: 07/31/2017) |
| 07/31/2017 | 105 | NOTICE of Motion by Stephen H. Weil for presentment of motion to strike 104 before Honorable Amy J. St. Eve on 8/7/2017 at 08:30 AM. (Weil, Stephen) (Entered: 07/31/2017) |
| 08/01/2017 | 106 | MINUTE entry before the Honorable Amy J. St. Eve: The Court enters the motion to strike and grants the motion to file a sur−reply 104 . No further briefing unless ordered by the Court. Mailed notice(maf) (Entered: 08/01/2017) |
| 08/01/2017 | 107 | SUR−REPLY by Plaintiffs Q.B., T.S. to reply to response to motion, 103 *Plaintiffs' Sur−Reply in Opposition to the Fox Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint* (Weil, Stephen) (Entered: 08/01/2017) |
| 09/27/2017 | 108 | MINUTE entry before the Honorable Amy J. St. Eve:Status hearing held on 9/27/2017 and continued to 11/29/2017 at 08:30 AM.Mailed notice (kef, ) (Entered: 09/27/2017) |
| 10/16/2017 | 109 | MINUTE entry before the Honorable Amy J. St. Eve: The Court grants in part with prejudice and denies in part the Fox Defendants' motion to dismiss. 91 . The Fox Defendants have until 10/30/17 to answer the remaining claims. [For further details, |

| | | see separate Memorandum Opinion and Order.] Mailed notice (kef, ) (Entered: 10/16/2017) |
|---|---|---|
| 10/16/2017 | 110 | MEMORANDUM Opinion and Order Signed by the Honorable Amy J. St. Eve on 10/16/2017:Mailed notice(kef, ) (Entered: 10/16/2017) |
| 10/16/2017 | 111 | MINUTE entry before the Honorable Amy J. St. Eve: At the Fox Defendants' unopposed request, Status hearing set for 11/29/17 is stricken and reset to 12/6/2017 at 08:30 AM.Mailed notice (kef, ) (Entered: 10/16/2017) |
| 10/24/2017 | 112 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to clarify , MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for reconsideration regarding memorandum opinion and order 110 (Jacobson, Jeffrey) (Entered: 10/24/2017) |
| 10/24/2017 | 113 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in support of motion to clarify, motion for reconsideration,, 112 (Jacobson, Jeffrey) (Entered: 10/24/2017) |
| 10/24/2017 | 114 | NOTICE of Motion by Jeffrey S. Jacobson for presentment of motion to clarify, motion for reconsideration,, 112 before Honorable Amy J. St. Eve on 11/2/2017 at 08:30 AM. (Jacobson, Jeffrey) (Entered: 10/24/2017) |
| 10/25/2017 | 115 | MINUTE entry before the Honorable Amy J. St. Eve: The stay on discovery as to the Fox Defendants is lifted. Rule 26(a)(1) disclosures as to the Fox Defendants should be issued by November 1, 2017. Written discovery should be issued by November 3, 2017. Mailed notice (kef, ) (Entered: 10/25/2017) |
| 10/25/2017 | 116 | MINUTE entry before the Honorable Amy J. St. Eve: Fox defendants' motion for clarification or reconsideration 112 is entered and taken under advisement. No briefing unless ordered by the Court. No appearance is required on the 11/2/17 notice motion date. Mailed notice (kef, ) (Entered: 10/25/2017) |
| 10/30/2017 | 117 | ORDER Signed by the Honorable Amy J. St. Eve on 10/30/2017: The Court, in its discretion, denies Defendants' motion for reconsideration, but grants their motion for clarification. 112 [For further details, see Order.] Mailed notice(kef, ) (Entered: 10/30/2017) |
| 10/30/2017 | 118 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for extension of time to file answer (Jacobson, Jeffrey) (Entered: 10/30/2017) |
| 10/30/2017 | 119 | NOTICE of Motion by Jeffrey S. Jacobson for presentment of motion for extension of time to file answer 118 before Honorable Amy J. St. Eve on 11/2/2017 at 08:30 AM. (Jacobson, Jeffrey) (Entered: 10/30/2017) |
| 11/01/2017 | 120 | MINUTE entry before the Honorable Amy J. St. Eve: Fox Defendants' unopposed motion for extension of time 118 is granted. Fox Defendants shall answer the remaining claims by 11/13/17. No appearance is required on the 11/2/17 notice motion date. Mailed notice (kef, ) (Entered: 11/01/2017) |
| 11/13/2017 | 121 | ANSWER to amended complaint by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc.(Jacobson, Jeffrey) (Entered: 11/13/2017) |
| 11/29/2017 | 122 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to amend/correct protective order, set/clear flags 96 *AGREED MOTION* (Jacobson, Jeffrey) (Entered: 11/29/2017) |
| 11/29/2017 | 123 | NOTICE of Motion by Jeffrey S. Jacobson for presentment of motion to amend/correct 122 before Honorable Amy J. St. Eve on 12/6/2017 at 08:30 AM. (Jacobson, Jeffrey) (Entered: 11/29/2017) |
| 11/30/2017 | 124 | MINUTE entry before the Honorable Amy J. St. Eve: Agreed motion to amend protective order 122 is granted. The Agreed Confidentiality Order 96 is amended to include the Fox Defendants as parties subject to and beneficiaries of the Agreed Confidentiality Order for all purposes. If parties wish for an amended protective order to be entered, parties should submit (not file) a proposed amended order for entry. |

| | | Mailed notice (kef, ) (Entered: 11/30/2017) |
|---|---|---|
| 12/06/2017 | 125 | AMENDED AGREED CONFIDENTIALITY ORDER Signed by the Honorable Amy J. St. Eve on 12/6/2017:Mailed notice(kef, ) (Entered: 12/06/2017) |
| 12/06/2017 | 126 | MINUTE entry before the Honorable Amy J. St. Eve:Status hearing held on 12/6/2017 and continued to 1/24/2018 at 08:30 AM.Mailed notice (kef, ) (Entered: 12/06/2017) |
| 12/27/2017 | 127 | MOTION by Plaintiffs Q.B., T.S. to compel *discovery response from Chief Judge* (Attachments: # 1 Exhibit Plaintiffs' First RFP to Chief Judge)(Chardon, Alexis) (Entered: 12/27/2017) |
| 12/27/2017 | 128 | NOTICE of Motion by Alexis Garmey Chardon for presentment of motion to compel 127 before Honorable Amy J. St. Eve on 1/9/2018 at 08:30 AM. (Chardon, Alexis) (Entered: 12/27/2017) |
| 01/09/2018 | 129 | MINUTE entry before the Honorable Amy J. St. Eve:Motion hearing held on 1/9/2018. Plaintiffs' motion to compel 127 is granted. The Office of the Chief Judge of the Circuit Court of Cook County shall respond to all outstanding discovery by 1/22/18. Mailed notice (kef, ) (Entered: 01/09/2018) |
| 01/24/2018 | 130 | MINUTE entry before the Honorable Amy J. St. Eve:Status hearing held on 1/24/2018 and continued to 2/6/2018 at 09:00 AM (for the county defendants) and to 3/7/2018 at 08:30 AM (general status). Parties are directed to meet and confer in person regarding discovery. Mailed notice (kef, ) (Entered: 01/24/2018) |
| 02/05/2018 | 131 | MINUTE entry before the Honorable Amy J. St. Eve: At the parties' request, Status hearing as to the county defendants set for 2/6/18 is stricken and reset to 2/15/2018 at 10:15 AM. A joint status report regarding the discovery disputes shall be filed by 2/13/18. Mailed notice (kef, ) (Entered: 02/05/2018) |
| 02/13/2018 | 132 | STATUS Report *Joint Status Report* by Q.B., T.S. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Weil, Stephen) (Entered: 02/13/2018) |
| 02/15/2018 | 133 | MINUTE entry before the Honorable Amy J. St. Eve:Status hearing held on 2/15/2018 and continued to 3/7/2018 at 09:30 AM (parties shall note the time change). An attorney appearance for defendant Dixon shall be filed by 3/2/18. Mailed notice (kef, ) (Entered: 02/15/2018) |
| 02/27/2018 | 134 | MINUTE entry before the Honorable Amy J. St. Eve: Status hearing set for 3/7/2018 is reset from 9:30 a.m. to 9:00 a.m. Mailed notice (kef, ) (Entered: 02/27/2018) |
| 02/27/2018 | 135 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752−14169071. (Pessin, Adam) (Entered: 02/27/2018) |
| 03/01/2018 | 136 | ORDER: Motion for leave to appear pro hac vice by Adam Pessin on behalf of plaintiffs 135 is granted. Signed by the Honorable Amy J. St. Eve on 3/1/2018.Mailed notice(las, ) (Entered: 03/01/2018) |
| 03/02/2018 | 137 | ATTORNEY Appearance for Defendant Leonard Dixon by Lyle Kevin Henretty (Henretty, Lyle) (Entered: 03/02/2018) |
| 03/02/2018 | 138 | MOTION by Plaintiffs Q.B., T.S. to compel *discovery responses from Fox defendants* (Attachments: # 1 Exhibit Exhibits 1−17)(Weil, Stephen) (Entered: 03/02/2018) |
| 03/02/2018 | 139 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel 138 before Honorable Amy J. St. Eve on 3/7/2018 at 09:00 AM. (Weil, Stephen) (Entered: 03/02/2018) |
| 03/05/2018 | 140 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in Opposition to motion to compel 138 (Jacobson, Jeffrey) (Entered: 03/05/2018) |
| 03/06/2018 | 141 | MOTION by Plaintiffs Q.B., T.S. to seal document MOTION by Plaintiffs Q.B., T.S. to compel *discovery responses from Fox defendants* 138 (Attachments: # 1 Exhibit Redacted exhibits 1−17 to ECF No. 138)(Weil, Stephen) (Entered: 03/06/2018) |

| 03/06/2018 | 142 | REPLY by Q.B., T.S. to memorandum in opposition to motion 140 *to compel* (Weil, Stephen) (Entered: 03/06/2018) |
|---|---|---|
| 03/07/2018 | 143 | ORDER Signed by the Honorable Amy J. St. Eve on 3/7/2018: The Court, in its discretion, grants in part and denies in part Plaintiffs' motion to compel brought pursuant to Federal Rule of Civil Procedure 37(a). 138 . Defendants must produce the discovery discussed in the Order and file an affidavit attesting to the completeness of its discovery searches and production by no later than March 30, 2018. [For further details, see Order.] Mailed notice(kef, ) (Entered: 03/07/2018) |
| 03/07/2018 | 144 | ORDER: Status hearing held on 3/7/2018 and continued to 4/4/18 at 9:00 a.m. Parties are directed to file a joint proposed discovery schedule by 3/28/18. Plaintiff's motion to seal document 141 is granted. The Clerk's Office is directed to seal doc 138−1. Signed by the Honorable Amy J. St. Eve on 3/7/2018.Mailed notice(gcy, ) (Entered: 03/08/2018) |
| 03/28/2018 | 145 | STATUS Report *Joint Proposed Discovery Schedule* by Q.B., T.S. (Weil, Stephen) (Entered: 03/28/2018) |
| 03/29/2018 | 146 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for extension of time *Unopposed Motion for Extension of Time to Submit Affidavit of Completeness* (Jacobson, Jeffrey) (Entered: 03/29/2018) |
| 03/29/2018 | 147 | NOTICE of Motion by Jeffrey S. Jacobson for presentment of extension of time 146 before Honorable Amy J. St. Eve on 4/4/2018 at 09:00 AM. (Jacobson, Jeffrey) (Entered: 03/29/2018) |
| 03/29/2018 | 148 | MINUTE entry before the Honorable Amy J. St. Eve: Fox Defendants' unopposed motion for extension of time until 4/6/18 to submit affidavit of completeness 146 is granted. Mailed notice (kef, ) (Entered: 03/29/2018) |
| 04/04/2018 | 149 | MINUTE entry before the Honorable Amy J. St. Eve: Status hearing held on 4/4/2018 and continued to 6/20/2018 at 8:45 AM (as opposed to the 6/13/18 date given in open court) Plaintiffs' amended complaint to add plaintiffs shall be filed by 6/29/18. Written fact discovery (except for Requests for Admission and Contention Interrogatories) shall be completed by 8/31/18. No extensions. Oral fact discovery shall be completed by 10/31/18. Burden of proof expert disclosures by 11/30/18. Rebuttal expert disclosures by 1/15/19. Reply expert reports by 3/19/19. All expert discovery shall be completed by 4/1/19. Service of Requests for Admission and Contention Interrogatories by 4/8/19. Parties are directed to meet and confer pursuant to Rule 26(f) and exhaust all settlement possibilities prior to the next status hearing. Mailed notice (kef, ) (Entered: 04/04/2018) |
| 04/06/2018 | 150 | AFFIDAVIT of Twenty−First Century Fox, Inc., Fox Broadcasting Company, and Twentieth Century Fox Television *of Completeness of Discovery Searches and Production.* (Luzadder, Matthew) (Entered: 04/06/2018) |
| 05/04/2018 | 151 | MOTION by Plaintiffs Q.B., T.S. for attorney fees (Attachments: # 1 Exhibit 1)(Weil, Stephen) (Entered: 05/04/2018) |
| 05/04/2018 | 152 | NOTICE of Motion by Stephen H. Weil for presentment of motion for attorney fees 151 before Honorable Amy J. St. Eve on 5/9/2018 at 08:30 AM. (Weil, Stephen) (Entered: 05/04/2018) |
| 05/05/2018 | 153 | *Corrected* NOTICE of Motion by Stephen H. Weil for presentment of motion for attorney fees 151 before Honorable Amy J. St. Eve on 5/9/2018 at 08:30 AM. (Weil, Stephen) (Entered: 05/05/2018) |
| 05/05/2018 | 154 | MOTION by Plaintiffs Q.B., T.S. to amend/correct MOTION by Plaintiffs Q.B., T.S. for attorney fees 151 (Attachments: # 1 Exhibit)(Weil, Stephen) (Entered: 05/05/2018) |
| 05/05/2018 | 155 | NOTICE of Motion by Stephen H. Weil for presentment of motion to amend/correct 154 before Honorable Amy J. St. Eve on 5/10/2018 at 08:30 AM. (Weil, Stephen) (Entered: 05/05/2018) |
| 05/07/2018 | 156 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in Opposition to motion for attorney fees 151 (Jacobson, Jeffrey) (Entered: 05/07/2018) |

| 05/08/2018 | 157 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' motion to correct filing 154 is granted. Counsel is directed to separately file the corrected motion. Plaintiffs' motion for payment of expenses 151 is denied as moot in light of the corrected motion. The court takes the motion under advisement. No appearance is required on the notice of motion dates. Mailed notice (kef, ) (Entered: 05/08/2018) |
|---|---|---|
| 05/08/2018 | 158 | MOTION by Plaintiffs Q.B., T.S. for attorney fees *(corrected)* (Weil, Stephen) (Entered: 05/08/2018) |
| 05/08/2018 | 159 | MOTION by Plaintiffs Q.B., T.S. for leave to file *Reply in Support of Motion for Payment of Fees and Expenses* (Attachments: # 1 Exhibit Proposed Reply)(Weil, Stephen) (Entered: 05/08/2018) |
| 05/08/2018 | 160 | NOTICE of Motion by Stephen H. Weil for presentment of motion for leave to file 159 before Honorable Amy J. St. Eve on 5/15/2018 at 08:30 AM. (Weil, Stephen) (Entered: 05/08/2018) |
| 05/10/2018 | 161 | MINUTE entry before the Honorable Amy J. St. Eve: Plaintiffs' motion for leave to file reply in support of motion for fees and expenses 159 is granted. Counsel shall separately file the reply upon receipt of this order. No appearance is required on the 5/15/18 notice of motion date. Mailed notice (kef, ) (Entered: 05/10/2018) |
| 05/10/2018 | 162 | REPLY by Plaintiffs Q.B., T.S. to memorandum in opposition to motion 156 (Weil, Stephen) (Entered: 05/10/2018) |
| 05/23/2018 | 163 | EXECUTIVE COMMITTEE ORDER: It appearing that cases previously assigned to the Honorable Amy J. St. Eve requires reassignment; therefore It is hereby ordered that the cases on the attached list are to be reassigned to the other judges of this Court as indicated, pursuant to Local Rule 40.1(f) within the guidelines of IOP 16. Case reassigned to the Honorable Rebecca R. Pallmeyer for all further proceedings. Honorable Amy J. St. Eve no longer assigned to the case. Signed by Executive Committee on 5/23/2018. (bg, ) (Entered: 05/23/2018) |
| 05/24/2018 | 164 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: This case has been reassigned from Judge St. Eve. The court adopts the schedule entered by Judge St. Eve on 4/4/2018 149 , except that the court sets status for 6/13/2018 at 9:00 a.m. Mailed notice. (etv, ) (Entered: 05/24/2018) |
| 05/29/2018 | 165 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: By agreement, status hearing set for 6/13/2018 is stricken and re–set to 7/6/2018 at 9:30 AM. Mailed notice. (etv, ) (Entered: 05/29/2018) |
| 06/26/2018 | 166 | MOTION by Plaintiffs Q.B., T.S. to compel *Discovery from Defendant Leonard Dixon* (Attachments: # 1 Exhibit 1–4)(Weil, Stephen) (Entered: 06/26/2018) |
| 06/26/2018 | 167 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel 166 before Honorable Rebecca R. Pallmeyer on 7/6/2018 at 09:30 AM. (Weil, Stephen) (Entered: 06/26/2018) |
| 06/27/2018 | 168 | MOTION by Plaintiffs Q.B., T.S. to compel *the Office of the Chief Judge of the Circuit Court of Cook County* (Attachments: # 1 Exhibit 1–10)(Weil, Stephen) (Entered: 06/27/2018) |
| 06/27/2018 | 169 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel 168 before Honorable Rebecca R. Pallmeyer on 7/6/2018 at 09:30 AM. (Weil, Stephen) (Entered: 06/27/2018) |
| 07/05/2018 | 170 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752–14663953. (GARMEY, TERRENCE) (Entered: 07/05/2018) |
| 07/06/2018 | 171 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 7/6/2018. Plaintiffs' motion to compel discovery from the Office of the Chief Judge of the Circuit Court of Cook Count 168 is granted without prejudice. Plaintiffs' motion to compel discovery from Defendant Leonard Dixon 166 is granted by agreement. All parties to respond to outstanding discovery to be submitted within 21 days. Status hearing set for 8/29/2018 at 9:00 AM. Mailed notice. (etv, ) (Entered: 07/06/2018) |
| 07/10/2018 | 172 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion for leave to appear pro hac vice 170 is granted. Mailed notice. (etv, ) (Entered: 07/10/2018) |

| 07/12/2018 | 173 | MOTION by Plaintiffs Q.B., T.S. to compel *discovery from defendant Office of the Chief Judge of the Circuit Court of Cook County* (Attachments: # 1 Exhibit 1–4)(Weil, Stephen) (Entered: 07/12/2018) |
|---|---|---|
| 07/12/2018 | 174 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel 173 before Honorable Rebecca R. Pallmeyer on 7/17/2018 at 08:45 AM. (Weil, Stephen) (Entered: 07/12/2018) |
| 07/17/2018 | 175 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 7/17/2018. Plaintiffs' motion to compel discovery from the Office of The Chief Judge of the Circuit Court of Cook County 173 is granted. Parties are encouraged to discuss appropriate parameters for the document request. Mailed notice. (etv, ) (Entered: 07/17/2018) |
| 07/19/2018 | 176 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty–First Century Fox, Inc. to take deposition of Plaintiff Q.B. *Unopposed motion for leave to depose committed Plaintiff Q.B.* (Luzadder, Matthew) (Entered: 07/19/2018) |
| 07/19/2018 | 177 | NOTICE of Motion by Matthew Charles Luzadder for presentment of motion to take deposition 176 before Honorable Rebecca R. Pallmeyer on 7/24/2018 at 09:00 AM. (Luzadder, Matthew) (Entered: 07/19/2018) |
| 07/20/2018 | 178 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Unopposed motion for leave to depose committed Plaintiff Q.B 176 is granted without an appearance. Mailed notice. (etv, ) (Entered: 07/20/2018) |
| 07/23/2018 | 179 | ORDER GRANTING LEAVE TO DEPOSE COMMITTED PLAINTIFF Q.B.: Signed by the Honorable Rebecca R. Pallmeyer on 7/23/2018. Mailed notice. (etv, ) (Entered: 07/23/2018) |
| 08/21/2018 | 180 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty–First Century Fox, Inc. for protective order (Attachments: # 1 Exhibit 1 – Declarations of Peggy Woon of TCFTV, # 2 Exhibit 2 – Declarations of Veera Tirumalai of FBC, # 3 Exhibit 3 – Declaration of Matthew C. Luzadder in Support of Fox Defendants' Motion for Protective Order, # 4 Exhibit A (to Exhibit 3) – Plaintiffs' First Set of Requests for Production and First Set of Interrogatories, # 5 Exhibit B (to Exhibit 3) – Defendants' Response to Plaintiffs' discovery, # 6 Exhibit C (to Exhibit 3) – Dkt. No. 143 at 3, # 7 Exhibit D (to Exhibit 3) – Defendants' Affidavit of Completeness of Discovery Searches and Production, # 8 Exhibit E (to Exhibit 3) – Plaintiffs' Second Set of Requests for Production and Interrogatories to FBC and to TCFTV, # 9 Exhibit F (to Exhibit 3) – Defendants' Response to Plaintiffs' Second Set of Interrogatories, # 10 Exhibit G (to Exhibit 3) – 7/10/18 letter from Plaintiffs to Defendants, # 11 Exhibit H (to Exhibit 3) – 7/23/18 letter to Plaintiffs' counsel, # 12 Exhibit I (to Exhibit 3) – 8/16/18 letter from Plaintiffs to Defendants, # 13 Exhibit J (to Exhibit 3) – 8/16/18 email from Plaintiffs to Defendants)(Jacobson, Jeffrey) (Entered: 08/21/2018) |
| 08/21/2018 | 181 | NOTICE of Motion by Jeffrey S. Jacobson for presentment of motion for protective order,,,,, 180 before Honorable Rebecca R. Pallmeyer on 8/29/2018 at 09:00 AM. (Jacobson, Jeffrey) (Entered: 08/21/2018) |
| 08/27/2018 | 182 | SEALED MOTION by Plaintiffs Q.B., T.S. *(1) Cross–Motion to Compel and to Reconsider in Part, and (2) Opposition to The Fox Defendants Motion for Protective Order* (Attachments: # 1 Exhibit)(Weil, Stephen) (Entered: 08/27/2018) |
| 08/27/2018 | 183 | MOTION by Plaintiffs Q.B., T.S. to compel *(1) Cross–Motion to Compel and to Reconsider in Part, and (2) Opposition to The Fox Defendants Motion for Protective Order* (Attachments: # 1 Exhibit)(Weil, Stephen) (Entered: 08/27/2018) |
| 08/27/2018 | 184 | MOTION by Plaintiffs Q.B., T.S. to seal document SEALED MOTION by Plaintiffs Q.B., T.S. *(1) Cross–Motion to Compel and to Reconsider in Part, and (2) Opposition to The Fox Defendants Motion for Protective Order 182 and exhibits thereto (182–1)*, MOTION by Plaintiffs Q.B., T.S. to seal , MOTION by Plaintiffs Q.B., T.S. to seal case (Weil, Stephen) (Entered: 08/27/2018) |
| 08/27/2018 | 185 | MOTION by Plaintiffs Q.B., T.S. for leave to file excess pages *regarding ECF No. 182 / 183* (Weil, Stephen) (Entered: 08/27/2018) |

| 08/27/2018 | 186 | NOTICE of Motion by Stephen H. Weil for presentment of motion to seal document,,,, motion to seal case, 184 , motion for leave to file excess pages 185 , Sealed motion 182 , motion to compel 183 before Honorable Rebecca R. Pallmeyer on 8/29/2018 at 09:00 AM. (Weil, Stephen) (Entered: 08/27/2018) |
|---|---|---|
| 08/27/2018 | 187 | ATTORNEY Appearance for Defendant Leonard Dixon by Joi Kamper (Kamper, Joi) (Entered: 08/27/2018) |
| 08/28/2018 | 188 | REPLY by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for protective order 180 , MOTION by Plaintiffs Q.B., T.S. to compel *(1) Cross−Motion to Compel and to Reconsider in Part, and (2) Opposition to The Fox Defendants Motion for Protective Order* 183 (Jacobson, Jeffrey) (Entered: 08/28/2018) |
| 08/29/2018 | 189 | NOTICE by Janine Nicole Fletcher−Thomas of Change of Address . *Notification of Change of Attorney Name.* (Fletcher−Thomas, Janine) (Entered: 08/29/2018) |
| 08/29/2018 | 190 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 8/29/2018. Defendant Fox's motion for protective order 180 is granted without prejudice and Plaintiffs' cross−motion to compel [182, 183 ] is denied without prejudice to Plaintiffs' damages theories. Motions for leave to file excess pages 185 and motion for leave to file under seal 184 are granted. Status hearing set for 10/10/2018 at 9:00 AM, at which time the court expects the parties to submit a schedule for completion of discovery, including a calendar of dates on which depositions have been or will be taken. Mailed notice. (etv, ) Modified on 8/29/2018 (etv, ). (Entered: 08/29/2018) |
| 09/06/2018 | 191 | ATTORNEY Appearance for Defendant The County of Cook, Illinois by Danielle Mikhail (Mikhail, Danielle) (Entered: 09/06/2018) |
| 09/17/2018 | 192 | TRANSCRIPT OF PROCEEDINGS held on 8/29/18 before the Honorable Rebecca R. Pallmeyer. Order Number: 32004. Court Reporter Contact Information: Kathleen_Fennell@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 10/9/2018. Redacted Transcript Deadline set for 10/18/2018. Release of Transcript Restriction set for 12/17/2018. (Fennell, Kathleen) (Entered: 09/17/2018) |
| 10/02/2018 | 193 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: On the court's own motion, status hearing set for 10/10/2018 is stricken and re−set to 10/12/2018 at 9:30 AM. Mailed notice. (etv, ) (Entered: 10/02/2018) |
| 10/03/2018 | 194 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: By agreement, status hearing set for 10/12/2018 is stricken and re−set to 10/18/2018 at 8:45 AM. Mailed notice. (etv, ) (Entered: 10/03/2018) |
| 10/05/2018 | 195 | MOTION by Plaintiffs Q.B., T.S. to compel *discovery responses from Cook County* (Attachments: # 1 Exhibit 1−3)(Weil, Stephen) (Entered: 10/05/2018) |
| 10/09/2018 | 196 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel 195 before Honorable Rebecca R. Pallmeyer on 10/18/2018 at 08:45 AM. (Weil, Stephen) (Entered: 10/09/2018) |
| 10/12/2018 | 197 | SEALED MOTION by Plaintiffs Q.B., T.S. *to compel discovery from the Fox Defendants and witness Brady Breen* (Attachments: # 1 Exhibit 1−4)(Weil, Stephen) (Entered: 10/12/2018) |
| 10/12/2018 | 198 | MOTION by Plaintiffs Q.B., T.S. to compel *to compel discovery from the Fox Defendants and witness Brady Breen* (Attachments: # 1 Exhibit 1−4)(Weil, Stephen) (Entered: 10/12/2018) |
| 10/12/2018 | 199 | MOTION by Plaintiffs Q.B., T.S. to seal *ECF Nos. 197 & 197−1* (Weil, Stephen) (Entered: 10/12/2018) |

Case: 21-8018   Document: 1   Filed: 06/24/2021   Pages: 133

| | | |
|---|---|---|
| 10/12/2018 | 200 | NOTICE of Motion by Stephen H. Weil for presentment of Sealed motion 197 , motion to seal 199 before Honorable Rebecca R. Pallmeyer on 10/18/2018 at 08:45 AM. (Weil, Stephen) (Entered: 10/12/2018) |
| 10/15/2018 | 201 | MOTION by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Fox Television Group, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for leave to file excess pages (Attachments: # 1 Exhibit A)(Mikhail, Danielle) (Entered: 10/15/2018) |
| 10/15/2018 | 202 | NOTICE of Motion by Danielle Mikhail for presentment of motion for leave to file excess pages, 201 before Honorable Rebecca R. Pallmeyer on 10/18/2018 at 08:45 AM. (Mikhail, Danielle) (Entered: 10/15/2018) |
| 10/15/2018 | 203 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in Opposition to motion to compel 198 , Sealed motion 197 *Fox Defendants' Memorandum In Opposition to Plaintiffs' Motion to Compel Discovery From the Fox Defendants and Witness Brady Breen* (Jacobson, Jeffrey) (Entered: 10/15/2018) |
| 10/16/2018 | 204 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in Opposition to motion to compel 198 , Sealed motion 197 *Fox Defendants' Amended Memorandum In Opposition to Plaintiffs' Motion to Compel Discovery From the Fox Defendants and Witness Brady Breen* (Jacobson, Jeffrey) (Entered: 10/16/2018) |
| 10/16/2018 | 205 | ATTORNEY Appearance for Defendant The Chief Judge of the Circuit Court of Cook County by Michael T. Dierkes (Dierkes, Michael) (Entered: 10/16/2018) |
| 10/16/2018 | 206 | MOTION by Plaintiffs Q.B., T.S. to strike MOTION by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Fox Television Group, The County of Cook, Illinois, Twentieth Century Fox Televis 201 *or to hold in abeyance, and to set a class certification briefing schedule* (Weil, Stephen) (Entered: 10/16/2018) |
| 10/16/2018 | 207 | NOTICE of Motion by Stephen H. Weil for presentment of motion to strike, 206 before Honorable Rebecca R. Pallmeyer on 10/18/2018 at 08:45 AM. (Weil, Stephen) (Entered: 10/16/2018) |
| 10/17/2018 | 208 | REPLY by Q.B., T.S. to memorandum in opposition to motion, 204 *and in Support of Motion to Compel Discovery From the Fox Defendants and Witness Brady Breen* 197 (Weil, Stephen) (Entered: 10/17/2018) |
| 10/17/2018 | 209 | REPLY by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to motion to strike, 206 (Mikhail, Danielle) (Entered: 10/17/2018) |
| 10/17/2018 | 210 | RESPONSE by The County of Cook, Illinoisin Opposition to MOTION by Plaintiffs Q.B., T.S. to compel *discovery responses from Cook County* 195 (Mikhail, Danielle) (Entered: 10/17/2018) |
| 10/18/2018 | 211 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 10/18/2018. Plaintiffs' motion to compel discovery responses from Cook County 195 and motion to compel discovery from the Fox Defendants and witness Brady Breen 198 are granted in part and denied in part as stated in court. Named Plaintiffs' motion to seal their motion to compel discovery from the Fox Defendants and witness Brady Breen 199 is granted. Defendants' motion to exceed page limit 201 is granted, and the oversize brief may be filed instanter. Plaintiffs' motion to strike or hold in abeyance Defendants' motion to deny class certification 206 is denied. Response to Defendant's motion to strike class allegations is entered and continued. Response to be filed by or on 12/18/2018; reply to be filed by or on 1/10/2019. Status hearing set for 1/16/2019 at 9:00 AM. Mailed notice. (etv, ) (Entered: 10/18/2018) |
| 10/18/2018 | 212 | MEMORANDUM *in Support of Motion to Deny Class Certification* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Mikhail, Danielle) (Entered: 10/18/2018) |

| 10/18/2018 | 213 | Exhibit E by The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. *in Support of Motion to Deny Class Certification* (Attachments: # 1 Exhibit F, # 2 Exhibit G, # 3 Exhibit H, # 4 Exhibit I, # 5 Exhibit J, # 6 Exhibit K, # 7 Exhibit L)(Mikhail, Danielle) (Entered: 10/18/2018) |
|---|---|---|
| 10/18/2018 | 214 | Exhibit M by The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. *in Support of Motion to Deny Class Certification* (Attachments: # 1 Exhibit N, # 2 Exhibit O, # 3 Exhibit P, # 4 Exhibit Q)(Mikhail, Danielle) (Entered: 10/18/2018) |
| 10/18/2018 | 215 | Exhibit R by The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. *in Support of Motion to Deny Class Certification* (Attachments: # 1 Exhibit S, # 2 Exhibit T, # 3 Exhibit U)(Mikhail, Danielle) (Entered: 10/18/2018) |
| 10/24/2018 | 216 | TRANSCRIPT OF PROCEEDINGS held on 10/18/18 before the Honorable Rebecca R. Pallmeyer. Order Number: 32561. Court Reporter Contact Information: Frances Ward (312)435−5561 − wardofficialtranscripts@gmail.com.

IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.

Redaction Request due 11/14/2018. Redacted Transcript Deadline set for 11/26/2018. Release of Transcript Restriction set for 1/22/2019. (Ward, Frances) (Entered: 10/24/2018) |
| 10/25/2018 | 217 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion to compel 197 was granted in part and denied in part on 10/18/2018 and should be terminated. Mailed notice (lf, ) (Entered: 10/25/2018) |
| 11/20/2018 | 218 | MOTION by Defendant The County of Cook, Illinois to withdraw *Anthony Zecchin as attorney for Cook County and Leonard Dixon and Allyson West as attorney for Leonard Dixon* (Mikhail, Danielle) (Entered: 11/20/2018) |
| 11/20/2018 | 219 | NOTICE of Motion by Danielle Mikhail for presentment of motion to withdraw 218 before Honorable Rebecca R. Pallmeyer on 11/29/2018 at 08:45 AM. (Mikhail, Danielle) (Entered: 11/20/2018) |
| 11/26/2018 | 220 | ORDER: Motion to withdraw as counsel pursuant to Local Rule 83.17 218 is granted without an appearance. Assistant State's Attorney Anthony Zecchin is granted leave to withdraw his appearance on behalf of Defendants Cook County and Leonard Dixon. Signed by the Honorable Rebecca R. Pallmeyer on 11/26/2018. Mailed notice. (bg, ) (Entered: 11/27/2018) |
| 12/12/2018 | 221 | MOTION by Plaintiffs Q.B., T.S. for extension of time *(Joint Agreed)* (Chardon, Alexis) (Entered: 12/12/2018) |
| 12/12/2018 | 222 | NOTICE of Motion by Alexis Garmey Chardon for presentment of extension of time 221 before Honorable Rebecca R. Pallmeyer on 12/17/2018 at 09:00 AM. (Chardon, Alexis) (Entered: 12/12/2018) |
| 12/13/2018 | 223 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Joint agreed motion for an enlargement of time 221 is granted without an appearance. Plaintiffs' response to Defendants' motion to deny class certification (ECF 212) is enlarged from December 18, 2018 to March 7, 2018. Status hearing set for 1/16/2019 is stricken and re−set to 2/27/2019 at 9:00 AM. Mailed notice. (etv, ) (Entered: 12/13/2018) |
| 12/14/2018 | 224 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Minute entry of 2/13/2018, #223, is amended as follows: Plaintiffs' response to Defendants' motion to deny class certification (ECF 212) is extended to 3/7/2019. Remainder of order to stand. Mailed notice. (etv, ) (Entered: 12/14/2018) |

| 01/11/2019 | 225 | MOTION by Attorney Allyson West to withdraw as attorney for The County of Cook, Illinois. No party information provided (Catania, Francis) (Entered: 01/11/2019) |
| --- | --- | --- |
| 01/11/2019 | 226 | NOTICE of Motion by Francis J. Catania for presentment of motion to withdraw as attorney 225 before Honorable Rebecca R. Pallmeyer on 1/16/2019 at 08:45 AM. (Catania, Francis) (Entered: 01/11/2019) |
| 01/11/2019 | 227 | ATTORNEY Appearance for Defendant The County of Cook, Illinois by Francis J. Catania (Catania, Francis) (Entered: 01/11/2019) |
| 01/15/2019 | 228 | ORDER: Motion to withdraw Allyson Lynn West as counsel 225 is granted without an appearance. Signed by the Honorable Rebecca R. Pallmeyer on 1/15/2019. Mailed notice. (bg, ) (Entered: 01/15/2019) |
| 02/14/2019 | 229 | MOTION by Plaintiffs Q.B., T.S. for extension of time to file response/reply *to Defendants' Motion to Strike Class Allegations* (Chardon, Alexis) (Entered: 02/14/2019) |
| 02/14/2019 | 230 | NOTICE of Motion by Alexis Garmey Chardon for presentment of motion for extension of time to file response/reply 229 before Honorable Rebecca R. Pallmeyer on 2/21/2019 at 08:45 AM. (Chardon, Alexis) (Entered: 02/14/2019) |
| 02/19/2019 | 231 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Joint agreed motion for an enlargement of time 229 is granted without an appearance. Deadline for Plaintiffs' response to Defendants' motion to deny class certification 212 is extended to and including 4/12/2019; Defendants reply extended to and including 5/3/2019. Status hearing set for 2/27/2019 is stricken and re−set to 5/9/2019 at 9:00 AM. Mailed notice. (etv, ) (Entered: 02/19/2019) |
| 03/21/2019 | 232 | ATTORNEY Appearance for Defendant The County of Cook, Illinois by Ryan J. Gillespie (Gillespie, Ryan) (Entered: 03/21/2019) |
| 03/25/2019 | 233 | ORDER : Plaintiffs' motion for an award of attorneys' fees as a discovery sanction 158 is granted in part and denied in part. The court directs the Fox Defendants to pay half of the fees requested by Plaintiffs for litigating their motion to compel. Signed by the Honorable Rebecca R. Pallmeyer on 3/25/2019. Mailed notice. (etv, ) (Entered: 03/25/2019) |
| 04/05/2019 | 234 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. *Fox Defendants' Supplemental Disclosure of Corporate Interest and Notification of Affiliates* (Jacobson, Jeffrey) (Entered: 04/05/2019) |
| 04/12/2019 | 235 | MOTION by Plaintiffs Q.B., T.S. to certify class (Weil, Stephen) (Entered: 04/12/2019) |
| 04/12/2019 | 236 | SEALED DOCUMENT by Plaintiffs Q.B., T.S. *sealed memorandum in support of [ECF 235] and sealed exhibits* (Attachments: # 1 Exhibit 1−19, # 2 Exhibit 20−62)(Weil, Stephen) (Entered: 04/12/2019) |
| 04/12/2019 | 237 | MEMORANDUM by Q.B., T.S. in support of motion to certify class 235 *and in opposition to motion to deny certification [ECF 212]* (Attachments: # 1 Exhibit 1−62)(Weil, Stephen) (Entered: 04/12/2019) |
| 04/12/2019 | 238 | MOTION by Plaintiffs Q.B., T.S. to seal document sealed document 236 *and exhibits thereto* (Weil, Stephen) (Entered: 04/12/2019) |
| 04/12/2019 | 239 | MOTION by Plaintiffs Q.B., T.S. for leave to file excess pages *instanter* (Weil, Stephen) (Entered: 04/12/2019) |
| 04/12/2019 | 240 | NOTICE of Motion by Stephen H. Weil for presentment of motion to certify class 235 , motion to seal document 238 , motion for leave to file excess pages 239 before Honorable Rebecca R. Pallmeyer on 4/18/2019 at 08:45 AM. (Weil, Stephen) (Entered: 04/12/2019) |
| 04/18/2019 | 241 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 4/18/2019. Plaintiffs' cross−motion for class certification 235 is entered and continued for briefing. Response to be filed by or on 6/18/2019; reply to be filed by or on 7/9/2019. Motion for leave to file excess pages 239 and for leave to fie under seal 238 |

| | | |
|---|---|---|
| | | are granted. Within seven (7) days, Plaintiff to provide documents relevant to 5/6/2019 depositions. Also within seven (7) days, Defendant to furnish information regarding schedules within the detention facility. Status hearing set for 5/9/2019 is stricken and re−set to 5/16/2019 at 9:00 AM. Mailed notice. (etv, ) (Entered: 04/18/2019) |
| 05/16/2019 | 242 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 5/16/2019. Status hearing set for 6/20/2019 at 9:00 AM. Response to contention interrogatories to be furnished 21 days after conclusion of fact and expert discovery. Mailed notice. (etv, ) (Entered: 05/17/2019) |
| 05/20/2019 | 243 | NOTICE by Jeffrey S. Jacobson of Change of Address (Jacobson, Jeffrey) (Entered: 05/20/2019) |
| 06/10/2019 | 244 | MOTION by Attorney T. Andrew Horvat to withdraw as attorney for The Chief Judge of the Circuit Court of Cook County. No party information provided (Horvat, T.) (Entered: 06/10/2019) |
| 06/10/2019 | 245 | NOTICE of Motion by T. Andrew Horvat for presentment of motion to withdraw as attorney 244 before Honorable Rebecca R. Pallmeyer on 6/13/2019 at 08:45 AM. (Horvat, T.) (Entered: 06/10/2019) |
| 06/11/2019 | 246 | ORDER: Motion to withdraw as counsel of record 244 is granted without an appearance. Attorney T. Andrew Horvat is granted leave to withdraw as counsel of record. Signed by the Honorable Rebecca R. Pallmeyer on 6/11/2019. Mailed notice (jh, ) (Entered: 06/11/2019) |
| 06/14/2019 | 247 | TRANSCRIPT OF PROCEEDINGS held on 4/18/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 34614. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/5/2019. Redacted Transcript Deadline set for 7/15/2019. Release of Transcript Restriction set for 9/12/2019. (Ward, Frances) (Entered: 06/14/2019) |
| 06/18/2019 | 248 | MEMORANDUM by The County of Cook, Illinois in Opposition to motion to certify class 235 *and Reply Memorandum in Support of Defendants' Motion to Deny Class Certification 212* (Attachments: # 1 Exhibit A: Deposition of Jonathan Klemke, # 2 Exhibit B: Deposition of Leonard Dixon, # 3 Exhibit C: Deposition of Brady Breen, # 4 Exhibit D: Deposition of Earl L. Dunlap, # 5 Exhibit E: Deposition of Anna Buckingham, # 6 Exhibit F: Deposition of William Steward, # 7 Exhibit G: Deposition of T.S., # 8 Exhibit H: Deposition of Q.B., # 9 Exhibit I: Declaration of Shawn Withers, # 10 Exhibit J: Declaration of Linda Kampe, # 11 Exhibit K: Deposition of Gene Robinson, # 12 Exhibit L: Declaration of J. Brian Conant, Psy.D., # 13 Exhibit M: Declaration of Shannon Rayford, # 14 Exhibit N: Declaration of Gene Robinson, # 15 Exhibit O: Deposition of S.S., # 16 Exhibit P: Deposition of V.P., # 17 Exhibit Q: S.S. Visitation logs, # 18 Exhibit R: Deposition of Louis. J. Kraus, M.D., # 19 Exhibit S: Declaration of Zenaida Alonzo)(Mikhail, Danielle) (Entered: 06/18/2019) |
| 06/18/2019 | 249 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in Opposition to motion to certify class 235 *and Reply Memorandum in Support of Defendants' Motion to Deny Class Certification 212* (Attachments: # 1 Exhibit A: Deposition of Leonard Dixon, # 2 Exhibit B: Deposition of Brady Breen, # 3 Exhibit C: Deposition of Jonathan Klemke, # 4 Exhibit D: Email exchange re: Location Agreement)(Jacobson, Jeffrey) (Entered: 06/18/2019) |
| 06/20/2019 | 250 | ATTORNEY Appearance for Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. by Justin O'Neill Kay (Kay, Justin) (Entered: 06/20/2019) |

| | | |
|---|---|---|
| 06/20/2019 | 251 | ORDER: Status hearing held on 6/20/2019. The Clerk's Office is directed to remove Exhibit #9 from the Government Defendants' memorandum of law in opposition to Plaintiffs' motion for class certification, document # 248 . Redacted version to be filed with the Court. Evidentiary Hearing set for 6/25/2019 at 11:00 AM. Signed by the Honorable Rebecca R. Pallmeyer on June 20, 2019. Mailed notice (ph, ) (Entered: 06/20/2019) |
| 06/21/2019 | 252 | EXHIBIT by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, The County of Cook, Illinois *(Redacted #9 Exhibit I: Declaration of Shawn Withers)* regarding memorandum in opposition to motion,,,, 248 (Mikhail, Danielle) (Entered: 06/21/2019) |
| 06/25/2019 | 253 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 6/25/2019. Reply in support of class certification motion to be filed by or on 7/31/2019. Status hearing set for 8/13/2019 at 11:00 AM. Evidentiary hearing stricken. Mailed notice. (etv, ) (Entered: 06/26/2019) |
| 06/27/2019 | 254 | SEALED MOTION by Plaintiffs Q.B., T.S. *to Compel* (Attachments: # 1 Exhibit 1−9)(Weil, Stephen) (Entered: 06/27/2019) |
| 06/27/2019 | 255 | MOTION by Plaintiffs Q.B., T.S. to compel *Additional Deposition Testimony of Leonard Dixon and to Permit an Inspection of Leonard Dixons Personal Email* (Attachments: # 1 Exhibit 1−9)(Weil, Stephen) (Entered: 06/27/2019) |
| 06/27/2019 | 256 | MOTION by Plaintiffs Q.B., T.S. to seal *ECF 254 and ECF 254−1* (Weil, Stephen) (Entered: 06/27/2019) |
| 06/27/2019 | 257 | TRANSCRIPT OF PROCEEDINGS held on 6/25/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 35169. Court Reporter Contact Information: Nancy LaBella, nlabella.ilnd@gmail.com, (312) 435−6890. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 7/18/2019. Redacted Transcript Deadline set for 7/29/2019. Release of Transcript Restriction set for 9/25/2019. (Labella, Nancy) (Entered: 06/27/2019) |
| 06/27/2019 | 258 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel 255 , motion to seal 256 , Sealed motion 254 before Honorable Rebecca R. Pallmeyer on 7/1/2019 at 09:00 AM. (Weil, Stephen) (Entered: 06/27/2019) |
| 07/01/2019 | 259 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Plaintiffs' motions to compel 254 and 255 are entered and continued. Defendants' response shall be filed by 7/12/19. Plaintiffs' reply in support shall be filed by 7/19/19. Plaintiffs' motion to seal 256 is granted. Ruling on Plaintiffs' motions to compel set for 8/2/19 at 10:00 a.m. Notice mailed by judge's staff (ntf, ) (Entered: 07/01/2019) |
| 07/01/2019 | 260 | TRANSCRIPT OF PROCEEDINGS held on 6/20/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 35125. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/22/2019. Redacted Transcript Deadline set for 8/1/2019. Release of Transcript Restriction set for 9/30/2019. (Ward, Frances) (Entered: 07/01/2019) |
| 07/02/2019 | 261 | TRANSCRIPT OF PROCEEDINGS held on 7/1/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 35245. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com. |

|  |  | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/23/2019. Redacted Transcript Deadline set for 8/2/2019. Release of Transcript Restriction set for 9/30/2019. (Ward, Frances) (Entered: 07/02/2019) |
|---|---|---|
| 07/12/2019 | 262 | MOTION by Defendant The County of Cook, Illinois for protective order *HIPAA Qualified* (Attachments: # 1 Exhibit proposed order)(Catania, Francis) (Entered: 07/12/2019) |
| 07/12/2019 | 263 | NOTICE of Motion by Francis J. Catania for presentment of motion for protective order 262 before Honorable Rebecca R. Pallmeyer on 7/18/2019 at 08:45 AM. (Catania, Francis) (Entered: 07/12/2019) |
| 07/12/2019 | 264 | RESPONSE by Defendant The Chief Judge of the Circuit Court of Cook County to motion to compel 255 (Dierkes, Michael) (Entered: 07/12/2019) |
| 07/12/2019 | 265 | RESPONSE by Leonard Dixonin Opposition to MOTION by Plaintiffs Q.B., T.S. to compel *Additional Deposition Testimony of Leonard Dixon and to Permit an Inspection of Leonard Dixons Personal Email* 255 (Henretty, Lyle) (Entered: 07/12/2019) |
| 07/17/2019 | 266 | RESPONSE by Q.B., T.S.in Opposition to MOTION by Defendant The County of Cook, Illinois for protective order *HIPAA Qualified* 262 (Weil, Stephen) (Entered: 07/17/2019) |
| 07/18/2019 | 267 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. For the reasons stated on the record, Defendant County of Cook's motion for protective order 262 is granted. Defendant shall submit a proposed protective order to this court's proposed order inbox. Notice mailed by judge's staff (ntf, ) (Entered: 07/18/2019) |
| 07/19/2019 | 268 | TRANSCRIPT OF PROCEEDINGS held on 7/18/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 35439. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/9/2019. Redacted Transcript Deadline set for 8/19/2019. Release of Transcript Restriction set for 10/17/2019. (Ward, Frances) (Entered: 07/19/2019) |
| 07/19/2019 | 269 | REPLY by Plaintiffs Q.B., T.S. to Sealed motion 254 , motion to compel 255 (Weil, Stephen) (Entered: 07/19/2019) |
| 07/31/2019 | 270 | REPLY by Plaintiffs Q.B., T.S. to motion to certify class 235 (Attachments: # 1 Exhibit 63−77)(Weil, Stephen) (Entered: 07/31/2019) |
| 07/31/2019 | 271 | SEALED DOCUMENT by Plaintiffs Q.B., T.S. *sealed exhibits for Reply in Support of Cross−Motion for Class Certification [ECF 270]* (Weil, Stephen) (Entered: 07/31/2019) |
| 07/31/2019 | 272 | MOTION by Plaintiffs Q.B., T.S. for leave to file excess pages (Weil, Stephen) (Entered: 07/31/2019) |
| 07/31/2019 | 273 | MOTION by Plaintiffs Q.B., T.S. to seal document sealed document 271 (Weil, Stephen) (Entered: 07/31/2019) |

| 07/31/2019 | 274 | NOTICE of Motion by Stephen H. Weil for presentment of motion to seal document 273 , motion for leave to file excess pages 272 before Honorable Rebecca R. Pallmeyer on 8/5/2019 at 09:00 AM. (Weil, Stephen) (Entered: 07/31/2019) |
|---|---|---|
| 08/02/2019 | 275 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Plaintiffs' motions to compel 254 and 255 are granted in part and denied in part. The court directs additional search of Defendant Dixon's personal email account by an independent third party; fruits of that search shall be submitted to this court for an in camera inspection. Plaintiffs' motion for leave to file excess pages 272 is granted. Plaintiffs' motion to seal 273 is granted. Defendants have leave to file sur−reply, limited to 10 pages, shall be filed by 8/7/19. Plaintiff's sur−response, if any, also limited to 10 pages, shall be filed by 8/12/19. Motion hearing date of 8/5/19 is stricken. Status hearing remains set for 8/13/19 at 11:00 a.m. Notice mailed by judge's staff (ntf, ) (Entered: 08/02/2019) |
| 08/05/2019 | 276 | HIPAA Qualified Protective Order. Signed by the Honorable Rebecca R. Pallmeyer on 8/5/2019. Notice mailed by judge's staff (ntf, ) (Entered: 08/05/2019) |
| 08/07/2019 | 277 | SUR−REPLY by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, The County of Cook, Illinois to reply 270 (Attachments: # 1 Exhibit T, # 2 Exhibit U)(Mikhail, Danielle) (Entered: 08/07/2019) |
| 08/07/2019 | 278 | SUR−REPLY by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, The County of Cook, Illinois to reply 270 *(Corrected)* (Attachments: # 1 Exhibit T, # 2 Exhibit U)(Mikhail, Danielle) (Entered: 08/07/2019) |
| 08/09/2019 | 279 | RESPONSE by Plaintiffs Q.B., T.S. to sur−reply 278 (Weil, Stephen) (Entered: 08/09/2019) |
| 08/13/2019 | 280 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held. Arguments held on Plaintiffs' motion for class certification 235 . The Court will issue its ruling by mail. Mailed notice (mw, ) (Entered: 08/13/2019) |
| 08/16/2019 | 281 | TRANSCRIPT OF PROCEEDINGS held on 8/13/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 35732. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 9/6/2019. Redacted Transcript Deadline set for 9/16/2019. Release of Transcript Restriction set for 11/14/2019. (Ward, Frances) (Entered: 08/16/2019) |
| 09/27/2019 | 282 | MOTION by Defendant The Chief Judge of the Circuit Court of Cook County for leave to file supplemental authority (Attachments: # 1 Exhibit A)(Dierkes, Michael) (Entered: 09/27/2019) |
| 09/27/2019 | 283 | NOTICE of Motion by Michael T. Dierkes for presentment of motion for miscellaneous relief 282 before Honorable Rebecca R. Pallmeyer on 10/3/2019 at 08:45 AM. (Dierkes, Michael) (Entered: 09/27/2019) |
| 10/01/2019 | 284 | MOTION by Plaintiffs Q.B., T.S. for leave to file *Response to Defendants' Submission of Supplemental Authority* (Attachments: # 1 Exhibit 1)(Weil, Stephen) (Entered: 10/01/2019) |
| 10/01/2019 | 285 | NOTICE of Motion by Stephen H. Weil for presentment of motion for leave to file 284 before Honorable Rebecca R. Pallmeyer on 10/3/2019 at 08:45 AM. (Weil, Stephen) (Entered: 10/01/2019) |
| 10/02/2019 | 286 | RESPONSE by The Chief Judge of the Circuit Court of Cook County to MOTION by Plaintiffs Q.B., T.S. for leave to file *Response to Defendants' Submission of Supplemental Authority* 284 (Dierkes, Michael) (Entered: 10/02/2019) |

| 10/02/2019 | 287 | NOTICE by Stephen H. Weil of Change of Address (Weil, Stephen) (Entered: 10/02/2019) |
|---|---|---|
| 10/02/2019 | 288 | ATTORNEY Appearance for Plaintiffs Q.B., T.S. by Sarah Copeland Grady (Grady, Sarah) (Entered: 10/02/2019) |
| 10/02/2019 | 289 | ATTORNEY Appearance for Plaintiffs Q.B., T.S. by Michael I Kanovitz (Kanovitz, Michael) (Entered: 10/02/2019) |
| 10/02/2019 | 290 | ATTORNEY Appearance for Plaintiffs Q.B., T.S. by Jonathan I. Loevy (Loevy, Jonathan) (Entered: 10/02/2019) |
| 10/03/2019 | 291 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant Chief Judge's motion for leave to file supplemental authority 282 is granted. Plaintiff's motion to file response to Defendants' proposed submission of supplemental authority 284 is granted. Motion hearing date of 10/3/19 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 10/03/2019) |
| 10/10/2019 | 292 | TRANSCRIPT OF PROCEEDINGS held on 8/2/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 36292. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 10/31/2019. Redacted Transcript Deadline set for 11/12/2019. Release of Transcript Restriction set for 1/8/2020. (Ward, Frances) (Entered: 10/10/2019) |
| 10/15/2019 | 293 | MOTION by Plaintiffs Q.B., T.S. to compel *30(b)(6) Deposition* (Attachments: # 1 Exhibit 1− Deposition Notice, # 2 Exhibit 2− Pembaur Stipulation, # 3 Exhibit 3− Interrogatory Responses, # 4 Exhibit 4−Email Correspondence)(Weil, Stephen) (Entered: 10/15/2019) |
| 10/15/2019 | 294 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel, 293 before Honorable Rebecca R. Pallmeyer on 10/17/2019 at 08:45 AM. (Weil, Stephen) (Entered: 10/15/2019) |
| 10/17/2019 | 295 | TRANSCRIPT OF PROCEEDINGS held on 10/17/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 36445. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 11/7/2019. Redacted Transcript Deadline set for 11/18/2019. Release of Transcript Restriction set for 1/15/2020. (Ward, Frances) (Entered: 10/17/2019) |
| 10/17/2019 | 296 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. For the reasons stated on the record, Plaintiffs' motion to compel 30(b)(6) deposition 293 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 10/17/2019) |
| 10/18/2019 | 297 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Minute entry dated 10/17/19 296 is amended as follows: For the reasons stated on the record, Plaintiffs' motion to compel 30(b)(6) deposition 293 is denied. Notice mailed by judge's staff (ntf, ) (Entered: 10/18/2019) |
| 11/07/2019 | 298 | MOTION by Plaintiffs Q.B., T.S.Leave to Serve Rule 33 Discovery on Defendant Chief Judge of the Circuit Court of Cook County (Attachments: # 1 Exhibit A)(Weil, |

|  |  | Stephen) (Entered: 11/07/2019) |
|---|---|---|
| 11/07/2019 | 299 | NOTICE of Motion by Stephen H. Weil for presentment of motion for miscellaneous relief 298 before Honorable Rebecca R. Pallmeyer on 11/18/2019 at 09:00 AM. (Weil, Stephen) (Entered: 11/07/2019) |
| 11/18/2019 | 300 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Defendants' object to plaintiffs' motion for leave to serve Rule 33 discovery on defendant Chief Judge of the Circuit Court of Cook County 298 is taken under advisement. Plaintiffs' counsel intends to move for summary judgment. The briefing schedule is as follows: motion due: 12/9/19; response due 1/3/2020; reply due 1/15/2020. As discussed in open court, Defendant Leonard Dixon's affidavit is due 11/25/19. Answers regarding interrogatories should be submitted on 11/25/19. Status hearing is set for 1/22/2020 at 9:30 a.m. Mailed notice (mjc, ) (Entered: 11/18/2019) |
| 11/20/2019 | 301 | TRANSCRIPT OF PROCEEDINGS held on 11/18/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 36829. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/11/2019. Redacted Transcript Deadline set for 12/23/2019. Release of Transcript Restriction set for 2/18/2020. (Ward, Frances) (Entered: 11/20/2019) |
| 11/27/2019 | 302 | MOTION by Plaintiffs Q.B., T.S. to compel *Chief Judge of the Circuit Court of Cook County to Supplement Interrogatory Response* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Weil, Stephen) (Entered: 11/27/2019) |
| 11/27/2019 | 303 | NOTICE of Motion by Stephen H. Weil for presentment of motion to compel 302 before Honorable Rebecca R. Pallmeyer on 11/2/2020 at 09:00 AM. (Weil, Stephen) (Entered: 11/27/2019) |
| 12/02/2019 | 304 | MOTION by Plaintiffs Q.B., T.S. to withdraw motion to compel 302 (Weil, Stephen) (Entered: 12/02/2019) |
| 12/02/2019 | 305 | NOTICE of Motion by Stephen H. Weil for presentment of motion to withdraw 304 before Honorable Rebecca R. Pallmeyer on 12/9/2019 at 09:00 AM. (Weil, Stephen) (Entered: 12/02/2019) |
| 12/05/2019 | 306 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' unopposed motion to withdraw motion to compel 304 is granted. Accordingly, Plaintiffs' motion to compel 302 is withdrawn. Motion hearing date of 12/9/19 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 12/05/2019) |
| 12/05/2019 | 307 | MOTION by Defendant The County of Cook, Illinois to withdraw , MOTION by Attorney Ryan J. Gillespie to withdraw as attorney for The County of Cook, Illinois. No party information provided (Gillespie, Ryan) (Entered: 12/05/2019) |
| 12/05/2019 | 308 | NOTICE of Motion by Ryan J. Gillespie for presentment of motion to withdraw, motion to withdraw as attorney 307 before Honorable Rebecca R. Pallmeyer on 12/12/2019 at 08:45 AM. (Gillespie, Ryan) (Entered: 12/05/2019) |
| 12/09/2019 | 309 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant County of Cook's motion to withdraw attorney pursuant to Local Rule 83.17 307 is granted. Attorney Ryan J. Gillespie is given leave to withdraw as counsel for Defendant. Motion hearing date of 12/12/19 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 12/09/2019) |
| 12/09/2019 | 310 | MOTION by Plaintiffs Q.B., T.S. for partial summary judgment (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Weil, Stephen) (Entered: 12/09/2019) |

| | | |
|---|---|---|
| 12/11/2019 | 311 | ATTORNEY Appearance for Defendant The County of Cook, Illinois by Marissa D. Longoria (Longoria, Marissa) (Entered: 12/11/2019) |
| 12/17/2019 | 312 | ATTORNEY Appearance for Defendant The Chief Judge of the Circuit Court of Cook County by Hal Dworkin (Dworkin, Hal) (Entered: 12/17/2019) |
| 12/31/2019 | 313 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty–First Century Fox, Inc. for leave to file *Supplemental Authority* (Attachments: # 1 Exhibit A)(Kay, Justin) (Entered: 12/31/2019) |
| 12/31/2019 | 314 | NOTICE of Motion by Justin O'Neill Kay for presentment of motion for leave to file 313 before Honorable Rebecca R. Pallmeyer on 1/8/2020 at 08:45 AM. (Kay, Justin) (Entered: 12/31/2019) |
| 01/03/2020 | 315 | MOTION by Defendant The Chief Judge of the Circuit Court of Cook County for extension of time to file response/reply as to motion for partial summary judgment 310 (Dierkes, Michael) (Entered: 01/03/2020) |
| 01/03/2020 | 316 | NOTICE of Motion by Michael T. Dierkes for presentment of motion for extension of time to file response/reply 315 before Honorable Rebecca R. Pallmeyer on 1/8/2020 at 08:45 AM. (Dierkes, Michael) (Entered: 01/03/2020) |
| 01/08/2020 | 317 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Chief Judge of the Circuit Court of Cook County's unopposed motion for extension of time to file response 315 is granted. Defendants' motion for leave to file supplemental authority 313 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 01/08/2020) |
| 01/14/2020 | 318 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' reply in support of their motion for partial summary judgment 310 shall be filed by 1/29/2020. Notice mailed by judge's staff (ntf, ) (Entered: 01/14/2020) |
| 01/16/2020 | 319 | MEMORANDUM Opinion and Order. Plaintiffs have not yet met the requirements of Rule 23(a) and (b) and the court, therefore, declines to certify their proposed class at this time. Plaintiffs' motion for class certification 235 is denied without prejudice to renewal within 21 days of this order. Defendants may then respond to the renewed motion for class certification or seek a determination on the merits. The court notes, further, that although it appears Plaintiffs' claims present common questions, it may well be that some residents of the JTDC were affected by the Empire filming only briefly or in relatively insignificant ways. Moreover, as time passes, it likely will become increasingly difficult to locate and provide meaningful relief to a class of persons who were juveniles at the time of the relevant events but may well now be moving toward adulthood. For all of these reasons, the court encourages the parties to explore the possibility of settlement before incurring the expense of another round of briefing. Status set for 1/22/2020 is stricken and re–set to 2/6/2020 at 9:30 a.m. This case is referred to Magistrate Judge Kim for settlement conference. Signed by the Honorable Rebecca R. Pallmeyer on 1/16/2020. Notice mailed by judge's staff (ntf, ) (Entered: 01/16/2020) |
| 01/16/2020 | 320 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Young B. Kim for the purpose of holding proceedings related to: a settlement conference. (ntf, ) Notice mailed by judge's staff (Entered: 01/16/2020) |
| 01/16/2020 | 321 | MINUTE entry before the Honorable Young B. Kim: A preliminary settlement discussion with the attorneys of record is scheduled for January 23, 2020, at 10:00 a.m. by phone. The conference call number is (877) 336–1839 and the passcode is 4333213. Mailed notice (ma,) (Entered: 01/16/2020) |
| 01/17/2020 | 322 | RESPONSE by The Chief Judge of the Circuit Court of Cook County to MOTION by Plaintiffs Q.B., T.S. for partial summary judgment 310 *and cross–motion for summary judgment* (Dierkes, Michael) (Entered: 01/17/2020) |
| 01/17/2020 | 323 | MOTION by Defendant The Chief Judge of the Circuit Court of Cook County for summary judgment (Dierkes, Michael) (Entered: 01/17/2020) |
| 01/17/2020 | 324 | NOTICE of Motion by Michael T. Dierkes for presentment of motion for summary judgment 323 before Honorable Rebecca R. Pallmeyer on 1/22/2020 at 08:45 AM. (Dierkes, Michael) (Entered: 01/17/2020) |

| 01/17/2020 | 325 | Local Rule 56.1 Statement of Facts by The Chief Judge of the Circuit Court of Cook County (Dierkes, Michael) (Entered: 01/17/2020) |
|---|---|---|
| 01/22/2020 | 326 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Defendant Chief Judge's motion for summary judgment 323 is taken under advisement. Plaintiffs' reply in support of their motion for partial summary judgment and response to Defendant Chief Judge's motion for summary judgment shall be filed by 1/29/2020. Chief Judge's reply in support shall be filed by 2/19/2020. Renewed motion for class certification shall be filed by 3/16/2020. Status hearing set for 2/6/2020 is stricken and re–set to 3/18/2020 at 9:30 a.m. Notice mailed by judge's staff (ntf, ) (Entered: 01/22/2020) |
| 01/23/2020 | 327 | MINUTE entry before the Honorable Young B. Kim: Preliminary settlement discussion held by phone and continued to January 31, 2020, at 10:30 a.m. by phone. Parties are to use the same call–in information. Parties will be expected to report on whether they wish to discuss settlements for just the named Plaintiffs or a class settlement. This information will dictate when an in–person settlement conference can take place. Mailed notice (ma,) (Entered: 01/23/2020) |
| 01/24/2020 | 328 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: By agreement, deadline for Plaintiffs' reply in support of their motion for partial summary judgment and response to Defendant Chief Judge's motion for summary judgment is extended to 1/31/2020. Notice mailed by judge's staff (ntf, ) (Entered: 01/24/2020) |
| 01/31/2020 | 329 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty–First Century Fox, Inc. to set a briefing schedule (Kay, Justin) (Entered: 01/31/2020) |
| 01/31/2020 | 330 | *JOINT AGREED* NOTICE of Motion by Justin O'Neill Kay for presentment of motion by filer to set a briefing schedule 329 before Honorable Rebecca R. Pallmeyer on 2/6/2020 at 08:45 AM. (Kay, Justin) (Entered: 01/31/2020) |
| 01/31/2020 | 331 | MINUTE entry before the Honorable Young B. Kim: Second preliminary settlement discussion held by phone. Defendant County of Cook did not appear. An in–person settlement conference is scheduled for August 25, 2020, at noon in courtroom 1019. If this date and time pose a scheduling conflict for those who are required to appear, they must contact the court by noon on February 3, 2020. If the settlement conference must be rescheduled, it will be rescheduled for August 26, 2020. Parties are ordered to review and follow this court's standing order on "Settlement Conferences" on its webpage. Individuals with the authority to settle this matter must appear in person. A status hearing is scheduled for July 8, 2020, at 10:30 a.m. by phone to discuss whether to reschedule the settlement conference. Mailed notice (ma,) (Entered: 01/31/2020) |
| 01/31/2020 | 332 | REPLY by Plaintiffs Q.B., T.S. to response to motion 322 , motion for partial summary judgment 310 *Plaintiffs' Reply in Support of Plaintiffs' Motion for Partial Summary Judgment and Response in Opposition to Defendant Chief Judge's Cross–Motion for Summary Judgment* (Attachments: # 1 Exhibit 1)(Weil, Stephen) (Entered: 01/31/2020) |
| 02/03/2020 | 333 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Parties' joint agreed motion for entry of a briefing schedule 329 is granted as follows: Deadline for Plaintiffs' renewed motion for class certification is extended to 3/23/2020. Defendants' response is extended to 4/30/2020. Plaintiffs' reply in support is extended to 5/21/2020. Motion hearing date of 2/6/2020 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 02/03/2020) |
| 02/03/2020 | 334 | MINUTE entry before the Honorable Young B. Kim: Fox Defendants reported to the court that they are not available for an in– person settlement conference on any of the dates provided by the court during the preliminary settlement discussion. In light of this report, the settlement conference scheduled for August 25, 2020, is cancelled. Parties are to contact the court by noon tomorrow and confirm the new settlement conference date that the court provided by email. Mailed notice (ma,) (Entered: 02/03/2020) |
| 02/04/2020 | 335 | MINUTE entry before the Honorable Young B. Kim: At the parties' request, an in–person settlement conference is scheduled for September 3, 2020, at noon in courtroom 1019. Mailed notice (ma,) (Entered: 02/04/2020) |

| 02/18/2020 | 336 | MOTION by Defendant The Chief Judge of the Circuit Court of Cook County for extension of time to file response/reply as to reply, 332 , response to motion 322 (Dworkin, Hal) (Entered: 02/18/2020) |
|---|---|---|
| 02/18/2020 | 337 | NOTICE of Motion by Hal Dworkin for presentment of (Dworkin, Hal) (Entered: 02/18/2020) |
| 02/18/2020 | 338 | NOTICE of Motion by Hal Dworkin for presentment of motion for extension of time to file response/reply 336 before Honorable Rebecca R. Pallmeyer on 2/24/2020 at 09:00 AM. (Dworkin, Hal) (Entered: 02/18/2020) |
| 02/19/2020 | 339 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant Chief Judge's unopposed motion for extension of time to file reply in support of his cross−motion for partial summary judgment 336 is granted to and including 3/4/2020. Motion hearing date of 2/24/2020 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 02/19/2020) |
| 03/04/2020 | 340 | REPLY by The Chief Judge of the Circuit Court of Cook County to reply, 332 , response to motion 322 *Reply in Support of Chief Judge's Cross−Motion For Summary Judgement* (Dworkin, Hal) (Entered: 03/04/2020) |
| 03/16/2020 | 341 | ORDER Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (pj, ) (Entered: 03/17/2020) |
| 03/30/2020 | 342 | ORDER Seconded Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20−0012, entered on March 17, 2020, and General Order 20−0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice. (docket1, ) (Entered: 03/31/2020) |
| 04/24/2020 | 343 | ORDER Third Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket1, ) (Entered: 04/27/2020) |
| 05/15/2020 | 344 | STATUS Report *(Joint)* by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. (Kay, Justin) (Entered: 05/15/2020) |
| 05/18/2020 | 345 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court thanks the parties for their Joint Status Report. Plaintiffs are directed, on or before June 8, 2020, to provide responses to interrogatories served on February 13 by the Office of the Chief Judge and on February 14 by the County of Cook. Responses to certain contention interrogatories from those Defendants will be served at the close of fact discovery. Plaintiffs' renewed motion for class certification will be filed on or before June 15, 2020. Defendants' opposition brief will be due on or before July 30, 2020; Plaintiffs' reply on or before August 20, 2020. Magistrate Judge Kim is encouraged to postpone any in−person settlement efforts until the court has ruled on the renewed motion for class certification. Notice mailed by judge's staff (ntf, ) (Entered: 05/18/2020) |
| 05/26/2020 | 346 | ORDER ORDER Fourth Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non−emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket1, ) (Entered: 05/26/2020) |
| 06/12/2020 | 347 | MOTION by Defendant The Chief Judge of the Circuit Court of Cook County to compel *responses by T.S. and Q.B. to his second set of interrogatories* (Attachments: # |

| | | |
|---|---|---|
| | | 1 Exhibit A, # 2 Exhibit B)(Dierkes, Michael) (Entered: 06/12/2020) |
| 06/12/2020 | 348 | NOTICE of Motion by Michael T. Dierkes for presentment of motion to compel 347 before Honorable Rebecca R. Pallmeyer on 7/27/2020 at 09:00 AM. (Dierkes, Michael) (Entered: 06/12/2020) |
| 06/12/2020 | 349 | ATTORNEY Appearance for Plaintiffs Q.B., T.S. by Mariah Esperanza Garcia (Garcia, Mariah) (Entered: 06/12/2020) |
| 06/15/2020 | 350 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant Chief Judge's motion to compel 347 is entered and continued. Motion hearing date of 7/27/2020 is stricken. Plaintiffs are directed to respond in writing within seven days, by 6/22/2020. Reply, if any, to be filed seven days thereafter, by 6/29/2020. The court notes the Chief Judge's assertion that Plaintiffs' timeliness objections to the interrogatories must be disregarded in light of Plaintiffs' own statements in open court that discovery is not closed. The court will expect Plaintiff to explain the basis for their timeliness objection and identify the date(s) on which discovery in this case should be deemed closed. If the parties in fact agree that discovery remains open, they are directed to identify all remaining necessary discovery and propose a joint schedule for its completion. Notice mailed by judge's staff (ntf, ) (Entered: 06/15/2020) |
| 06/15/2020 | 351 | MOTION by Plaintiffs Q.B., T.S. to certify class *(Renewed)* Responses due by 7/30/2020 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Weil, Stephen) (Entered: 06/15/2020) |
| 06/16/2020 | 352 | MOTION by Plaintiffs Q.B., T.S. to seal document *(ECF No. 351−1)* (Attachments: # 1 Exhibit 1)(Weil, Stephen) (Entered: 06/16/2020) |
| 06/18/2020 | 353 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' motion to seal document 352 is granted. The Clerk's Office is directed to seal document [351−1]. Plaintiffs shall file the redacted exhibit on the docket of this case. Notice mailed by judge's staff (ntf, ) (Entered: 06/18/2020) |
| 06/22/2020 | 354 | SEALED EXHIBIT by Plaintiffs Q.B., T.S. *(Document 351−1)* regarding MOTION by Plaintiffs Q.B., T.S. to certify class *(Renewed)* 351 (Weil, Stephen) (Entered: 06/22/2020) |
| 06/22/2020 | 355 | RESPONSE by Plaintiffs Q.B., T.S. to motion to compel 347 (Attachments: # 1 Exhibit 1)(Weil, Stephen) (Entered: 06/22/2020) |
| 06/23/2020 | 356 | REPLY by The Chief Judge of the Circuit Court of Cook County to Response 355 (Dierkes, Michael) (Entered: 06/23/2020) |
| 06/24/2020 | 357 | MOTION by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for leave to file excess pages *(UNOPPOSED)* (Jacobson, Jeffrey) (Entered: 06/24/2020) |
| 06/24/2020 | 358 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion of the Chief Judge to compel responses to his second set of interrogatories 347 is granted in part and denied in part. By agreement, Plaintiffs will advise Defendants of the dates and nature of any arrests or criminal convictions for either T.S. or Q.B. since the dates of their depositions. They will also provide copies of any sworn statements Plaintiffs have given since those dates. The court grants the motion to compel a further response to Interrogatory 1 in part; Plaintiffs will disclose the dates only of any additional communications with their attorneys since August 7, 2019. The parties agree that Defendants are entitled to discovery regarding Mr. Dunlap's supplemental report and to discovery concerning M.C., should the court permit him to serve as a new proposed class representative. The parties will confer and propose dates for the additional discovery referred to here, as well as discovery on punitive damages, discovery on the cost of construction of a sound stage in the alternative to filming at JTDC, and discovery relating to profits generated by the relevant episodes of Empire. Discovery is otherwise closed. The parties are directed to submit a proposed schedule for the completion of the discovery referred to here, together with a further written status report on 7/27/2020. Notice mailed by judge's staff (ntf, ) (Entered: 06/24/2020) |
| 06/24/2020 | 359 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Minute entry dated 6/24/2020 358 is amended as follows: Plaintiffs will disclose the dates only of any additional communications with their attorneys since August 7, 2018. Remainder of |

| | | order shall remain. Notice mailed by judge's staff (ntf, ) (Entered: 06/24/2020) |
|---|---|---|
| 06/26/2020 | 360 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Fox Defendants' unopposed motion for leave to file an oversized brief 357 is granted up to 35 pages. Notice mailed by judge's staff (ntf, ) (Entered: 06/26/2020) |
| 06/26/2020 | 361 | MOTION by Defendants Twentieth Century Fox Television, Fox Broadcasting Company, Twenty−First Century Fox, Inc. for summary judgment (Jacobson, Jeffrey) (Entered: 06/26/2020) |
| 06/26/2020 | 362 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in support of motion for summary judgment 361 (Jacobson, Jeffrey) (Entered: 06/26/2020) |
| 06/26/2020 | 363 | RULE 56 56.1 Statement by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. regarding motion for summary judgment 361 (Jacobson, Jeffrey) (Entered: 06/26/2020) |
| 06/26/2020 | 364 | DECLARATION of Jeffrey S. Jacobson regarding motion for summary judgment 361 *Declaration of Jeffrey S. Jacobson in Support of Fox Defendants' Motion for Summary Judgment* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26)(Jacobson, Jeffrey) (Entered: 06/26/2020) |
| 07/01/2020 | 365 | MOTION by Plaintiffs Q.B., T.S. to amend/correct *Complaint or To Permit Consideration Of H.C. As Potential Class Representative* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Weil, Stephen) (Entered: 07/01/2020) |
| 07/01/2020 | 366 | NOTICE of Motion by Stephen H. Weil for presentment of motion to amend/correct, 365 before Honorable Rebecca R. Pallmeyer on 7/27/2020 at 09:00 AM. (Weil, Stephen) (Entered: 07/01/2020) |
| 07/06/2020 | 367 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' motion to amend complaint to add additional class representative 365 is entered and continued. Defendants are directed to respond on or before July 20, 2020; reply, if any, to be filed on July 27, 2020. Motion hearing date of 7/27/2020 is stricken. Notice mailed by judge's staff (ntf, ) (Entered: 07/06/2020) |
| 07/08/2020 | 368 | MINUTE entry before the Honorable Young B. Kim: Today's status hearing is cancelled. The settlement conference scheduled for September 3, 2020, to stand. Mailed notice (ma,) (Entered: 07/08/2020) |
| 07/10/2020 | 369 | ORDER Fifth Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in−person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in−court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk3, Docket) (Entered: 07/10/2020) |
| 07/13/2020 | 370 | MOTION by Plaintiffs Q.B., T.S. for extension of time *and for clarification (JOINT)* (Weil, Stephen) (Entered: 07/13/2020) |
| 07/14/2020 | 371 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Parties' joint motion for extension of time and for clarification 370 is granted. By agreement, date for Defendants' response to the renewed class certification motion is extended to August 20, 2020; Plaintiffs' reply to be filed on or before September 14, 2020. The court directs that the parties proceed immediately with discovery concerning H.C. Notice mailed by judge's staff (ntf, ) (Entered: 07/14/2020) |
| 07/20/2020 | 372 | ATTORNEY Appearance for Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. by Christina Rae Chapin (Chapin, Christina) (Entered: 07/20/2020) |

| 07/20/2020 | 373 | MOTION by Plaintiffs Q.B., T.S. *TO SET A CONSOLIDATED SUMMARY JUDGMENT BRIEFING SCHEDULE* (Weil, Stephen) (Entered: 07/20/2020) |
|---|---|---|
| 07/20/2020 | 374 | RESPONSE by The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, Fox Entertainment Group LLC, Fox Networks Group, Inc., Fox Television Group, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc.in Opposition to MOTION by Plaintiffs Q.B., T.S. to amend/correct *Complaint or To Permit Consideration Of H.C. As Potential Class Representative 365* (Attachments: # 1 Declaration A, # 2 Declaration B)(Catania, Francis) (Entered: 07/20/2020) |
| 07/21/2020 | 375 | MOTION by Attorney Alexis Chardon and Terrence Garmey to withdraw as attorney for Q.B., T.S.. No party information provided (Chardon, Alexis) (Entered: 07/21/2020) |
| 07/21/2020 | 376 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' motion to set a consolidated summary judgment briefing schedule 373 is taken under advisement. Defendants' responses shall be filed by 7/28/2020. Plaintiffs' reply in support shall be filed by 8/4/2020. Plaintiffs' motion to permit withdrawal 375 is granted. Attorney Alexis Garmey Chardon and Terrence D. Garmey are given leave to withdraw as counsel for Plaintiffs. Notice mailed by judge's staff (ntf, ) (Entered: 07/21/2020) |
| 07/21/2020 | 377 | RESPONSE by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc.in Opposition to MOTION by Plaintiffs Q.B., T.S. *TO SET A CONSOLIDATED SUMMARY JUDGMENT BRIEFING SCHEDULE 373 (Fox Defendants' Response in Opposition to Plaintiffs' Motion to Set a Consolidated Summary Judgment Briefing Schedule, and Cross Motion for Entry of a Briefing Schedule on the Fox Defendants' Motion for Summary Judgment and for Expedited Briefing Thereon)* (Jacobson, Jeffrey) (Entered: 07/21/2020) |
| 07/22/2020 | 378 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: As the Fox Defendants have responded promptly to Plaintiffs' Motion to Set a Consolidated Summary Judgment Briefing Schedule 373 , Plaintiffs are directed to file their reply in support of that motion in seven days, on or before July 31, 2020. Notice mailed by judge's staff (ntf, ) (Entered: 07/22/2020) |
| 07/27/2020 | 379 | STATUS Report *(Joint)* by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. (Jacobson, Jeffrey) (Entered: 07/27/2020) |
| 07/27/2020 | 380 | RESPONSE by Q.B., T.S.in Support of MOTION by Plaintiffs Q.B., T.S. to amend/correct *Complaint or To Permit Consideration Of H.C. As Potential Class Representative 365* (Attachments: # 1 Exhibit 1−3)(Weil, Stephen) (Entered: 07/27/2020) |
| 07/28/2020 | 381 | MOTION by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for leave to file *Sur−Reply and*, MOTION by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to Postpone *further Discovery from Proposed Plaintiff H.C.* (Jacobson, Jeffrey) (Entered: 07/28/2020) |
| 07/28/2020 | 382 | RESPONSE by Leonard Dixonin Opposition to MOTION by Plaintiffs Q.B., T.S. *TO SET A CONSOLIDATED SUMMARY JUDGMENT BRIEFING SCHEDULE 373* (Kamper, Joi) (Entered: 07/28/2020) |
| 07/28/2020 | 383 | RESPONSE by The County of Cook, Illinoisin Opposition to MOTION by Plaintiffs Q.B., T.S. *TO SET A CONSOLIDATED SUMMARY JUDGMENT BRIEFING SCHEDULE 373* (Mikhail, Danielle) (Entered: 07/28/2020) |
| 07/28/2020 | 384 | RESPONSE by The Chief Judge of the Circuit Court of Cook Countyin Opposition to MOTION by Plaintiffs Q.B., T.S. *TO SET A CONSOLIDATED SUMMARY JUDGMENT BRIEFING SCHEDULE 373* (Dierkes, Michael) (Entered: 07/28/2020) |
| 07/30/2020 | 385 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing set for 8/3/2020 at 1:00 p.m. Members of the public and media will be able to call in to listen to this hearing. The call−in number is 877−336−1839 and the access code is 6708061. Counsel of record will receive an email 15 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to |

| | | |
|---|---|---|
| | | proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notice mailed by judge's staff (ntf, ) (Entered: 07/30/2020) |
| 07/31/2020 | 386 | REPLY by Q.B., T.S. to response in opposition to motion 382 , response in opposition to motion 384 , response in opposition to motion,, 377 , response in opposition to motion 383 *to set a consolidated summary judgment briefing schedule* (Weil, Stephen) (Entered: 07/31/2020) |
| 07/31/2020 | 387 | RESPONSE by Q.B., T.S.in Opposition to MOTION by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for leave to file *Sur−Reply and*MOTION by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to Postpone *further Discovery from P 381 (Attachments: # 1 Exhibit 1)(Weil, Stephen) (Entered: 07/31/2020)* |
| 08/02/2020 | 388 | STATUS Report by Q.B., T.S. (Weil, Stephen) (Entered: 08/02/2020) |
| 08/03/2020 | 389 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing held. Plaintiffs' counsel will file further information in support of the renewed motion for class certification by 8/7/2020. Date for Defendants' response to that motion is extended to 8/31/2020; Plaintiffs' reply to be filed by 9/25/2020, and the court will make every effort to rule on that motion within 30 days. Defendants' motion for leave to file sur−reply and to postpone further discovery from proposed additional named Plaintiff H.C. 381 is denied. Plaintiffs' motion to set a consolidated summary judgment briefing schedule 373 is granted as follows: Defendants' motion for consolidated summary judgment shall be filed by 11/16/2020. Plaintiffs' response shall be filed by 12/18/2020. Defendants' reply shall be filed by 1/15/2021. The parties anticipate service of contention interrogatories, if any, by 8/15/2020. Interrogatories shall be completed by 8/15/2020. Discovery will not proceed at this time on the following issues: on the profitability of the Empire season, the cost of building a sound stage, or punitive damages. Notice mailed by judge's staff (ntf, ) (Entered: 08/03/2020) |
| 08/07/2020 | 390 | SUPPLEMENT to motion to certify class 351 *regarding numerosity* (Attachments: # 1 Exhibit 1)(Weil, Stephen) (Entered: 08/07/2020) |
| 08/20/2020 | 391 | MOTION by Attorney Matthew C. Luzadder, Catherine E. James, and Janine N. Fletcher−Thomas to withdraw as attorney for Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc.. No party information provided (Attachments: # 1 Text of Proposed Order)(Fletcher−Thomas, Janine) (Entered: 08/20/2020) |
| 08/21/2020 | 392 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant's motion to permit withdrawal of attorneys 391 is granted. Attorneys Matthew Charles Luzadder, Janine Nicole Fletcher−Thomas, and Catherine E. James are given leave to withdraw as counsel for Defendants. Notice mailed by judge's staff (ntf, ) (Entered: 08/21/2020) |
| 08/24/2020 | 393 | MOTION by Defendant The Chief Judge of the Circuit Court of Cook County for leave to file excess pages *(Unopposed)* (Dierkes, Michael) (Entered: 08/24/2020) |
| 08/25/2020 | 394 | MINUTE entry before the Honorable Young B. Kim: At the parties' request, the settlement conference scheduled for September 3, 2020, is cancelled. Parties are to select one of the following dates for a settlement conference: (1) November 16th; (2) November 24th; (3) December 7th; and (4) December 11th. The settlement conference will take place by phone and will start at 12:00 p.m. Mailed notice (ma,) (Entered: 08/25/2020) |
| 08/25/2020 | 395 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' unopposed motion for leave to exceed page limit 393 is granted to 45 pages. Notice mailed by judge's staff (ntf, ) (Entered: 08/25/2020) |
| 08/26/2020 | 396 | MINUTE entry before the Honorable Young B. Kim: At the parties' request, a telephonic settlement conference is scheduled for December 7, 2020, at 12:00 p.m. |

| | | |
|---|---|---|
| | | The court will email the parties the call–in information to participate in the settlement conference by no later than December 4, 2020. Mailed notice (ma,) (Entered: 08/26/2020) |
| 08/31/2020 | 397 | MEMORANDUM by The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty–First Century Fox, Inc. in Opposition to motion to certify class 351 *(Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Class Certification)* (Jacobson, Jeffrey) (Entered: 08/31/2020) |
| 08/31/2020 | 398 | DECLARATION of Jeffrey S. Jacobson regarding memorandum in opposition to motion, 397 *(Declaration of Jeffrey S. Jacobson in Support of Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification)* (Attachments: # 1 Exhibit A–C, # 2 Exhibit D–M, # 3 Exhibit N–Z, # 4 Exhibit AA–GG, # 5 Exhibit HH–MM)(Jacobson, Jeffrey) (Entered: 08/31/2020) |
| 09/11/2020 | 399 | WITHDRAWING *Joi Kamper* as counsel for Defendant Leonard Dixon and substituting Patrick Daniel Morris as counsel of record (Morris, Patrick) (Entered: 09/11/2020) |
| 09/25/2020 | 400 | REPLY by Plaintiffs Q.B., T.S. to motion to certify class 351 *(in support)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11)(Weil, Stephen) (Entered: 09/25/2020) |
| 09/25/2020 | 401 | MOTION by Plaintiffs Q.B., T.S. for leave to file excess pages (Weil, Stephen) (Entered: 09/25/2020) |
| 09/28/2020 | 402 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' unopposed motion to exceed page limits instanter 401 is granted to 30 pages. Notice mailed by judge's staff (ntf, ) (Entered: 09/28/2020) |
| 11/12/2020 | 403 | MOTION by Defendants The Chief Judge of the Circuit Court of Cook County, Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty–First Century Fox, Inc. for extension of time *Defendants' Unopposed Motion To Modify And Extend The Summary Judgment Briefing Schedule* (Catania, Francis) (Entered: 11/12/2020) |
| 11/13/2020 | 404 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant's unopposed motion to modify and extend summary judgment briefing schedule 403 is granted. Fox Defendants may, but need not, file an amended opening brief on or before December 16, 2020. All other Defendants that wish to move for summary judgment must do so on or before December 16, 2020. To the extent practicable, all Defendants will coordinate their briefs and rely on a common set of undisputed facts. Government Defendants are not required to submit a single brief, so long as their separate briefs are coordinated, do not duplicate argument, and are no more than 15 pages in length. Plaintiffs' responses to all motions for summary judgment will be due on January 18, 2021. Defendants' replies in support of their motions for summary judgment will be due on February 15, 2021. Notice mailed by judge's staff (ntf, ) (Entered: 11/13/2020) |
| 11/23/2020 | 405 | MEMORANDUM Opinion and Order. The court grants the Chief Judge's Motion for Summary Judgment that all claims against him are barred by the Eleventh Amendment 323 and denies Plaintiffs' Motion for Partial Summary Judgment that the Chief Judge is not entitled to Eleventh Amendment immunity 310 . The court grants Plaintiffs' Motion for Partial Summary Judgment that Dixon was the Chief Judge's final decision–maker regarding (1) whether to permit the Empire filming at the JTDC and (2) whether and how to alter the JTDC's operations to accommodate the filming 310 . Signed by the Honorable Rebecca R. Pallmeyer on 11/23/2020. Notice mailed by judge's staff (ntf, ) (Entered: 11/23/2020) |
| 11/24/2020 | 406 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' motion for leave to serve Rule 33 discovery 298 is terminated as moot. Notice mailed by judge's staff (ntf, ) (Entered: 11/24/2020) |
| 12/04/2020 | 407 | MINUTE entry before the Honorable Young B. Kim: At the parties' request, the December 7, 2020 settlement conference is rescheduled for June 29, 2021, at noon. Parties prefer to engage in settlement discussions after the pending class certification |

|  |  | issue has been resolved. Mailed notice (ma), (Entered: 12/04/2020) |
|---|---|---|
| 12/16/2020 | 408 | MOTION by Defendants Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. for leave to file *Defendants' Unopposed Motion for Leave to File an Enlarged Memorandum of Law in Support of Their Motion for Summary Judgment and Consolidated Local Rule 56.1 Statement of Facts* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Catania, Francis) (Entered: 12/16/2020) |
| 12/16/2020 | 409 | MOTION by Defendants Twentieth Century Fox Television, Fox Broadcasting Company, Twenty−First Century Fox, Inc. for summary judgment *The Fox Defendants' Updated Motion for Summary Judgment* (Jacobson, Jeffrey) (Entered: 12/16/2020) |
| 12/16/2020 | 410 | MEMORANDUM by Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. in support of motion for summary judgment 409 (Jacobson, Jeffrey) (Entered: 12/16/2020) |
| 12/16/2020 | 411 | MOTION by Defendants The County of Cook, Illinois, Leonard Dixon for summary judgment (Catania, Francis) (Entered: 12/16/2020) |
| 12/16/2020 | 412 | DECLARATION of Francis J. Catania regarding motion for summary judgment 411 , motion for summary judgment 409 *Declaration of Francis J. Catania in Support of Defendants' Motions for Summary Judgment and Defendants' Consolidated Local Rule 56.1 Statement of Undisputed Material Facts* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57)(Catania, Francis) (Entered: 12/16/2020) |
| 12/17/2020 | 413 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' unopposed motion for leave to file an enlarged memorandum of law in support of their motion for summary judgment and consolidated Local Rule 56.1 Statement of Facts 408 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 12/17/2020) |
| 12/17/2020 | 414 | MEMORANDUM by Leonard Dixon, The County of Cook, Illinois in support of motion for summary judgment 411 (Catania, Francis) (Entered: 12/17/2020) |
| 12/17/2020 | 415 | RULE 56 56.1 Statement by Leonard Dixon, Fox Broadcasting Company, The County of Cook, Illinois, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. regarding motion for summary judgment 409 , motion for summary judgment 411 *Defendants' Consolidated Local Rule 56.1 Statement of Undisputed Material Facts in Support of Motions for Summary Judgment* (Catania, Francis) (Entered: 12/17/2020) |
| 01/15/2021 | 416 | MOTION by Plaintiffs Q.B., T.S. for extension of time to file response/reply as to motion for summary judgment 409 , motion for summary judgment 411 *(UNOPPOSED)* (Weil, Stephen) (Entered: 01/15/2021) |
| 01/19/2021 | 417 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' unopposed for enlargement of time to respond to Defendants' motions for summary judgment 416 is granted as follows: Plaintiff's response is extended to 2/8/2021. Defendants' reply in support is extended to 3/5/2021. Notice mailed by judge's staff (ntf, ) (Entered: 01/19/2021) |
| 01/19/2021 | 418 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Minute entry dated 1/19/2021 417 is amended as follows: Plaintiffs' unopposed for enlargement of time to respond to Defendants' motions for summary judgment 416 is granted as follows: Plaintiff's response is extended to 2/5/2021. Defendants' reply in support is extended to 3/8/2021. Notice mailed by judge's staff (ntf, ) (Entered: 01/19/2021) |

| | | |
|---|---|---|
| 02/05/2021 | 419 | MOTION by Plaintiffs Q.B., T.S. for extension of time to file response/reply *to Defendants' motions for summary judgment* (Weil, Stephen) (Entered: 02/05/2021) |
| 02/08/2021 | 420 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's unopposed motion for enlargement of time to respond to Defendants' motions for summary judgment 419 is granted as follows: Deadline for Plaintiff's response is extended to 2/8/2021; Defendants' replies in support are extended to 3/11/2021. Notice mailed by judge's staff (ntf, ) (Entered: 02/08/2021) |
| 02/09/2021 | 421 | MOTION by Plaintiffs Q.B., T.S. for leave to file *Instanter Oversized Consolidated Summary Judgment Response Brief and Rule 56.1 Materials* (Attachments: # 1 Proposed Consolidated Summary Judgment Response, # 2 Proposed Response to Defendants' Consolidated Statements of Fact, # 3 Proposed Statements of Additional Facts)(Weil, Stephen) (Entered: 02/09/2021) |
| 02/09/2021 | 422 | Exhibit List *in Support of Plaintiffs' Summary Judgment Response* by Q.B., T.S.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 Exhibit 82, # 83 Exhibit 83, # 84 Exhibit 84, # 85 Exhibit 85, # 86 Exhibit 86, # 87 Exhibit 87, # 88 Exhibit 88, # 89 Exhibit 89, # 90 Exhibit 90, # 91 Exhibit 91, # 92 Exhibit 92, # 93 Exhibit 93, # 94 Exhibit 94, # 95 Exhibit 95, # 96 Exhibit 96, # 97 Exhibit 97, # 98 Exhibit 98, # 99 Exhibit 99, # 100 Exhibit 100, # 101 Exhibit 101, # 102 Exhibit 102, # 103 Exhibit 103, # 104 Exhibit 104, # 105 Exhibit 105, # 106 Exhibit 106, # 107 Exhibit 107)(Weil, Stephen) (Entered: 02/09/2021) |
| 02/09/2021 | 423 | SEALED DOCUMENT by Plaintiffs Q.B., T.S. *Exhibit List in Support of Plaintiffs' Summary Judgment Response* (Attachments: # 1 Exhibit 27 [SEALED], # 2 Exhibit 37 [SEALED], # 3 Exhibit 40 [SEALED], # 4 Exhibit 41 [SEALED], # 5 Exhibit 43 [SEALED], # 6 Exhibit 48 [SEALED], # 7 Exhibit 54 [SEALED], # 8 Exhibit 55 [SEALED], # 9 Exhibit 56 [SEALED], # 10 Exhibit 66 [SEALED], # 11 Exhibit 68 [SEALED], # 12 Exhibit 69 [SEALED], # 13 Exhibit 70 [SEALED], # 14 Exhibit 71 [SEALED], # 15 Exhibit 102 [SEALED])(Weil, Stephen) (Entered: 02/09/2021) |
| 02/09/2021 | 424 | MOTION by Plaintiffs Q.B., T.S. to seal document sealed document,, 423 (Weil, Stephen) (Entered: 02/09/2021) |
| 02/10/2021 | 425 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' motion for leave to file instanter oversized consolidated summary judgment response brief and Rule 56.1 materials 421 is granted. Plaintiffs' motion to seal 424 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 02/10/2021) |
| 03/01/2021 | 426 | MOTION by Plaintiffs Q.B., T.S. to amend/correct exhibit list,,,,,,,, 422 *(UNOPPOSED)* (Attachments: # 1 Exhibit 7 (corrected), # 2 Exhibit 9 (corrected), # 3 Exhibit 15 (corrected), # 4 Exhibit 29 (corrected), # 5 Exhibit 33 (corrected), # 6 Exhibit 73 (corrected), # 7 Exhibit 79 (corrected), # 8 Exhibit 103 (corrected))(Weil, Stephen) (Entered: 03/01/2021) |
| 03/02/2021 | 427 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' unopposed motion to correct exhibits 426 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 03/02/2021) |
| 03/11/2021 | 428 | REPLY by Leonard Dixon, The County of Cook, Illinois to MOTION by Plaintiffs Q.B., T.S. for leave to file *Instanter Oversized Consolidated Summary Judgment* |

| | | |
|---|---|---|
| | | *Response Brief and Rule 56.1 Materials* <u>421</u> , memorandum in support of motion <u>414</u> , MOTION by Defendants The County of Cook, Illinois, Leonard Dixon for summary judgment <u>411</u> (Catania, Francis) (Entered: 03/11/2021) |
| 03/11/2021 | <u>429</u> | REPLY by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. to motion for summary judgment <u>409</u> (Jacobson, Jeffrey) (Entered: 03/11/2021) |
| 03/11/2021 | <u>430</u> | RESPONSE by Defendants Fox Broadcasting Company, Twentieth Century Fox Television, Twenty−First Century Fox, Inc. *Defendants' Consolidated Response to Plaintiffs' Statements of Additional Facts* (Jacobson, Jeffrey) (Entered: 03/11/2021) |
| 03/11/2021 | <u>431</u> | DECLARATION of Jeffrey S. Jacobson regarding Response <u>430</u> (Attachments: # <u>1</u> Exhibit 5, # <u>2</u> Exhibit 17, # <u>3</u> Exhibit 31, # <u>4</u> Exhibit 42, # <u>5</u> Exhibit 58, # <u>6</u> Exhibit 59, # <u>7</u> Exhibit 60, # <u>8</u> Exhibit 61, # <u>9</u> Exhibit 62)(Jacobson, Jeffrey) (Entered: 03/11/2021) |
| 06/03/2021 | <u>432</u> | MINUTE entry before the Honorable Young B. Kim: At the parties' request, the June 29, 2021 settlement conference is rescheduled for September 21, 2021, at noon. Mailed notice (ma,) (Entered: 06/03/2021) |
| 06/10/2021 | <u>433</u> | MINUTE entry before the Honorable Rebecca R. Pallmeyer: For the reasons set forth in the accompanying Memorandum Opinion and Order, the court grants in part and denies in part Defendants' motions for summary judgment [361, 409, 411], grants Plaintiffs' Motion to Amend <u>365</u> , and grants in part and denies in part Plaintiffs' renewed motion for class certification <u>351</u> . Enter Memorandum Opinion and Order. Parties are directed to file a Joint Status Report by 07/08/2021. Notices mailed by judge's staff. (rbf, ) (Entered: 06/10/2021) |
| 06/10/2021 | <u>434</u> | MEMORANDUM Opinion and Order Signed by the Honorable Rebecca R. Pallmeyer on 06/10/2021.(rbf, ) (Entered: 06/10/2021) |